## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### Dallas Division

DEANNA J. ROBINSON

      Plaintiff

      v.

HUNT COUNTY, TX,

RANDY MEEKS, HUNT COUNTY SHERIFF, in his individual capacity and official capacity,

      -and-

JOHN DOES 1-10, in their individual capacities and their official capacities,

 Defendants.

Case No. 3:17-cv-513

**JURY TRIAL DEMANDED**

## PLAINTIFF DEANNA J. ROBINSON'S COMPLAINT

Plaintiff Deanna J. Robinson files this Complaint against Defendants Hunt County, Texas; Hunt County Sheriff Randy Meeks, and John Does 1-10 seeking a declaratory judgment, preliminary and permanent injunctive relief, and compensatory and punitive damages. Plaintiff alleges as follows in support of her claims.

## INTRODUCTION

1.    The First and Fourteenth Amendments to the United States Constitution prohibit a local government and its officials from restricting speech based on a message's viewpoint, including political speech and other expression on matters of public concern. As the Supreme Court of the United States recognized in *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943):

> If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalist, religion,

or other matters of opinion of force citizens to confess by word or act their faith therein.

2.      Despite the clearly-established constitutional right of persons to engage in dissenting, critical, or unpopular speech, Defendants knowingly have and continue to punish and censor Plaintiff and other speakers for expressing viewpoints in a public forum that are critical of or otherwise unfavorable to Defendants on important matters of public concern.

3.      Defendants' conduct reflects an ongoing official policy and longstanding custom intended to chill dissenting speech and manipulate a public forum to encourage and exhibit only those viewpoints favorable to and complimentary of Defendants.

4.      Defendants' conduct is especially troubling because they have attempted to silence those who have criticized Defendants' acts and policies that censor and chill protected speech. No government entity and its officials should be allowed to so blatantly thumb their noses at the very core of the First Amendment.

5.      Defendants' unconstitutional conduct and policies have deprived Plaintiff of her clearly established rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiff is entitled to declaratory and injunctive relief, actual and monetary damages, and a recovery of attorneys' fees and costs as a result.

## **PARTIES**

6.      Plaintiff Deanna J. Robinson currently is a resident of Bell County in the state of Texas.

7.      Defendant Hunt County is a governmental entity under the laws of the State of Texas. Defendant Hunt County's principal place of business is at 2507 Lee Street, Greenville, Texas 75401, and may be served through service upon the Hunt County Judge, the Honorable John Horn, at the Hunt County Courthouse, 2507 Lee Street, 2nd Floor Greenville, Texas 75401.

Defendant Hunt County is subject to liability pursuant to 42 U.S.C § 1983 as set forth in *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978), as alleged further herein.

8.      Defendant Randy Meeks is the Hunt County Sheriff and a resident of Hunt County in the state of Texas. Defendant Meeks may be served at his principal place of business at 2801 Stuart Street, Greenville, Texas 75401. Defendant Meeks acted under color of state law at all times with respect to the allegations made herein, and is a person subject to liability under 42 U.S.C. § 1983. Defendant Meeks is a duly elected official of Hunt County and is a final policymaker for Hunt County. Defendant Meeks is being sued in his individual capacity and in his official capacity as Hunt County Sheriff.

9.      On information and belief, Defendants designated as "John Does 1-10" were responsible for administering, maintaining, and overseeing the public Facebook page of the Hunt County Sheriff's Office ("HCSO"); supervising and overseeing those responsible for administering, maintaining, and overseeing the public HCSO Facebook page; developing the official policy(s) and/or longstanding custom(s) concerning administration and oversight of the public HCSO Facebook Page; and/or implementing and maintaining such policy(s) and/or custom(s).

10.      On information and belief, the John Does 1-10 were acting under color of law at all times with respect to the allegations made herein, as each was an elected or appointed official, employee, servant or agent of Defendant Hunt County. Their acts were conducted under the authority, employment, authorization, or consent of one or both of the other Defendants, and/or in concert with the other Defendants.

11.      Accordingly, John Does 1-10 were and are participants in the unconstitutional acts alleged herein, and are persons subject to liability under 42 U.S.C. § 1983 for any and all

relief Plaintiff seeks. John Does 1-10 are being sued in both their individual capacities and in their official capacities as law enforcement officers, elected or appointed officials, and/or servants, employees, or agents of Hunt County.

12.     Plaintiff has made a reasonable and good faith effort to determine the identities of John Does 1-10, but has been unable ascertain their identities. Accordingly, Plaintiff will amend this Complaint upon learning the names, locations, and relevant capacities of John Does 1-10 when they are discovered and identified, and reserves all rights to so amend this Complaint subject to the Federal Rules of Civil Procedure and the rules of this Court.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343, 2201, and 2202.

14.     This Court has personal jurisdiction over Defendant Hunt County because it is a local government entity of the State of Texas and is located in this judicial district.

15.     This Court has personal jurisdiction over Defendants Meeks and John Does 1-10 because they reside in the state of Texas and in this judicial district.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all Defendants reside in this judicial district for purposes of 28 U.S.C. § 1391, and the acts and injuries alleged herein occurred in and continue to occur in this judicial district.

## GENERAL ALLEGATIONS

### Plaintiff and Her History with Defendants

17.     Plaintiff was born and raised in Hunt County, Texas. After completing her military service in 2013, she resided in Hunt County, and then nearby Van Zandt County, until early February 2017.

18.     Plaintiff is a decorated Air Force veteran who deployed in Iraq during a time of war. Plaintiff was honorably discharged from active duty in 2005, and completed reserve and national guard duty with an honorable discharge in 2014.

19.     During her service, Plaintiff was awarded the Airman's Medal, which is a military decoration awarded by the United States Air Force to an airman who performs a heroic act, usually at the voluntary risk of his or her life.

20.     In 2015, Plaintiff was subjected to an unlawful arrest and excessive force at the hands of HCSO, which is administered, supervised, and staffed by Defendants.

21.     These incidents resulted in significant media coverage and public commentary that placed HCSO, including Defendants, in an unfavorable light. Plaintiff was acquitted of the charges filed against her that stemmed from her unlawful arrest.

**The HCSO Facebook Page**

22.     Defendants operate, maintain, and administer the official public HCSO Facebook page. The HCSO Facebook Page can be accessed at https://www.facebook.com/Hunt-County-Sheriffs-Office-351968785012035/.

23.     Defendants, and their employees, agents, and servants, frequently post content on the HCSO Facebook page about matters of public concern, such as news and information about local law enforcement, local government, and local events.

24.     Since the inception of the HCSO Facebook page, Defendants' practice has been to encourage and permit public expression on the HCSO Facebook page. Specifically, Defendants have encouraged and permitted the public to (1) comment on, "like," and share Defendants' posts on matters of public concern and (2) to reply to and "like" comments posted to the HCSO Facebook page by members of the public.

25.     Defendants have included on the HCSO Facebook page an "About" section,

where the following is stated:

> The purpose of this site is to present matters of pubic[1] [sic] interest within Hunt County Texas. We encourage you to submit comments, but please note that this is NOT a public forum.
>
> Comments posted to this page will be monitored. The Hunt County Sheriff's Office reserves the right to delete comments that: contain false information, obscene language or sexual content, threaten or defame any person or organization including the Hunt County Sheriff's Office, support or oppose political candidates, political organizations or ballot propositions, promote illegal activity, commercial services or products, infringe on copyrights or trademarks or are not topically related to the particular posting.
>
> In addition, should you (the end user) be formally charged with a criminal offense or arrested in connection with a criminal offense, your image may be displayed on our page.
>
> By "LIKING" or "INTERACTING" with our page you agree to the above terms.

A copy of the HCSO Facebook page "About" section is attached hereto as **Exhibit A**.

26.     As alleged, Defendants do present matters of local public interest on the HCSO

Facebook page through frequent postings on the page. And as alleged, Defendants have and

continue to knowingly encourage and allow the public to engage in expression about matters of

public interest on the HCSO Facebook page.

27.     Facebook.com, by its very nature, is highly compatible with and often used for

openly expressive activity. Defendants understood this when creating and making available to

the public the HCSO Facebook page.

---

[1] Plaintiff assumes Defendants intended to display and convey "public interest."

28.     Defendants willingly and knowingly have configured the HCSO Facebook page to be open to the public and allow page visitors to interact openly with the page, its content, and fellow page visitors through commenting, likes, and shares.

29.     Defendants' creation of the HCSO Facebook page, and their willing and knowing configuration and administration of the page to encourage and permit public expression and interaction on matters of public concern, establish that the HCSO Facebook page has been and remains a designated public forum, or alternatively, a limited public forum.

### Defendants' Unlawful Acts in Operating, Maintaining, and Administering the Official HCSO Facebook Page

30.     On January 18, 2017, Defendants posted the following on the HCSO Facebook page:

> We find it suspicious that the day after a North Texas Police Office is murdered, we have received several anti police calls in the office as well as people trying to degrade or insult police officers on this page. **ANY post filled with foul language, hate speech of all types and comments that are considered inappropriate will be removed and the user banned**. There are a lot of families on this page and it is for everyone and therefore we monitor it extremely closely. Thank you for your understanding.

(emphasis added). A copy of a screenshot of Defendants' post (hereinafter "HCSO January 18 Post") is attached hereto as **Exhibit B.**

31.     On or around January 18, and continuing for several days thereafter, Defendants removed from the HCSO January 18 Post comment thread comments made by Plaintiff and others that expressed certain viewpoints on matters of significant public concern. Each of the comments Defendants removed were in response to the HCSO January 18 Post referenced above, and the removed comments in large part criticized the Defendants' January 18 Post for expressing a policy of deleting and censoring protected speech.

32.     On January 18, Plaintiff posted the following on the comment thread to the HCSO

January 18 Post:

> Degrading or insulting police officers is not illegal, and in fact has been ruled time and time again, by multiple US courts, as protected First Amendment speech.
>
> Just because you consider a comment to be "inappropriate" doesn't give you the legal right to delete it and/or ban a private citizen from commenting on this TAX PAYER funded social media site.
>
> No police officer was "murdered" yesterday.
>
> Imagine how wonderful it would have been if the private citizen hadn't been confronted on private property and a stand off hadn't been created unnecessarily …..the terrorist pig with a shiny badge would still be alive today.  Just imagine…..
>
> HCSO is a bunch of idiots, led by the biggest idiot in the entire country – if your moderators delete comments or ban people, you're just setting yourselves up perfectly for a First Amendment rights violation law suit. Thank you for your understanding.

A copy of a screenshot of Plaintiff's comment is attached hereto as **Exhibit C**.

33.     Soon after Plaintiff posted her comments in response to the HCSO January 18

Post, Defendants removed Plaintiff's comments from the HCSO Facebook page. Defendants also

banned Plaintiff from posting comments and denying her the opportunity to participate in public

discourse on the HCSO Facebook page.

34.     Defendants removed Plaintiff's comments and banned her from the HCSO

Facebook page because she expressed viewpoints, on significant matters of public concern, that

were critical of or unfavorable to Defendants and their policies and conduct, including criticism

of Defendants' stated policy of deleting and censoring speech and viewpoints on other related

matters of public interest.

35.     As of the date on this Complaint, Plaintiff remains banned from the HCSO

Facebook page and her comments remain removed.

36.     Defendants provided no notice or opportunity to be heard to Plaintiff before removing her comments or banning her from participating on the HCSO Facebook page.

37.     On information and belief, Defendants knowingly and uniquely punished Plaintiff for her dissenting viewpoints, at least in part, as retaliation for Plaintiff's prior conflict with Defendants and her prior public criticism of Defendants.

38.     Based on a comparison of the current comment thread for the HCSO January 18 Post and snapshots of comments on the thread taken on or around January 18, Defendants also removed several other public comments that expressed viewpoints critical of Defendants' stated policy of deleting and censoring protected speech, as well as other viewpoints unfavorable to Defendants, including for example and without limitation:

- "Just stopping by to see if your deleting posts. Snap shot taken at 7:19 EST" (See Exhibit D-1 attached hereto);

- "This is a public forum and deleting comments is paramount to shredding files you don't like" (See Exhibit D-2 attached hereto);

- A link to a YouTube video titled "Call the Cops – Rob Hustle ft. Bump" (See Exhibit D-3 attached hereto). The link leads to a music video with visuals and lyrics depicting and commenting on forceful encounters between law enforcement and citizens[2];

- Information on and links to various articles discussing censorship of comments on Facebook by other law enforcement agencies (See Exhibit D-4 attached hereto).

39.     Another individual posting on the comment thread for the HCSO January 18 Post stated:

- "I asked a simple question and my comment was erased. I find it very scary that a police force paid by public taxes is censoring speech."

*See* **Exhibit B**. This remains on the comment thread as the only comment under the poster's name, suggesting the poster's original comment remains censored. *See id.*

---

[2] The video can be viewed at https://www.youtube.com/watch?v=IlY9C6pzxKc.

40.     None of the comments Defendants removed from the public HCSO page, including Plaintiff's, were defamatory, obscene, inciteful to imminent unlawful activity, true threats, or otherwise speech not protected by the First Amendment.

41.     Defendants did not remove comments from the January 18 HCSO Post that expressed viewpoints popular with, complimentary of, or otherwise favorable to Defendants and their policies and conduct. *See* **Exhibit B**.

42.     In addition, Defendants allowed speech to remain visible on the public comment thread that reasonably would fall within the proscribed categories of speech included on the HCSO's "About" page (*see* Exhibit A), including:

- A commenter exclaiming "Kill one of our lawmen, we will kill you back!";
- A commenter opining that "some people shouldn't be allowed to have phones or computers"; and
- A commenter describing dissenters as "[T]otal boneheaded people."

*See* **Exhibit B**.

43.     It appears that Defendants may have "restored" a handful of comments recently. Nonetheless, at least Plaintiff's comments and those others referenced above (*see* **Exhibits B, C, and D1-D4**), if not more, remain removed from the HCSO Facebook page and unavailable for public viewing and reply.

44.     Such an arbitrary and token restoration of comments underscores the reckless and callous indifference with which Defendants continue to treat the First Amendment rights of Plaintiff and others. Such an arbitrary and token restoration of comments also underscores the retaliatory nature of Defendants' acts toward Plaintiff, as alleged herein.

**Defendants' Unlawful Policy and Custom in Operating, Maintaining, and Administering the Official HCSO Facebook Page**

45.     Defendant's January 18, 2017 post, their removal of critical and unfavorable speech made directly in response to the post, and their banning of those speakers from the HCSO Facebook page is representative of Defendants' adopted and enforced official policy and/or longstanding custom regarding the screening of and removal of comments on matters of public concern from the public HCSO Facebook page.

46.     Specifically, it is Defendants' official policy and/or longstanding custom to screen for and remove from the HCSO Facebook page comments on matters of public interest that are critical of, unpopular with, or otherwise unfavorable to Defendants.

47.     Furthermore, it is Defendants' official policy and/or longstanding custom to ban speakers from the HCSO Facebook page who express viewpoints on matters of public interest that are critical of, unpopular with, or otherwise unfavorable to Defendants.

48.     This official policy and/or longstanding custom is not limited to the incidents surrounding the HCSO January 18 post.

49.     For example, and on information and belief, Defendants on a prior occasion removed a public comment on the HCSO Facebook page that was critical of Defendant Meeks and HCSO for their handling of a missing person investigation. Defendants banned from the HCSO Facebook page the individual who posted that comment. Defendants' acts were consistent with and undertaken in furtherance of their official policy and/or longstanding custom.

50.     On information and belief, this removed comment was not defamatory, obscene, inciteful to imminent unlawful activity, a true threat, or otherwise speech not protected by the First Amendment.

51.     Defendants' official policy and/or longstanding custom is designed and executed to shape public discourse on the HCSO Facebook page to encourage and reflect only those viewpoints that are popular with, complimentary of, or otherwise favorable to Defendants.

52.     Defendants have gone so far as to clearly express a willful policy of restricting speech based on the speaker's viewpoint in the "About" section of the HCSO Facebook page, explaining that "[w]e welcome your input and POSITIVE comments regarding the Hunt County Sheriff's Office." *See* **Exhibit A**.

53.     Defendants' official policy and/or longstanding custom is intended to and operates to punish, censor, and chill speech critical of, unpopular with, or otherwise unfavorable to Defendants.

54.     Defendants developed, ratified, endorsed, and enforced and continue to enforce this official policy and/or longstanding custom despite the HCSO Facebook page being a public forum in which HCSO and Defendants encourage and permit the public to express themselves on matters of local public interest.

55.     Defendants Meeks and/or Defendants John Does 1-10, having final policy-making authority over administration and maintenance of the public HCSO Facebook page, authorized, supervised, and endorsed the decisions to (1) remove Plaintiff's comments because of the dissenting viewpoints Plaintiff expressed; (2) remove the other comments described above because of the dissenting viewpoints they expressed;  and (3) ban Plaintiff and others from the HCSO Facebook page because of their dissenting viewpoints, in furtherance of official policy and/or longstanding custom.

56.     Defendants Meeks and/or Defendants John Does 1-10, having final policy-making authority over administration and maintenance of the public HCSO Facebook page, deliberately

allowed comments expressing viewpoints popular with and favorable to Defendants to remain on the public HCSO Facebook page, in furtherance of official policy and/or longstanding custom.

57.     On information and belief, Defendants' viewpoint-based discrimination against protected speech on matters of significant public interest represents a standard operating procedure for Defendants.

58.     At all relevant times, Defendants were responsible for training, supervising, and employing individuals within HCSO.

**FIRST CAUSE OF ACTION**

**CLAIM FOR RELIEF FOR VIOLATIONS OF FREEDOM OF SPEECH – U.S. CONST. AMENDS. I AND XIV AND 42 U.S.C. § 1983.**

**(Defendants Meeks and John Does 1-10, in their individual and official capacities)**

59.     Plaintiff fully incorporates by reference herein the allegations in Paragraphs 1-58.

60.     Defendants Meeks and John Does 1-10 engaged in viewpoint-based discrimination and censorship of Plaintiff's speech about matters of public concern in a public forum, in violation of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

61.     Moreover, the Defendants' continued act of banning of Plaintiff from commenting on matters of public interest on the HCSO Facebook page, as alleged herein, is an impermissible prior restraint in violation of Plaintiff's right under the First and Fourteenth Amendments to the United States Constitution.

62.     Defendants' acts, as alleged herein, were undertaken at all times under the color of law.

63.     At all times relevant to the allegations herein, Defendants were aware or should have been aware that their acts were unconstitutional. It is clearly established that an official or another acting under the color of state law cannot censor or restrict speech, or punish a speaker,

based on the viewpoint expressed, regardless of the forum.[3] *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829-30 (1995); *R. A.V.* v. *St. Paul,* 505 U. S. 377, 391-92 (1992).

64.    No reasonable official would so unlawfully, willingly, and arbitrarily restrict speech on matters of public concern – including criticism of a government's viewpoint-based restriction and censorship of speech - in the same manner as Defendants have and continue to do.

65.    Defendants have knowingly and willfully censored and punished Plaintiff, as well others, with a reckless and callous disregard for constitutional rights. Defendants went so far as to disregard and even remove comments from citizens on the public HCSO Facebook page warning Defendants that their acts and stated policy were in violation of the First Amendment. *See* **Exhibit B**.

66.    On information and belief, Defendants instead knowingly elected to continue removing and censoring speech on matters of public concern from the public HCSO Facebook page, but only where the speech criticized or otherwise was unfavorable to Defendants.

67.    Defendants Meeks, and/or Defendants John Does 1-10 to the extent one or more had supervisory duties, also directed their subordinates to engage in the unconstitutional conduct and enforcement of unconstitutional policy and/or custom alleged herein, and/or were aware of their subordinates' unconstitutional deprivation and violation of Plaintiff's First Amendment rights and knowingly failed to stop and further prevent the same.

---

[3] Accordingly, Defendants' acts and official policy and/or longstanding custom would still constitute a willing deprivation and violation of Plaintiff's First Amendment rights even if it is later adjudicated that the HCSO Facebook Page is a non-public forum. It is clearly established that a state actor must treat speech in a viewpoint-neutral fashion even in a non-public forum. *Rosenberger*, 515 U.S. at 828-30; *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 806 (1985).

68.     As a direct and proximate cause of Defendants' unlawful acts, as alleged herein, Plaintiff has been barred from communicating on the public HCSO Facebook page about important matters of public interest, restricting Plaintiff's ability to participate in public discourse and the democratic process.

69.     Defendants' acts were knowingly and willfully undertaken to retaliate against Plaintiff for her ongoing criticism of Defendants, their activities, and their policies.

70.     Defendants' actions injured Plaintiff in a way likely to chill a person of ordinary firmness from further participation in that activity. Plaintiff's constitutionally-protected activity motivated Defendants' adverse actions.

71.     As a direct and proximate cause of Defendants' unlawful acts, as alleged herein, Plaintiff has been forced to limit her protected speech and other expressive activity for fear of further retaliation from Defendants.

72.     As a direct and proximate cause of Defendants' unlawful acts, as alleged herein, Plaintiff has been deprived of her constitutional rights and suffered damage to her reputation, irritation, humiliation, and shame.

73.     As a result, Plaintiff is entitled to compensatory and punitive damages against Defendant Meeks and Defendants John Does 1-10, under 42 U.S.C. § 1983, in an amount to be proven at trial.

74.     Plaintiff is also entitled to preliminary and permanent injunctive relief against Defendants. Defendants' acts of punishing and censoring Plaintiff and her constitutionally-protected speech because of Plaintiff's viewpoints are likely to continue absent injunctive relief.

75.     Plaintiff has and will continue to suffer considerable and irreparable harm without injunctive relief. Plaintiff desires her comments to be reinstated on the HCSO Facebook page;

desires to continue participating in public discourse on matters of public interest on the HCSO Facebook page; and desires to be free of fear of retaliation for engaging in protected speech related to Hunt County and its officials, policies, and conduct. There is no adequate remedy available at law sufficient to redress Plaintiff's injuries and prevent further harm to Plaintiff and others.

76.     Plaintiff is likely to succeed on the merits of her claims set forth herein. Moreover, there is substantial public interest in ensuring that Defendants cease engaging in viewpoint-based restriction and censorship of speech in any public forum.

77.     Plaintiff also seeks declaratory relief against Defendants, attorneys' fees under 42 U.S.C. § 1988, and for any further relief the Court deems just and proper.

## SECOND CAUSE OF ACTION

**CLAIM FOR RELIEF FOR DUE PROCESS VIOLATIONS- U.S. CONST. AMEND. XIV AND 42 U.S.C. § 1983.**

**(Defendants Meeks and John Does 1-10, in their individual and official capacities)**

78.     Plaintiff fully incorporates by reference herein the allegations in Paragraphs 1-77.

79.     Defendants removed Plaintiff's protected speech on a matter of public concern from the public HCSO Facebook page without notice or legitimate explanation.

80.     Defendants banned, and continue to ban, Plaintiff from posting on the public HCSO 8Facebook page, without notice or legitimate explanation.

81.     Plaintiff has no means to appeal or otherwise challenges Defendants' removal of her comments and banning her from the HCSO Facebook page.

82.     Defendants' "terms of service" posted in the "About" section of the public HCSO Facebook page do not serve as sufficient notice to the public regarding deletion of comments or banning of users, particularly given that the January 18 HCSO Post more accurately reflects Defendants policy and custom regarding comment removal and user bans.

83. Defendants' deprivation of Plaintiff's First Amendment rights without notice to Plaintiff or affording her an opportunity to be heard constitutes a violation of Plaintiff's due process rights under the Fourteenth Amendment to the United States Constitution.

84. At all times relevant to the allegations herein, Defendants were clearly aware that their acts and policy and custom were unlawful, and no reasonable official would so unlawfully, willingly, and arbitrarily restrict speech, censor speech, and punish speakers in the same manner as Defendants have and continue to do.

85. As a direct and proximate result of Defendants' acts, which were done under the color of law at all time relevant to the allegations herein, Plaintiff is entitled to damages in an amount to be proven at trial, preliminary and permanent injunctive relief, and declaratory relief.

## THIRD CAUSE OF ACTION

*MONELL* CLAIM FOR RELIEF FOR VIOLATIONS ARISING UNDER U.S. CONST. AMENDS. I AND
XIV AND 42 U.S.C. § 1983.

**(Defendant Hunt County and Defendants Meeks and John Does 1-10, in their official capacities only)**

86. Plaintiff fully incorporates by reference herein the allegations in Paragraphs 1-85.

87. At all times relevant to the allegations made herein, Defendant Hunt County developed, ratified, enforced, and continue to enforce an official county policy and/or longstanding custom of removing and censoring speech concerning matters of public interest from the HCSO Facebook page, but only where such speech is critical of, unpopular with, or otherwise unfavorable to Defendants.

88. Defendant Hunt County's official county policy and/or longstanding custom also calls for banning members of the public from the public HCSO Facebook page as retaliation and punishment for expressing critical or unpopular viewpoints on the HCSO Facebook Page.

Defendants have and continue to enforce such bans without notice, without legitimate explanation, and without an opportunity to appeal or otherwise challenge the decision.

89.     This unconstitutional official county policy and/or longstanding custom, as alleged herein, was developed, ratified, and enforced, and continues to be enforced, under the color of law. The official county policy and/or longstanding custom was developed, ratified, enforced, and continues to be enforced through and by Defendant Meeks and Defendants John Does 1-10, who are vested with final policy-making authority over law enforcement and other official Hunt County matters.

90.     Defendants' enforced and ongoing official county policy and/or longstanding custom of removing and censoring speech, as alleged herein, constitutes (1) an impermissible viewpoint-based restriction on speech in violation of the First and Fourteenth Amendments to the United States Constitution; and (2) a violation of banned individuals' due process rights under the Fourteenth Amendment to the United States Constitution.

91.     In addition, Defendants' ongoing official county policy and/or longstanding custom of removing and censoring on the HCSO Facebook page speech that is "filled with foul language, hate speech of all types and comments that are considered inappropriate," constitutes an impermissibly vague and overly broad restriction of speech in violation of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

92.     At all times relevant to the allegations herein, Defendants were or should have been aware that the official policy and/or longstanding custom as alleged were unlawful. It is clearly established that a state actor cannot censor or restrict speech, or punish a speaker, based on the viewpoint expressed, regardless of the forum. *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829-30; *R. A.V.* v. *St. Paul,* 505 U. S. 377, 391 (1992).

93.     No local government or reasonable official with final policy-making authority would so unlawfully, willingly, and arbitrarily have developed, ratified and enforced the unconstitutional official county policy and/or longstanding custom alleged herein.

94.     Defendants developed, ratified, enforced, and continues to enforce the official county policy and/or longstanding custom with a reckless and callous disregard for the constitutional rights of citizens.

95.     As a direct and proximate cause of Defendants' unconstitutional official policy and/or longstanding custom, and the acts undertaken pursuant to the same as alleged herein, Plaintiff has been barred from communicating on the public HCSO Facebook page about important matters of public interest, restricting Plaintiff's ability to participate in public discourse and the democratic process.

96.     As a direct and proximate cause of Defendants' unconstitutional official policy and/or longstanding custom, and the acts undertaken pursuant to the same as alleged herein, Plaintiff has been forced to limit her protected speech and other expressive activity for fear of further retaliation from Defendants.

97.     As a direct and proximate cause of Defendants' unconstitutional official policy and/or longstanding custom, and the acts undertaken pursuant to the same as alleged herein, Plaintiff has suffered damage to her reputation, humiliation, irritation, and shame.

98.     Defendants' unconstitutional viewpoint-based official policy and/or longstanding custom were the moving force behind the deprivation of Plaintiff's First Amendment rights as alleged herein.

99.     As a result, Plaintiff is entitled to compensatory and punitive damages against Defendant Hunt County under 42 U.S.C. § 1983, in an amount to be proven at trial.

100.     Plaintiff is also entitled to preliminary and permanent injunctive relief against Defendants and their continued enforcement of their unconstitutional official county policy and/or longstanding custom. Defendants' acts of punishing, censoring, and chilling Plaintiff's constitutionally-protected speech based on Plaintiff's viewpoints is likely to continue absent injunctive relief.

101.     As a direct and proximate cause of Defendants' unconstitutional official policy and/or longstanding custom, other citizens have been punished and censored for expressing certain viewpoints, and have been forced to limit their protected speech and other protected expressive activity for fear of further retaliation from Defendants.

102.     The chilling effects from Defendants' unconstitutional official policy and/or longstanding custom are also a result of the vague and overbroad nature of Defendants' HCSO January 18 post proscribing speech "filled with foul language, hate speech of all types and comments that are considered inappropriate," as alleged herein.

103.     Absent injunctive relief, the harm alleged herein suffered by Plaintiff and others is likely to continue, as Defendants are likely to continue enforcement of their unconstitutional official county policy and/or longstanding custom.

104.     Plaintiff has and will continue to suffer considerable and irreparable harm if Defendant are not enjoined from further enforcing their unconstitutional official policy and/or longstanding custom. Plaintiff desires to continue participating in public discourse on matters of public concern on the HCSO Facebook page and other public forums. Others have suffered the same or similar harm. There is no adequate remedy available at law sufficient to redress Plaintiff's injures and prevent further harm to Plaintiff and others.

105.     Plaintiff is likely to succeed on the merits of her claims set forth herein. Moreover, there is substantial public interest in ensuring that Defendants cease engaging in viewpoint-based censorship, restriction, and purposeful chilling of protected speech.

106.     Plaintiff also seeks declaratory relief as to Defendants' unconstitutional official policy and/or longstanding custom, attorneys' fees and costs under 42 U.S.C. § 1988, and for any further relief the Court deems just and proper.

## PRAYER FOR RELIEF

Plaintiff prays for judgment as follows:

1.     For a declaratory judgement that Defendants' administration and maintenance of the HCSO Facebook page and their official policy and/or longstanding custom governing the same violate the First Amendment to the United States Constitution;

2.     For a declaratory judgement that Defendants' administration and maintenance of the HCSO Facebook page and their official policy and/or longstanding custom governing the same violate the Fourteenth Amendment to the United States Constitution;

3.     For a declaratory judgement that Defendants' ongoing ban of Plaintiff from the HCSO Facebook page, where Defendants imposed the ban because Plaintiff expressed viewpoints that are critical of and unfavorable to Defendants, constitutes an impermissible prior restraint under the First Amendment to the United States Constitution.

4.     Compensatory damages in such amount as may be found, or as otherwise permitted by law;

5.     Punitive damages in such amount as may be found, or as otherwise permitted by law, for Defendants' retaliatory and oppressive intent toward Plaintiff and for acting with reckless and callous disregard for the clearly-established constitutional rights of Plaintiff;

6.      Preliminary and permanent injunctive relief enjoining Defendants and their employees, agents, servants, officers, and persons in concert with Defendants, from removing, censoring, or otherwise restricting protected speech on the HCSO Facebook page, including, but not limited to, restricting and removing comments based on their expressed viewpoint(s);

7.       Preliminary and permanent injunctive relief enjoining Defendants and their employees, agents, servants, officers, and persons in concert with Defendants from banning users who engage in protected speech on the HCSO Facebook page; including, but not limited to, banning individuals based on their expressed viewpoint(s);

8.      Preliminary and permanent injunctive relief compelling Defendants and their employees, agents, servants, officers, and persons in concert with Defendants, to restore Plaintiff's comments to the HCSO Facebook page, and to restore Plaintiff's ability to comment and otherwise participate on the HCSO Facebook page;

9.      Preliminary and permanent injunctive relief compelling Defendants and their employees, agents, servants, officers, and persons in concert with Defendants to develop, ratify, and execute, and make publicly-available a policy for monitoring, maintaining, and administering the HCSO Facebook page that protects the First Amendment rights of speakers, including but not limited to (1) permitting comments that express dissenting, critical, or unfavorable viewpoints on matters of local public interest and (2) posting on the HCSO Facebook page that the policy stated in the HCSO January 18, 2017 Post is no longer in effect and will no longer be enforced by Defendants;

10.     For attorneys' fees, statutory fees, and costs under 42 U.S.C. § 1988;

11.     For such other and further relief as the Court may deem just and proper.

Dated: February 23, 2017

Respectfully submitted,

/s/ JT Morris

JT Morris
Texas State Bar No. 24094444
JT Morris Law, PLLC
610 Brazos Street, Suite 320
Telephone: (512) 717-5275
Fax: (512) 582-2948
E-mail: jt@jtmorrislaw.com

David D. Davis
Texas State Bar No. 00790568
Law Offices of David D. Davis, PLLC
P.O. Box 542915
Grand Prairie, Texas 75204
Telephone: (972) 639-3440
Fax: (972) 639-3640
ddd@dddavislaw.net

**ATTORNEYS FOR PLAINTIFF
DEANNA J. ROBINSON**