**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DEANNA J. ROBINSON** | § | |
| | § | |
| Plaintiff | § | |
| | § | **CIVIL ACTION NO. 3:17-cv-513-K** |
| **vs.** | § | |
| | § | |
| **HUNT COUNTY, TX, RANDY MEEKS** | § | |
| **HUNT COUNTY SHERIFF, in his** | § | |
| **individual and official capacity,** and | § | |
| **JOHN DOES 1-10, in their individual and** | § | |
| **official capacities.** | § | |
| | § | |
| Defendants | § | |

## DEFENDANTS' MOTION TO DISMISS AND BRIEF

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Defendants Hunt County, Texas, and Hunt County Sheriff, Randy Meeks, in his individual capacity and official capacity ("Defendants"),[1] and, pursuant to Fed. R. Civ. P. 12(b)(6), file this, their Motion to Dismiss and Brief, seeking dismissal of the claims brought in Plaintiff Deanna J. Robinson's Complaint.[2]  In support thereof, Defendants respectfully show as follows:

## SUMMARY

Plaintiff's claims against Sheriff Meeks, in his official capacity, are duplicative of her claims against Hunt County, Texas (the "County").  As a result, the official capacity claims against Sheriff Meeks should be dismissed as redundant of the claims against the County.

---

[1] Defendants do not include John Does 1-10 as they have not yet been served.
[2] Pursuant to Federal Rule of Civil Procedure 12(a)(4), Defendants are not required to file an answer until fourteen (14) days after the Court rules on a motion filed pursuant to Rule 12.  This extension applies regardless of whether the motion relates to some or all of the claims alleged in plaintiff's complaint. *See* Charles Alan Wright & Arthur R. Miller, 5B Fed. Prac. & Proc. Civ. 3d § 1346 (West 2006); *See also Morgan v. Gandalf, Ltd.*, 165 Fed. Appx. 425, 428 (6th Cir. 2006).

Plaintiff's claims for punitive damages against the County and Sheriff Meeks, in his official capacity, should be dismissed with prejudice because punitive damages awards are not permitted against governmental entities under 42 U.S.C. § 1983. Plaintiff's declaratory judgment claims should be dismissed as redundant of Plaintiff's substantive claims in this lawsuit.

The Court should dismiss Plaintiff's claims against the County and Sheriff Meeks in his official capacity, because Plaintiff has not offered sufficient well-pled facts to state a plausible claim for municipal liability. Plaintiff has not adequately pled facts establishing the existence of an official County policy or custom which was the moving force behind her alleged injury.

Sheriff Meeks, in his individual capacity, is entitled to qualified immunity with respect to Plaintiff's claims for violations of the Free Speech clause of the First and Fourteenth Amendments because: (1) it is not clearly established that comments made on a sheriff's office's Facebook page are subject to free speech regulation; (2) it is not clearly established that a sheriff's office which permits limited comment on its Facebook page has opened a forum for expressive conduct; and (3) Plaintiff's Complaint does not plead sufficient facts to establish that her comments were excluded due to viewpoint-based discrimination.

Sheriff Meeks, in his individual capacity, is entitled to qualified immunity on Plaintiff's due process claim because it is not clearly established that an individual has a constitutionally protected interest in posting comments on a governmental entity's informational social media webpage or that a governmental entity must provide notice and a hearing when it removes comments or precludes an individual from posting on its informational social media webpage.

Finally, to the extent that Plaintiff intends to state a claim for supervisor liability against Defendant Meeks, Plaintiff has failed to state a claim on which relief may be granted.

For all these reasons, the Court should dismiss Plaintiff's claims in their entirety.

# TABLE OF CONTENTS

SUMMARY ................................................................................................................ 1

TABLE OF CONTENTS ............................................................................................ 3

TABLE OF AUTHORITIES ...................................................................................... 4

BACKGROUND ........................................................................................................ 8

   A.  Plaintiff's Causes of Action .......................................................................... 8

   B.  Plaintiff's Allegations ................................................................................... 8

ARGUMENT AND AUTHORITIES ....................................................................... 10

   A.  The Standard for a Motion to Dismiss ........................................................ 10

   B.  Plaintiff's Official Capacity Claims Should Be Dismissed .......................... 11

   C.  Plaintiff's Claims for Punitive Damages Should Be Dismissed ................... 12

   D.  Plaintiff's Claims for Declaratory Relief Should Be Dismissed .................. 13

   E.  Plaintiff's Claims Against the County and Sheriff Meeks in his Official Capacity Should Be Dismissed ................................................................... 13

      1.   The Standard for Municipal Liability ....................................................... 13

      2.   Plaintiff Has Not Pled Facts Sufficient to Establish an Official Policy or a Custom . 15

   F.  Plaintiff's Individual Capacity Claims Should Be Dismissed ...................... 22

      1.   Qualified Immunity Provides Broad Protections ....................................... 22

      2.   Meeks is Entitled to Qualified Immunity on Plaintiff's Free Speech Claims ............. 25

      3.   Meeks is Entitled to Qualified Immunity on Plaintiff's Due Process Claim .............. 28

   G.  Plaintiff's Supervisor Liability Claim Should Be Dismissed. .......................... 29

## TABLE OF AUTHORITIES

Cases

*Albritton Props. v. Am. Empire Surplus Lines*,
 No. 04-CV-2531, 2005 WL 975423 (N.D. Tex. Apr. 25, 2005) ............................ 13
*Allison v. Tarrant County, Tex.*,
 92 F. Supp. 2d 601 (N.D. Tex. 2000) ............................................................... 18, 19
*Ashcroft v. al–Kidd*,
 563 U.S. 731 (2011) .............................................................................................. 23
*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .............................................................................................. 10
*Assistmed, Inc. v. Conceptual Health Solutions, Inc.*,
 No. 05-CV-0880, 2006 WL 3691003 (N.D. Tex. Dec. 14, 2006) .......................... 13
*Bd. of County Comm'rs of Bryan County, v. Brown*,
 520 U.S. 397 (1997) .............................................................................................. 14
*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................... 10, 11, 18, 20
*Bennett v. City of Slidell*,
 728 F.2d 762 (5th Cir. 1984) ........................................................................... 14, 18
*Blackburn v. City of Marshall*,
 42 F.3d 925 (5th Cir. 1995) ............................................................................ 11, 28
*Bowden v. Jefferson County*,
 No. 16-40311, 2017 WL 243341 (5th Cir. Jan. 19, 2017) ............................... 17, 18
*Brandon v. Holt*,
 469 U.S. 464 (1985) .............................................................................................. 12
*Brooks v. George County*,
 84 F.3d 157 (5th Cir. 1996) .................................................................................. 12
*Brosseau v. Haugen*,
 543 U.S. 194, (2004) ....................................................................................... 23, 25
*Brown v. Wichita County, Tex.*,
 No. 7:05-CV-108-O, 2011 WL 1562567 (N.D. Tex. Apr. 26, 2011) ................. 18, 19
*Castro Romero v. Becken*,
 256 F.3d 349 (5th Cir. 2001) ................................................................................ 12
*Champagne v. Jefferson Parish Sheriff's Office*,
 188 F.3d 312 (5th Cir.1999) ................................................................................. 30
*City of Clinton v. Pilgrim's Pride Corp.*,
 632 F.3d 148 (5th Cir. 2010) ................................................................................ 10
*City of Newport v. Fact Concerts, Inc.*,
 453 U.S. 247 (1981) .............................................................................................. 12
*Clark v. LaMarque Indep. Sch. Dist.*,
 54 F. App'x 412 (5th Cir. 2002) ........................................................................... 12
*Colle v. Brazos County Tex.*,
 981 F.2d 237 (5th Cir. 1993) ................................................................................ 19
*Cornelius v. NAACP Legal Def. & Educ. Fund*,

473 U.S. 788 (1985) ................................................................................................ 26
Culbertson v. Lykos,
    790 F.3d 608 (5th Cir. 2015) ............................................................................. 19
Estate of Davis ex rel. McCully v. City of North Richland Hills,
    406 F.3d 375 (5th Cir. 2005) ...................................................................... 15, 29
Fee v. Herndon,
    900 F.2d 804 (5th Cir. 1990) .............................................................................. 11
Fernandez-Montes v. Allied Pilots Ass'n,
    987 F.2d 278 (5th Cir. 1993) .............................................................................. 11
Flanagan v. Chesapeake Exploration, LLC,
    No. 3:15-CV-0222-B, 2015 WL 6736648 (N.D. Tex. Nov. 4, 2015) .................. 13
Flores v. Cameron County, Tex.,
    92 F.3d 258 (5th Cir. 1996) ................................................................................ 12
Gentilello v. Rege,
    627 F.3d 540 (5th Cir. 2010) .............................................................. 11, 18, 20, 29
Hawkins v. AT&T,
    No. 3:12-CV-1173-L, 2013 WL 4505154, fn. 2 (N.D. Tex. Aug. 5, 2013) ................ 11, 18, 20
Howard v. Fortenberry,
    723 F.2d 1206 (5th Cir.1984) ............................................................................. 30
Jackson v. Sheriff of Ellis County, TX,
    No. CIV.A.3:00-CV-1965-G, 2001 WL 1149102 (N.D. Tex. Sept. 26, 2001) ........................ 14
Jett v. Dallas Indep. Sch. Dist.,
    7 F.3d 1241 (5th Cir. 1993) ................................................................................ 17
Keane v. Fox TV Stations, Inc.,
    297 F. Supp. 2d 921 (S.D. Tex. 2004) ................................................................ 11
Keenan v. Tejeda,
    290 F.3d 252 (5th Cir. 2002) .............................................................................. 28
Kentucky v. Graham,
    473 U.S. 159 (1985) ........................................................................................... 12
Kogul v. Xspediou Mgmt. Co.,
    No. 04-CV-2518, 2005 WL 1421446 (N.D. Tex. June 1, 2005) ........................... 13
Landscape Design & Const., Inc. v. Transp. Leasing/Contract,
    No. CIV.A.3:00-CV-0906-D, 2002 WL 257573 (N.D. Tex. Feb. 19, 2002) ........................ 13
Lewis v. City of Waxahachie,
    No. 3:10-CV-2578-N-BH, 2011 WL 7070991 (N.D. Tex. Dec. 21, 2011) ....................... 29, 30
Lewis v. Law-Yone,
    813 F.Supp. 1247 (N.D.Tex. 1993) ..................................................................... 11
Malley v. Briggs,
    475 U.S. 335 (1986) ........................................................................................... 22
May v. Andres,
    No. 3:16-CV-1674-L, 2017 WL 495832 (N.D. Tex. Feb. 7, 2017) ....................... 12
Mays v. Valdez,
    No. 3:13-CV-1272-M-BF, 2013 WL 6228731 (N.D. Tex. Nov. 29, 2013) ........................ 12
Monell v. Dep't of Social,
    Sciences, 436 U.S. 658 (1978) ............................................................... 14, 17, 22
Morgan v. Gandalf, Ltd.,

165 Fed. Appx. 425 (6th Cir. 2006) ........................................................................... 1

Morgan v. Swanson,
   659 F.3d 359 (5th Cir. 2011) ........................................................................ 23, 25

Morrison v. Walker,
   No. 1:13-CV-327, 2015 WL 11102144 (E.D. Tex. Sept. 24, 2015) ....................... 28

Mullenix v. Luna,
   136 S. Ct. 305, (2015) ................................................................................... 22, 23

Papasan v. Allain,
   478 U.S. 265 (1986) ............................................................................................ 11

Pasco v. Knoblauch,
   566 F.3d 572 (5th Cir. 2009) .............................................................................. 23

Peterson v. City of Fort Worth, Tex.,
   588 F.3d 838 (5th Cir. 2009) ........................................................................ 15, 21

Pierce v. Smith,
   117 F.3d 866 (5th Cir. 1997) .............................................................................. 23

Piotrowski v. City of Houston,
   237 F.3d 567 (5th Cir. 2001) ...................................................................... 14, 21, 22

Plotkin v. IP Axess Inc.,
   407 F.3d 690 (5th Cir. 2005) ...................................................................... 11, 18, 20

R.A.V. v. St. Paul,
   505 U.S. 377 (1992) ....................................................................................... 25, 26

Regus Mgmt. Grp., LLC v. Int'l Bus. Mach. Corp.,
   No. 07-CV-1799, 2008 WL 2434245 (N.D. Tex. June 17, 2008) .......................... 13

Rosenberger v. Rector and Visitors of Univ. of Va.,
   515 U.S. 819 (1995) ....................................................................................... 25, 26

Salazar v. Kleberg County, Tex.,
   No. 2:11-CV-00150, 2012 WL 1610542 (S.D. Tex. May 8, 2012) ......................... 12

Sama v. Hannigan,
   669 F.3d 585 (5th Cir. 2012) .............................................................................. 23

Stern v. Hinds County, Miss.,
   436 Fed. Appx. 381 (5th Cir. 2011) .................................................................... 12

Tuchman v. DSC Comms. Corp.,
   14 F.3d 1061 (5th Cir. 1994) ........................................................................ 11, 29

Turner v. Lieutenant Driver,
   848 F.3d 678 (5th Cir. 2017) ................................................................. 22, 23, 24, 25

Vincent v. City of Sulphur,
   805 F.3d 543 (5th Cir. 2015) ................................................................... 23, 24, 25

Walker v. Tex. Div. Sons of Confederate Veterans, Inc.,
   135 S. Ct. 2239 (2015) ................................................................................... 26, 27

Webster v. City of Houston,
   735 F.2d 838 (5th Cir. 1984) .............................................................................. 14

Whitley v. Hanna,
   726 F.3d 631 (5th Cir. 2013) .............................................................................. 14

Williams v. Kaufman County,
   86 F. Supp. 2d 586 (N.D. Tex. 2000) .................................................................. 19

Willis v. Nucor Corp.,

282 S.W.3d 536 (Tex. App.—Waco 2008, no pet.) ...................................................... 11, 18, 20

*Xtria LLC v. Tracking Sys., Inc.*,
    No. 07-CV-0160, 2007 WL 1791252 (N.D. Tex. June 21, 2007) ........................................... 13

*Zarnow v. City of Wichita Falls Tex.*,
    614 F.3d 161 (5th Cir. 2010) ................................................................................................ 15

Statutes

42 U.S.C. § 1983 ....................................................................................................................... passim

Rules

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 1, 10, 13
Federal Rule of Civil Procedure 12(a)(4) ..................................................................................... 1

Other Authorities

5B Fed. Prac. & Proc. Civ. 3d § 1346 (West 2006) ....................................................................... 1

## BACKGROUND

### A.     Plaintiff's Causes of Action

Plaintiff asserts claims against Sheriff Meeks and Does 1-10[3] in their official and individual capacities relating to the removal of a comment Plaintiff allegedly made in connection with a post on the Hunt County Sheriff's Office's Facebook page (the "HCSO Facebook page") and in connection with Plaintiff's allegedly being banned from posting comments on the HCSO Facebook page.  Dkt. 1.  Plaintiff alleges that Meeks and Does 1-10 violated her free speech rights under the First and Fourteenth Amendments.  Dkt. 1, pp. 13-16.  Plaintiff also alleges that Meeks and Does 1-10 violated her due process rights in connection with the HCSO Facebook page.  Dkt. 1, pp. 16-17.  Plaintiff also asserts a "*Monell* Claim for Relief" alleging a policy or custom of viewpoint-based restriction on speech and a violation of due process rights against the County, Meeks in his official capacity, and Does 1-10 in their official capacities.  Dkt. 1, pp. 17-21.  Plaintiff seeks compensatory and punitive damages as well as declaratory and injunctive relief.  Dkt. 1, pp. 15-17, 19 (¶¶ 73, 74, 77, 85, 99, 100, 106); Dkt. 1, pp. 21-22 (¶¶ 1-11).

### B.     Plaintiff's Allegations

Plaintiff alleges that Defendants operate, maintain, and administer an official HCSO Facebook page which can be accessed at https://www.facebook.com/pg/Hunt-County-Sheriffs-Office-351968785012035/.  Dkt. 1, p. 5, ¶22.  Plaintiff alleges further that Defendants frequently post content on the HCSO Facebook page including news and information about local law enforcement, local government, and local events.  Dkt. 1, p. 5, ¶23.  Plaintiff alleges that the HCSO Facebook page includes the following statement:

> The purpose of this site is to present matters of pubic (sic) interest within Hunt County Texas. We encourage you to submit comments, but please note that this is NOT a public forum.

---

[3] As of the filing of this motion, Does 1-10 have not been served with this lawsuit.

Comments posted to this page will be monitored. The Hunt County Sheriff's Office reserves the right to delete comments that: contain false information, obscene language or sexual content, threaten or defame any person or organization including the Hunt County Sheriff's Office, support or oppose political candidates, political organizations or ballot propositions, promote illegal activity, commercial services or products, infringe on copyrights or trademarks or are not topically related to the particular posting.

In addition, should you (the end user) be formally charged with a criminal offense or arrested in connection with a criminal offense, your image may be displayed on our page.

By "LIKING" or "INTERACTING" with our page you agree to the above terms.

Dkt. 1, p. 6, ¶25.

Plaintiff alleges that, on January 18, 2017, Defendants posted a statement on the HCSO Facebook page stating, "**[a]ny post filled with foul language, hate speech of all types and comments that are considered inappropriate will be removed and the user banned.** There are a lot of families on this page and it is for everyone and therefore we monitor it extremely closely.  Thank you for your understanding."  Dkt. 1, p. 7, ¶30 (emphasis added by Plaintiff). Plaintiff alleges that Defendants subsequently removed comments made by Plaintiff and others from the HCSO January 18, 2017 post comment thread.  Dkt. 1, p. 7, ¶31.  Plaintiff alleges that the removed comments in large part criticized Defendants' January 18, 2017 post.  *Id.*

Plaintiff claims that, on January 18, 2017, she posted the following comment on the HCSO's January 18, 2017 post:

Degrading or insulting police officers is not illegal, and in fact has been ruled time and time again, by multiple US courts, as protected First Amendment speech.

Just because you consider a comment to be "inappropriate" doesn't give you the legal right to delete it and/or ban a private citizen from commenting on this TAX PAYER funded social media site.

No police officer was "murdered" yesterday.

Imagine how wonderful it would have been if the private citizen hadn't been confronted on private property and a stand off hadn't been created unnecessarily …the terrorist pig with a shiny badge would still be alive today.  Just imagine…..

HCSO is a bunch of idiots, led by the biggest idiot in the entire country – if your moderators delete comments or ban people, you're just setting yourselves up perfectly for a First Amendment rights violation law suit.  Thank you for your understanding.

Dkt. 1, p. 8, ¶ 32.

Plaintiff alleges that shortly after she posted this comment, Defendants removed Plaintiff's comment from the HCSO Facebook page and banned Plaintiff from posting further comments to this page.  Dkt. 1, p.8, ¶ 33.  Plaintiff claims that Defendants took this action because Plaintiff expressed viewpoints "that were critical of or unfavorable to Defendants and their policies and conduct, including criticism of Defendants' stated policy of deleting and censoring speech and viewpoints on other related matters of public interest."  Dkt. 1, p. 8, ¶34.  Plaintiff alleges that, as of the date of her Complaint, she remained banned from commenting on HCSO Facebook page posts.  Dkt. 1, p. 8, ¶35.

## ARGUMENT AND AUTHORITIES

### A.    The Standard for a Motion to Dismiss

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff's obligation in response to a motion to dismiss under Rule 12(b)(6) is to provide the "grounds" for his "entitlement to relief" which requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not suffice.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010).

The Court need only accept as true the "well pleaded" facts in a Plaintiff's complaint; to be "well pleaded," a complaint must state specific facts to support the claim, not merely conclusions and unwarranted factual deductions. *Tuchman v. DSC Comms. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994); *Fee v. Herndon*, 900 F.2d 804 at 807 (5th Cir. 1990), *cert. denied*, 498 U.S. 908 (1990); *Lewis v. Law-Yone*, 813 F.Supp. 1247 at 1252-53 (N.D.Tex. 1993). A court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also, Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss). In fact, the court should "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). A conclusory allegation is one which lacks any factual support. *Hawkins v. AT&T*, No. 3:12-CV-1173-L, 2013 WL 4505154, *5, fn. 2 (N.D. Tex. Aug. 5, 2013) (citing *Twombly*, 550 U.S. at 553-554); see also *Willis v. Nucor Corp.*, 282 S.W.3d 536, 548 (Tex. App.—Waco 2008, no pet.) ("A conclusory statement is one that does not provide the underlying facts to support the conclusion.").

To avoid dismissal, a plaintiff must allege all the proper elements of a right to recover from a defendant. *Tuchman*, 14 F.3d at 1067. The court should dismiss a complaint if it lacks an allegation regarding one of the required elements of a cause of action. See *Keane v. Fox TV Stations, Inc.*, 297 F. Supp. 2d 921 at 925 (S.D. Tex. 2004) (citing *Blackburn v. City of Marshall*, 42 F.3d 925 at 931 (5th Cir. 1995)).

### B.      Plaintiff's Official Capacity Claims Should Be Dismissed

Plaintiff asserts claims against Sheriff Meeks in his official capacity and against the County. Dkt. 1, pp. 13-21. Suing a governmental official in his official capacity is merely

another way of pleading an action against the entity of which that officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985); *Brandon v. Holt*, 469 U.S. 464, 471 (1985). Courts have recognized the propriety of dismissing redundant claims when they are asserted against both an individual in his or her official capacity and the entity for which the official works. *See Castro Romero v. Becken*, 256 F.3d 349, 354 (5th Cir. 2001) (upholding the dismissal of claims against officers in their official capacity which were duplicative of the claims against the governmental entities); *Clark v. LaMarque Indep. Sch. Dist.*, 54 F. App'x 412 (5th Cir. 2002); *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir. 1996) (dismissing claims against county judge in his official capacity as redundant of claims against the county); *Mays v. Valdez*, No. 3:13-CV-1272-M-BF, 2013 WL 6228731, at *3 (N.D. Tex. Nov. 29, 2013) (official capacity claims against a sheriff in his or her official capacity are actually claims against the county) (citing *Brooks v. George County*, 84 F.3d 157, 165 (5th Cir. 1996)); see also *Salazar v. Kleberg County, Tex.*, No. 2:11-CV-00150, 2012 WL 1610542, at *4 (S.D. Tex. May 8, 2012) (official capacity claims against a sheriff were duplicative of claims against the county).

Because Plaintiff's official capacity claims against Meeks are redundant of her claims against the County, the official capacity claims against Meeks should be dismissed.

### C.     Plaintiff's Claims for Punitive Damages Should Be Dismissed

Plaintiff seeks punitive damages in her claims against the County and in her official capacity claims against Meeks, which are actually claims against the County. Dkt. 1, p. 15 (¶73), p. 19 (¶99), p. 21 (¶5). A plaintiff may not recover punitive damages from a municipality for claims under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("a municipality is immune from punitive damages under 42 U.S.C. § 1983"); *Stern v. Hinds County, Miss.*, 436 Fed. Appx. 381, 382 (5th Cir. 2011) (punitive damages not recoverable in § 1983 official capacity claim against a sheriff); *May v. Andres*, No. 3:16-CV-1674-L, 2017

WL 495832, at *9 (N.D. Tex. Feb. 7, 2017).

The Court should dismiss Plaintiff's claims for punitive damages against the County and against Meeks in his official capacity.

### D.    Plaintiff's Claims for Declaratory Relief Should Be Dismissed

Plaintiff seeks declaratory judgments that Defendants' alleged conduct violated the First and Fourteenth Amendments. Dkt. 1, p.21 (¶¶1-3).  In motions to dismiss made pursuant to Fed. R. Civ. P 12(b)(6), "courts regularly reject declaratory judgment claims that seek resolution of matters that will already be resolved as part of the claims in the lawsuit." *Flanagan v. Chesapeake Exploration, LLC*, No. 3:15-CV-0222-B, 2015 WL 6736648, at *4 (N.D. Tex. Nov. 4, 2015) (citing *Regus Mgmt. Grp., LLC v. Int'l Bus. Mach. Corp.*, No. 07-CV-1799, 2008 WL 2434245, at *3 (N.D. Tex. June 17, 2008); *Xtria LLC v. Tracking Sys., Inc.*, No. 07-CV-0160, 2007 WL 1791252, at *3 (N.D. Tex. June 21, 2007); *Assistmed, Inc. v. Conceptual Health Solutions, Inc.*, No. 05-CV-0880, 2006 WL 3691003, at *17 (N.D. Tex. Dec. 14, 2006); *Albritton Props. v. Am. Empire Surplus Lines*, No. 04-CV-2531, 2005 WL 975423, at *2 (N.D. Tex. Apr. 25, 2005); *Kogul v. Xspediou Mgmt. Co.*, No. 04-CV-2518, 2005 WL 1421446, at * 4 (N.D. Tex. June 1, 2005)); see also, *Landscape Design & Const., Inc. v. Transp. Leasing/Contract*, No. CIV.A.3:00-CV-0906-D, 2002 WL 257573, at *10 (N.D. Tex. Feb. 19, 2002).

The Court should dismiss Plaintiff's claims for declaratory relief because these claims merely seek a declaration regarding issues that will be resolved as part of Plaintiff's substantive claims in the lawsuit.  *See*, Dkt. 1, pp. 13-21.

### E.    Plaintiff's Claims Against the County and Sheriff Meeks in his Official Capacity Should Be Dismissed

#### 1.    The Standard for Municipal Liability

Municipal liability under Section 1983 requires proof of a policymaker, an official policy

or custom, and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Social Sciences*, 436 U.S. 658, 694 (1978)).   Because *respondeat superior* liability does not apply, proof of these elements is necessary in order to distinguish individual violations perpetrated by local government employees from those which can be fairly identified as actions of the government itself.   *Id.*; see also, e.g., *Jackson v. Sheriff of Ellis County, TX*, No. CIV.A.3:00-CV-1965-G, 2001 WL 1149102, at *2 (N.D. Tex. Sept. 26, 2001) (under § 1983, a plaintiff must prove that he suffered a deprivation of a federally protected right which resulted from an official policy, custom, or practice of the county).   A county may only be held liable for deprivations caused by decisions of officials whose acts may fairly be said to be those of the county. *Bd. of County Comm'rs of Bryan County, v. Brown*, 520 U.S. 397, 403-04 (1997) (citing *Monell*, 436 U.S. at 694).   A plaintiff who claims to have been injured due to an officially promulgated policy must specifically identify the policy at issue and must show a direct causal link between the governmental policy and the constitutional deprivation.   *Piotrowski*, 237 F.3d at 580; see also, *Whitley v. Hanna*, 726 F.3d 631, 648-49 (5th Cir. 2013).

In the absence of proof of an officially promulgated governmental policy, a plaintiff may establish municipal liability through proof that a deprivation was caused by a custom that is so widespread as to have the force of law. *Piotrowski,* 237 F.3d at 579 (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).   A custom capable of supporting municipal liability under Section 1983 requires evidence of persistent, often repeated, constant violations.   *Id.* at 581 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)).   A custom "consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the

conduct." *Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161, 169 (5th Cir. 2010)); *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850-52 (5th Cir. 2009) (noting that sufficiently numerous prior incidents are required, and finding "27 incidents of excessive force over a period of four years do not reflect a pattern that can be said to represent official policy of condoning excessive force").  A custom requires similarity and specificity, and prior incidents cannot simply include any and all bad or unwise acts, but rather they must point to the specific violation in question. *Id.* at 851 (citing *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).

### 2.      Plaintiff Has Not Pled Facts Sufficient to Establish an Official Policy or a Custom

Plaintiff provides the following assertions concerning an allegedly official policy or custom of the County:

(1) "it is Defendants' official policy and/or longstanding custom to screen for and remove from the HCSO Facebook page comments on matters of public interest that are critical of, unpopular with, or otherwise unfavorable to Defendants (Dkt. 1, p. 11, ¶46);

(2) "it is Defendants' official policy and/or longstanding custom to ban speakers from the HCSO Facebook page who express viewpoints on matters of public interest that are critical of, unpopular with, or otherwise unfavorable to Defendants (Dkt. 1, p. 11, ¶ 47);

(3) "Defendants' official policy and/or longstanding custom is designed and executed to shape public discourse on the HCSO Facebook page to encourage and reflect only those viewpoints that are popular with, complimentary of, or otherwise favorable to Defendants (Dkt. 1, p. 12, ¶51);

(4) "Defendants have gone so far as to clearly express a willful policy of restricting speech based on the speaker's viewpoint in the 'About' section of the HCSO Facebook page,

explaining that '[w]e welcome your input and POSITIVE comments regarding the Hunt County Sheriff's Office.'" (Dkt. 1, p. 12, ¶52);

(5) "Defendant Meeks and/or John Does 1-10, having final policy-making authority over administration and maintenance of the public HCSO Facebook page, authorized, supervised, and endorsed the decisions to" remove Plaintiff's and others' comments and ban Plaintiff and others from the HCSO Facebook page (Dkt. 1, p. 12, ¶ 55);

(6) "Defendants Meeks and/or John Does 1-10, having final policy-making authority over administration and maintenance of the public HCSO Facebook page, deliberately allowed comments expressing viewpoints popular with and favorable to Defendants to remain on the public HCSO Facebook page, in furtherance of official policy and/or longstanding custom" (Dkt. 1, pp. 12-13, ¶56);

(7) the January 18, 2017 HCSO post reflects Defendants' policy and custom regarding comment removal and user bans (Dkt. 1, p. 16, ¶82);[4]

(8) "Defendant Hunt County developed, ratified, enforced, and continue to enforce an official county policy and/or longstanding custom of removing and censoring speech concerning matters of public interest from the HCSO Facebook page, but only where such speech is critical of, unpopular with, or otherwise unfavorable to Defendants" (Dkt. 1, p. 17, ¶87);

(9) "Defendant Hunt County's official county policy and/or longstanding custom also calls for banning members of the public from the public HCSO Facebook page as retaliation and punishment for expressing critical or unpopular viewpoints on the HCSO Facebook Page" (Dkt. 1, pp. 17-18, ¶88);

---

[4] Plaintiff asserts that the HCSO January 18 post stated, "[**a]ny post filled with foul language, hate speech of all types and comments that are considered inappropriate will be removed and the user banned.** There are a lot of families on this page and it is for everyone and therefore we monitor it extremely closely.  Thank you for your understanding."  Dkt. 1, p. 7, ¶30 (emphasis added by Plaintiff).

(10) "The official county policy and/or longstanding custom was developed, ratified, enforced, and continues to be enforced through and by Defendant Meeks and Defendants John Does 1-10 who are vested with final policy-making authority over law enforcement and other official Hunt County matters" (Dkt. 1, p. 18, ¶89).

### a) Plaintiff's Vague Allegations Concerning John Does 1-10 Are Insufficient to Establish an Official Policy

Without providing any supporting factual allegations, Plaintiff vaguely asserts that John Does 1-10 have "final policy-making authority over administration and maintenance of the public HCSO Facebook page" and that they "are vested with final policy-making authority over law enforcement and other official Hunt County matters."  Dkt. 1, pp. 12-13, ¶56, p. 18, ¶89. Plaintiff identifies John Does 1-10 in the following manner: "each was an elected or appointed official, employee, servant or agent of Defendant Hunt County" whose "acts were conducted under the authority, employment, authorization, or consent of one or both of the other Defendants and/or in concert with the other Defendants."  Dkt. 1, p. 3, ¶10.  To the extent that the John Does are employees, servants, or agents of Hunt County, their conduct cannot give rise to municipal liability under 42 U.S.C. § 1983, because *respondeat superior* liability does not apply and because County employees, servants, or agents are not policymakers for the County. See, e.g., *Monell*, 436 U.S. at 691; *Bowden v. Jefferson County*, No. 16-40311, 2017 WL 243341, at *2–4 (5th Cir. Jan. 19, 2017); *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1246 (5th Cir. 1993).

To the extent that the John Does are elected or appointed officials of the County, Plaintiff's allegations are circular and conclusory: Plaintiff is claiming no more than that an unnamed official, in an unidentified position, with unidentified responsibilities and authority for the County, created a policy for the County because he was a County policy-maker who made a

County policy.  Plaintiff makes this vague allegation without offering any supporting facts.  Dkt. 1, p. 3, ¶10.  An allegation which lacks supporting facts is conclusory, and the Court should not accept such allegations as true.  *Gentilello*, 627 F.3d at 544; *Plotkin*, 407 F.3d at 696; *Twombly*, 550 U.S. at 553-554; *Hawkins*, 2013 WL 4505154 at *5, fn. 2; *Willis*, 282 S.W.3d at 548.

Plaintiff's allegations concerning the John Does are insufficient to state a plausible claim for relief against the County because they do not establish an official policy.

**b)      Plaintiff's Allegations Concerning Meeks Are Insufficient to Establish an Official Policy**

Plaintiff offers conclusory and vague assertions that Sheriff Meeks has "final policy-making authority over administration and maintenance of the public HCSO Facebook page" and that Meeks is "vested with final policy-making authority over law enforcement and other official Hunt County matters."  Dkt. 1, pp. 12-13, ¶56, p. 18, ¶89.

"The policy of an individual official cannot give rise to governmental liability unless the official was one to whom the governing body had delegated final policymaking authority, not mere discretion or decision-making authority."  *Brown v. Wichita County, Tex.*, No. 7:05-CV-108-O, 2011 WL 1562567, at *6 (N.D. Tex. Apr. 26, 2011), aff'd sub nom. *Brown v. Bolin*, 500 Fed. Appx. 309 (5th Cir. 2012) (citing *Bennett*, 728 F.2d at 768–69 ("'The policy is that of the city, however, where it is made by an official under authority to do so *given by the governing authority*.'") (emphasis added)).[5]   In determining whether an official is a policymaker for a governmental entity, a court must ask whether the official is the final policymaker for the local government in a particular area or on a particular issue.  *Allison v. Tarrant County, Tex.*, 92 F.

---

[5] In *Bennett*, the Fifth Circuit explained that "the delegation of policymaking authority requires more than a showing of mere discretion or decisionmaking authority on the part of the delegee… The governing body must expressly or impliedly acknowledge that the agent or board acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent or board."  728 F.2d at 769; see also, *Bowden*, 2017 WL

Supp. 2d 601, 603 (N.D. Tex. 2000).

Plaintiff does not allege any facts to support her contention that the County delegated to Sheriff Meeks final policymaking authority concerning social media websites for the County. Such alleged authority does not fall within the several areas in which Courts have identified Texas sheriffs as policymakers.  See, e.g., *Culbertson v. Lykos*, 790 F.3d 608, 624 (5th Cir. 2015) (sheriff is a final policymaker in the area of preserving the peace in his jurisdiction and arresting all offenders);  *Williams v. Kaufman County*, 86 F. Supp. 2d 586, 599–600 (N.D. Tex. 2000), aff'd, 352 F.3d 994 (5th Cir. 2003) (sheriff is the county's final policymaker in the area of law enforcement) (citing *Colle v. Brazos County Tex.*, 981 F.2d 237, 244 (5th Cir. 1993));  *Allison*, 92 F. Supp. 2d at 603-04 (sheriff may be a final policymaker with respect to certain employment decisions in the sheriff's department);  *Brown*, 2011 WL 1562567, at *7 (sheriff is final policymaker with respect to the county jail).

According to Plaintiff, the HCSO Facebook page provides a variety of information about matters of public concern, including "news and information about local law enforcement, local government, and local events.  Dkt. 1, p. 5, ¶23.  An informational webpage is not a matter of law enforcement and does not fit within the areas in which sheriffs have traditionally been found to have been delegated policymaking authority.  Plaintiff offers no well-pled facts to support her contention that the County ever delegated policymaking authority over informational County webpages to Sheriff Meeks.  Plaintiff's reliance on alleged action by Meeks is insufficient to state a claim for relief against the County because it is not sufficient to establish that any action by Meeks in connection with the HCSO Facebook page constitutes an official County policy or that any such alleged action was taken pursuant to an official County policy.

---

243341, at *2.

> **c)      Plaintiff's Conclusory Allegations Concerning the County Are Insufficient to Establish an Official Policy**

Plaintiff offers only two assertions with respect to alleged behavior by the County: (1) that the County "developed, ratified, enforced, and continue (sic) to enforce an official county policy and/or longstanding custom of removing and censoring speech concerning matters of public interest from the HCSO Facebook page, but only where such speech is critical of, unpopular with, or otherwise unfavorable to Defendants" (Dkt. 1, p. 17, ¶87); and (2) that the County's allegedly official County policy "calls for banning members of the public from the public HCSO Facebook page as retaliation and punishment for expressing critical or unpopular viewpoints on the HCSO Facebook Page." Dkt. 1, pp. 17-18, ¶88.

Plaintiff offers no well-pled factual allegations to support her contentions that the County undertook such conduct, and the Court should not accept such conclusory allegations as true for the purposes of this motion.  *Gentilello*, 627 F.3d at 544; *Plotkin*, 407 F.3d at 696; *Twombly*, 550 U.S. at 553-554; *Hawkins*, 2013 WL 4505154 at *5, fn. 2; *Willis*, 282 S.W.3d at 548.  These allegations are insufficient to state a plausible claim for relief against the County because they do not establish an official policy.

> **d)      Plaintiff's Allegations are Insufficient to Establish a Custom**

Plaintiff contends that the County has a custom of removing from the HCSO Facebook page comments that are critical of, unpopular with, or otherwise unfavorable to Defendants, that the County has a custom of banning speakers from the HCSO Facebook page who express viewpoints that are critical of, unpopular with, or otherwise unfavorable to Defendants, and that the County's alleged custom is designed and executed to shape public discourse on the HCSO Facebook page to encourage and reflect only those viewpoints that are popular with, complimentary of, or otherwise favorable to Defendants.  Dkt. 1, p. 11, ¶¶46-47, p. 12, ¶51.

Plaintiff offers the following factual allegations in support of this contention:

(1) Defendants removed a comment Plaintiff made on a January 18, 2107 HCSO post and banned her from posting other comments on the HCSO Facebook page (Dkt. 1, p. 8, ¶33);[6]

(2) Defendants removed four comments from others which "in large part criticized the Defendants' January 18 Post for expressing a policy of deleting and censoring protected speech" or which expressed "other viewpoints unfavorable to Defendants" (Dkt. 1, p. 7, ¶31, p. 9, ¶38);[7]

(3) Another individual made a comment which implied that a previous comment had been deleted, though the content of the prior comment was not identified (Dkt. 1, p. 9, ¶¶38-39);

(4) Defendants may have restored certain unidentified comments (Dkt. 1, p. 10, ¶43); and

(5) Defendants may have previously removed a comment which criticized Meeks and may have banned the author from commenting further on the HCSO Facebook page, although the content of the allegedly removed comment is not identified.  Dkt. 1, p. 11, ¶49.

These few vague allegations are not adequate to establish a custom capable of supporting governmental liability under §1983 because they do not demonstrate conduct which is sufficiently widespread, long-established, numerous, persistent, constant, and similar to the conduct of which Plaintiff complains.  *Supra* at 14-15; *Piotrowski,* 237 F.3d at 579; *Peterson*, 588 F.3d at 850-52.

Additionally, the evidence Plaintiff attaches to her complaint demonstrates that the County does not have a widespread, persistent, or constant custom of removing from the HCSO Facebook page comments that are critical of, unpopular with, or otherwise unfavorable to

---

[6] This alleged action is the basis for this lawsuit.

[7] These allegedly include: (1) a comment stating "Just stopping by to see if your (sic) deleting posts.  Snap shot taken at 7:19 EST"; (2) a comment stating, "This is a public forum and deleting comments is paramount to shredding files you don't like"; (3) a link to a YouTube video allegedly depicting and commenting on forceful encounters between law enforcement and citizens; and (4) information and links to articles discussing censorship of comments on Facebook by other law enforcement agencies.  Dkt. 1, p. 9, ¶38.

Defendants.  Cf. Dkt. 1, p. 11, ¶¶46-47, p. 12, ¶51; Dkt. 1-2.  Instead, Plaintiff's evidence shows that comments on the HCSO's Facebook page include: (1) numerous comments critical of police officers (Dkt. 1-2, p. 4 [S. Marshall, S. Dennison], p. 5 [J. Kittle, E. Riggans, D.C. Dot], p. 9 [I. Floberg, A. Hansen]); (2) numerous comments criticizing the removal of comments from the Facebook page (Dkt. 1-2, p. 7 [J. Donnelly, S. Marshall], p. 8 [G. Brazee, R. Johnson, M. McKenzie], p. 9 [K. Nelson, S. Dennison]); and (3) links to articles concerning removal of comments on Facebook by other law enforcement agencies.  Dkt. 1-2, p. 9 [K. Nelson, D. Grant].

Plaintiff has not adequately pled either an official policy or an established custom which was the moving force behind any deprivation of any federally protected right.  Therefore, Plaintiff's allegations are legally insufficient to state a claim for governmental liability under Section 1983, and the Court should dismiss her claims against the County.  *Piotrowski*, 237 F.3d at 578; *Monell*, 436 U.S. at 694.

### F.    Plaintiff's Individual Capacity Claims Should Be Dismissed

Plaintiff's individual capacity claims against Meeks should be dismissed because Meeks is entitled to qualified immunity with respect to Plaintiff's claims for alleged violations of free speech and procedural due process rights.  Dkt. 1, pp. 13- 17 (¶¶59-85).

### 1.    Qualified Immunity Provides Broad Protections

Qualified immunity is a robust defense which "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Mullenix v. Luna*, __ U.S. __, 136 S. Ct. 305, 308, (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). When a defendant raises a qualified immunity defense, the plaintiff has the burden of demonstrating that the official violated a statutory or constitutional right which was "clearly established" at the time of the challenged conduct. *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017).  The court must ask whether the law so clearly and unambiguously prohibited the defendant's conduct that

every reasonable official would understand that the defendant's actions violated the law. *Id.* at 685-86 (citing *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc); *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). In order to answer that question in the affirmative, the Court must be able to point to controlling authority, or a robust consensus of persuasive authority, which defines the contours of the right in question with a high degree of particularity. *Id.* at 686; see also, *Vincent v. City of Sulphur*, 805 F.3d 543, 549 (5th Cir. 2015) ("two out-of-circuit cases and a state-court intermediate appellate decision hardly constitute persuasive authority adequate to qualify as clearly established law sufficient to defeat qualified immunity in this circuit.").

Courts may not define "clearly established" law at a high level of generality but must determine whether, in light of the specific context of the case, not as a broad proposition, the "violative nature of *particular* conduct is clearly established." *Mullenix*, 136 S. Ct. at 308 (emphasis in original) (citing *al–Kidd*, 563 U.S. at 742; *Brosseau v. Haugen*, 543 U.S. 194, 198, (2004) (per curiam)). A plaintiff must identify "adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Vincent*, 805 F.3d at 547. "Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case." *Id.* (citing *Brosseau*, 543 U.S. at 198). "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*." *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (emphasis original); *accord Sama v. Hannigan*, 669 F.3d 585, 591 (5th Cir. 2012); *Pasco v. Knoblauch*, 566 F.3d 572, 578 (5th Cir. 2009).

The Fifth Circuit has recently repeatedly rejected various plaintiffs' attempts to defeat assertions of qualified immunity by applying general concepts of constitutional law to novel factual circumstances, or by relying on case law from other circuits or from district courts.  For instance, in *Vincent*, the plaintiff brought claims under § 1983 against various police officers in connection with a no-trespass order which banned Vincent from entering onto certain city property, arguing that the officers had violated his procedural due process rights.  805 F.3d at 545.  The Court rejected Vincent's argument, explaining that, "[a]lthough the Supreme Court decisions amply support the proposition that there is a general right to go to or remain on public property for lawful purposes, none comes near the level of specificity needed to put 'beyond debate' the related but distinct proposition that a person under investigation for threatening deadly violence against city officials has a right to notice and a hearing before being banned from entering city buildings."  *Id.* at 548.  Neither the Supreme Court precedents establishing a balancing test for procedural due process protections nor factually distinguishable cases from other circuit courts involving no-trespass warnings were sufficient to demonstrate that any clearly established law prohibited the officers' conduct.  *Id.* at 550-51.  Consequently, the officers were entitled to governmental immunity.  *Id.* at 551.

More recently, in *Turner*, 848 F.3d at 678,[8] a detainee brought a claim under § 1983 against police officers who detained him when he was video recording a police station from a public sidewalk across the street.  The court rejected Turner's argument that general First Amendment protections extend to the video recording of police activity and constitute clearly established law which prohibited the officers' conduct.  *Id.* at 686-87.  Although three sister circuit courts and some district courts within the Fifth Circuit had held that the First Amendment

---

[8] This case was published on February 16, 2017, nearly a month after the incidents which form the basis of the case at bar.

protects the rights of individuals to videotape police officers performing their duties, the Fifth Circuit held that, because at the time in question neither the Supreme Court nor the Fifth Circuit had determined whether First Amendment protection extends to the recording or filming of police, the law was not clearly established, and the individual defendants were entitled to qualified immunity. *Id*. at 687.

In *Morgan*, the Fifth Circuit, sitting *en banc*, granted qualified immunity to school district officials who prohibited students from distributing materials containing Christian messages on school property, because "clearly established law did not put the constitutionality of their actions beyond debate." 659 F.3d at 371. The plaintiffs argued that First Amendment precedents concerning viewpoint discrimination rendered the law clearly established and defeated the governmental officials' assertion of qualified immunity. *Id*. at 378. The Court rejected this argument, explaining that "the generalized prohibition against viewpoint discrimination is far too abstract to clearly establish the law" under the circumstances of the case. *Id*. at 382. The circumstances at issue in *Morgan* required analysis of competing First Amendment jurisprudence, including questions concerning whether students' speech could be perceived to be government-sponsored speech. *Id*. at 375.

### 2.     Meeks is Entitled to Qualified Immunity on Plaintiff's Free Speech Claims

In the case at bar, Plaintiff attempts to define the applicable law at a high level of generality and offers no more than abstract statements of legal principle untethered to analogous facts; this is inadequate to demonstrate a clearly established law sufficient to defeat Meeks' assertion of qualified immunity. *Vincent*, 805 F.3d at 547 (citing *Brosseau*, 543 U.S. at 198).

With respect to her free speech claims, Plaintiff relies on *Rosenberger v. Rector and Visitors of Univ. of Va*., 515 U.S. 819, 829-30 (1995), *R.A.V. v. St. Paul*, 505 U.S. 377, 391-92

(1992), and *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 806 (1985), and merely alleges that "[i]t is clearly established that an official…cannot censor or restrict speech, or punish a speaker, based on the viewpoint expressed, regardless of the forum." Dkt. 1, pp. 13-14, ¶63.   None of these cases addressed situations analogous to that alleged in Plaintiff's Complaint: government personnel allegedly removing comments and banning individuals from posting comments on a governmental entity's informational social media webpage.  Dkt. 1, p. 5, ¶23.[9]  Indeed, social media websites did not exist at the time of any of the decisions on which Plaintiff relies.  At the time of the incidents giving rise to the case at bar, no Supreme Court or Fifth Circuit case applied free speech forum analysis to comments posted on a governmental entity's informational social media webpage.  Additionally, the evidence Plaintiff attached to her Complaint undermines her speculation that the comment she allegedly posted on the HCSO Facebook page was removed based on the viewpoint it expressed, given that the same comment thread contains numerous comments expressing viewpoints critical of law enforcement personnel, the HCSO, and removal of comments from the HCSO Facebook page.  *Supra* at 21-22.  Consequently, cases concerning viewpoint-based discrimination are not obviously applicable to the circumstances at issue in the present case.

It is not clearly established that free speech forum analysis even applies in the situation presented by Plaintiff's Complaint.  In *Walker v. Tex. Div. Sons of Confederate Veterans, Inc.*, __ U.S. __, 135 S. Ct. 2239 (2015), the Supreme Court refused to apply forum analysis in determining whether the state had violated the plaintiff's free speech rights when it rejected a specialty license plate design which included a confederate battle flag.  The Court explained that,

---

[9] *Rosenberg* involved an independent student publication which sought funding from a state university.  515 U.S. at 2511.  *R.A.V.* involved the validity of a state's "Bias-Motivated Crime Ordinance," under which the plaintiff was charged after he allegedly burned a cross on the lawn of an African-American family.  505 U.S. at 377.  *Cornelius* involved a charitable fundraising program directed at federal employees.  473 U.S. at 804-806.

"[w]e have previously used what we have called 'forum analysis' to evaluate government restrictions on purely private speech that occurs on government property" but that, "[w]hen government speaks, it is not barred by the Free Speech Clause from determining the content of what it says." *Id*. at 2250, 2245. Although the Court found that Texas engages in expressive conduct in connection with its issuance of specialty license plates, *Walker* involved a hybrid of government speech and private speech, in that the individual purchasing the specialty license plate was free to choose any of the available designs and messages approved by the state or to propose a new message or design. *Id*. at 2251-53. Nevertheless, the Court explained that, "[t]he fact that private parties take part in the design and propagation of a message does not extinguish the governmental nature of the message or transform the government's role into that of a mere forum-provider." *Id*. at 2251.

Plaintiff alleges that Defendants created an official Facebook page for the HCSO and that they frequently use this social media site as a means of communicating with the public. Dkt. 1, p. 5, ¶¶ 22-23. Plaintiff alleges further that on the HCSO Facebook page, Defendants have expressly stated their intent to monitor and restrict the use of the page in keeping with their purpose of providing a message that is appropriate for a family audience, and their intent not to create a public forum for communication. Dkt. 1, pp. 6-7, ¶¶ 25, 30. Thus, Supreme Court precedents relating to government speech at least arguably apply to the case at bar, and pre-existing law does not dictate or compel the conclusion for every like-situated, reasonable government agent that any action by Meeks in connection with Plaintiff's or others' alleged comments on the HCSO Facebook page violated the Constitution. *Supra* at 22-23; *Pierce*, at 882.

Plaintiff also appears to assert a free speech retaliation claim. Dkt. 1, p. 15, ¶¶ 69-71. In

order to establish such a claim, Plaintiff must prove: (1) Defendants were acting under color of state law; (2) Plaintiff's activities were protected under the First Amendment; (3) Defendants' actions caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (4) Defendants' adverse actions were substantially motivated against Plaintiff's exercise of constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002); *Morrison v. Walker*, No. 1:13-CV-327, 2015 WL 11102144, at *6–8 (E.D. Tex. Sept. 24, 2015).   Meeks is entitled to qualified immunity with respect to Plaintiff's free speech retaliation claim because, as explained above, it is not clearly established under current First Amendment jurisprudence, that Plaintiff's alleged activities in connection with the HCSO Facebook page were protected under the First Amendment.[10]

### 3.   Meeks is Entitled to Qualified Immunity on Plaintiff's Due Process Claim

A plaintiff who asserts a due process violation in a § 1983 case must first identify a protected life, liberty, or property interest.   *Morrison*, 2015 WL 11102144, at *6 (citing *Blackburn*, 42 F.3d at 935).   With respect to her due process claim, Plaintiff merely asserts that Defendants removed her allegedly protected speech from the HCSO Facebook page and banned her from posting on this page without notice or legitimate explanation and that Defendants did not provide a means of appeal.   Dkt. 1, p. 16, ¶¶ 79-81.   As explained above, it is not clearly established that Plaintiff's alleged speech was constitutionally protected, because it is not clear that forum analysis applies or that Plaintiff experienced viewpoint-based discrimination.   *Supra* at 25-27.   Plaintiff does not even assert that the proposition that an individual has a constitutionally protected interest in posting comments on a governmental entity's informational social media webpage is clearly established law.   Neither does Plaintiff assert that the

---

[10] Additionally, Plaintiff has offered only conclusory allegations concerning the elements of a free speech retaliation

proposition that a governmental entity must provide notice and a hearing when it removes comments or precludes an individual from posting on its informational social media webpage is clearly established law.

Defendants are unaware of any Supreme Court or Fifth Circuit cases which, as of the time of the incidents giving rise to the case at bar, have held that a governmental entity must provide notice and a hearing when it removes comments posted on a governmental entity's informational social media webpage or when it prevents an individual from posting comments on such a webpage.  Thus, pre-existing law does not dictate or compel the conclusion for every like-situated, reasonable government agent that any action taken by Meeks in connection with Plaintiff's or others' alleged comments on the HCSO Facebook page violated the due process guarantees of the Constitution.  *Supra* at 22-23; *Pierce*, at 882.

Because Plaintiff's allegations do not demonstrate that Meeks violated clearly established law, Meeks is entitled to qualified immunity with respect to Plaintiff's individual capacity claims, and the Court should dismiss these claims.

### G.     Plaintiff's Supervisor Liability Claim Should Be Dismissed.

Plaintiff briefly asserts that Meeks should be held liable for unconstitutional conduct of his subordinates.  Dkt. 1, p. 14, ¶ 67.  To the extent that Plaintiff intends this allegation to constitute a separate claim, the Court should dismiss this claim because she offers only conclusory allegations in support and because she fails to allege all elements of such a cause of action.  *Supra* at 10-11; *Gentilello*, 627 F.3d at 544; *Tuchman*, 14 F.3d at 1067.

"Supervisory officials cannot be held liable for the unconstitutional actions of their subordinates based on any theory of vicarious or respondeat superior liability." *Lewis v. City of Waxahachie*, No. 3:10-CV-2578-N-BH, 2011 WL 7070991, at *4 (N.D. Tex. Dec. 21, 2011),

---

claim. Dkt. 1, p. 15, ¶¶ 69-71.  This is insufficient to defeat a motion to dismiss.  *Supra* at 10-11.

report and recommendation adopted, 2012 WL 176681 (N.D. Tex. Jan. 20, 2012) (citing *Estate of Davis ex rel. McCully*, 406 F.3d at 381).  "The acts of a subordinate 'trigger no individual § 1983 liability.'"  *Id.* (quoting *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir.1999).  Instead, "[t]here must be some showing of personal involvement by a particular individual defendant to prevail against such individual."  *Id.*  Plaintiff cannot make this showing by means of generalized allegations.  *Id.*  (citing *Howard v. Fortenberry*, 723 F.2d 1206 (5th Cir.1984)).

Plaintiff has failed to state a claim on which relief may be granted with respect to any potential liability of Meeks based on the conduct of his subordinates.  The Court should, therefore, dismiss this claim.

WHEREFORE, PREMISES CONSIDERED, Defendants pray that the Court grant this motion to dismiss for failure to state claims upon which relief can be granted, and that all of Plaintiff's causes of action against Hunt County, Texas and Sheriff Randy Meeks be dismissed with prejudice to the refiling of same; Defendants further pray that Plaintiff take nothing by this suit; that all relief requested by Plaintiff be denied; and that Defendants recover all costs of suit; as well as for such other and further relief, both general and special, at law or in equity, to which Defendants may show themselves to be  justly entitled.

Respectfully submitted,

   /s/ Thomas P. Brandt
**THOMAS P. BRANDT**
 State Bar No. 02883500
 tbrandt@fhmbk.com
**FRANCISCO J. VALENZUELA**
 State Bar No. 24056464
 fvalenzuela@fhmbk.com
**LAURA O'LEARY**
 State Bar No. 24072262
 loleary@fhmbk.com

**FANNING HARPER, MARTINSON, BRANDT & KUTCHIN, P.C.**
Two Energy Square
4849 Greenville Ave. Suite 1300
Dallas, Texas 75206
(214) 369-1300 (office)
(214) 987-9649 (telecopier)
**ATTORNEYS FOR DEFENDANTS HUNT COUNTY, TEXAS, AND SHERIFF RANDY MEEKS**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been delivered to all parties of record, in compliance with the Court's ECF/CM system and/or Rule 5 of the Federal Rules of Civil Procedure, on the 31st day of March, 2017.

/s/ Thomas P. Brandt
**THOMAS P. BRANDT**