## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **DEANNA J. ROBINSON** | § | |
| | § | |
| Plaintiff | § | |
| | § | **CIVIL ACTION NO. 3:17-cv-513-K** |
| **vs.** | § | |
| | § | |
| **HUNT COUNTY, TX;** | § | |
| **RANDY MEEKS, HUNT COUNTY SHERIFF,** | § | |
| **in his individual capacity and official capacity;** | § | |
| **JEFFERY HAINES, in his individual capacity** | § | |
| **and official capacity;** | § | |
| **DESTINY TWEEDY, in her individual capacity** | § | |
| **and official capacity;** | § | |
| **JACOB SMITH, in his individual capacity and** | § | |
| **official capacity; and** | § | |
| **JOHN DOES 1-5, in their individual capacities** | § | |
| **And official capacities.** | § | |
| | § | |
| Defendants | § | |

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
### FIRST AMENDED COMPLAINT AND BRIEF

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Defendants Hunt County, Texas, Hunt County Sheriff, Randy Meeks, in his individual capacity and official capacity, Jeffrey Haines, in his individual capacity and official capacity, Destiny Tweedy, in her individual capacity and official capacity, and Jacob Smith, in his individual capacity and official capacity ("Defendants"),[1] and, pursuant to Fed. R. Civ. P. 12(b)(6), file this, their Motion to Dismiss Plaintiff's First Amended Complaint and Brief, seeking dismissal of the claims brought in Plaintiff Deanna J. Robinson's First Amended Complaint.[2] In support thereof, Defendants respectfully show as follows:

---

[1] Defendants do not include John Does 1-5 as they have not yet been served.
[2] Pursuant to Federal Rule of Civil Procedure 12(a)(4), Defendants are not required to file an answer until fourteen (14) days after the Court rules on a motion filed pursuant to Rule 12. This extension applies regardless of whether

## SUMMARY

Plaintiff's claims against Defendants Meeks, Haines, Tweedy, and Smith, in their official capacity, are duplicative of her claims against Hunt County, Texas (the "County").  As a result, the official capacity claims against Meeks, Haines, Tweedy, and Smith should be dismissed as redundant of the claims against the County.  Plaintiff's claims for punitive damages against Meeks, Haines, Tweedy, and Smith, in their official capacity, should be dismissed with prejudice because punitive damages awards are not permitted against governmental entities under 42 U.S.C. § 1983.  Plaintiff's claims for punitive damages against Meeks, Haines, Tweedy, and Smith, in their individual capacity, should be dismissed because these Defendants are entitled to qualified immunity and because Plaintiff has not offered sufficient well-pled facts to state a plausible claim for punitive damages.  Plaintiff's declaratory judgment claims should be dismissed as redundant of Plaintiff's substantive claims in this lawsuit.

The Court should dismiss Plaintiff's claims against the County and Meeks, Haines, Tweedy, and Smith in their official capacity, because Plaintiff has not offered sufficient well-pled facts to state a plausible claim for municipal liability.  Plaintiff has not adequately pled facts establishing the existence of an official County policy or custom which was the moving force behind her alleged injury.

Meeks, Haines, Tweedy, and Smith, in their individual capacity, are entitled to qualified immunity with respect to Plaintiff's claims for violations of the Free Speech clause of the First and Fourteenth Amendments because: (1) it is not clearly established that comments made on a sheriff's office's Facebook page are subject to free speech regulation; (2) it is not clearly established that a sheriff's office which permits limited comment on its Facebook page has

---

the motion relates to some or all of the claims alleged in plaintiff's complaint. *See* Charles Alan Wright & Arthur R. Miller, 5B Fed. Prac. & Proc. Civ. 3d § 1346 (West 2006); *See also Morgan v. Gandalf, Ltd.*, 165 Fed. Appx. 425,

opened a forum for expressive conduct; and (3) Plaintiff's Complaint does not plead sufficient facts to establish that her comments were excluded due to viewpoint-based discrimination. Meeks, Haines, Tweedy, and Smith, in their individual capacity, are entitled to qualified immunity from Plaintiff's due process claim because it is not clearly established that an individual has a constitutionally protected interest in posting comments on a governmental entity's informational social media webpage or that a governmental entity must provide notice and a hearing when it removes comments or precludes an individual from posting on its informational social media webpage.

Finally, Plaintiff's claim for supervisor liability against Meeks and Haines should be dismissed because Plaintiff has failed to state a claim on which relief may be granted.

For all these reasons, the Court should dismiss Plaintiff's claims in their entirety.

---

428 (6th Cir. 2006).

# TABLE OF CONTENTS

SUMMARY .................................................................................................... 2

TABLE OF CONTENTS ................................................................................. 4

TABLE OF AUTHORITIES ............................................................................ 6

BACKGROUND ............................................................................................. 9

   A.  Plaintiff's Causes of Action .................................................................. 9

   B.  Plaintiff's Allegations .......................................................................... 9

ARGUMENT AND AUTHORITIES ............................................................... 10

   A.  The Standard for a Motion to Dismiss ............................................... 10

   B.  Plaintiff's Official Capacity Claims Should Be Dismissed ................ 11

   C.  Plaintiff's Claims for Punitive Damages Should Be Dismissed ........ 12

   D.  Plaintiff's Claims for Declaratory Relief Should Be Dismissed ....... 13

   E.  Plaintiff's Claims Against the County and Meeks, Haines, Tweedy, and Smith in Their
       Official Capacity Should Be Dismissed ........................................... 14

      1.   The Standard for Municipal Liability ........................................ 14

      2.   Plaintiff Has Not Pled Facts to Establish a Policy .................... 15

          a)   Plaintiff Has Not Established an Official Policymaker. ......... 16
          b)   Plaintiff's Allegations About John Does 1-5 Are Insufficient ............. 16
          c)   Haines, Tweedy, and Smith Are Not Policymakers ............. 17
          d)   Plaintiff's Allegations About Meeks Are Insufficient .......... 18
          e)   Plaintiff's Allegations About the County Are Insufficient ..... 19

      3.   Plaintiff's Allegations are Insufficient to Establish a Custom ..... 20

   F.  Plaintiff's Individual Capacity Claims Should Be Dismissed ........... 22

      1.   Qualified Immunity Provides Broad Protections ........................ 22

      2.   Meeks, Haines, Tweedy, and Smith Are Entitled to Qualified Immunity from
         Plaintiff's Free Speech Claims .................................................. 25

      3.   Meeks, Haines, Tweedy, and Smith Are Entitled to Qualified Immunity from
         Plaintiff's Due Process Claim ................................................... 28

G.   Plaintiff's Supervisor Liability Claim Should Be Dismissed. ........................................... 29

## <u>TABLE OF AUTHORITIES</u>

Cases

*Albritton Props. v. Am. Empire Surplus Lines*,
   No. 04-CV-2531, 2005 WL 975423 (N.D. Tex. Apr. 25, 2005)............................14
*Allison v. Tarrant County, Tex.*,
   92 F. Supp. 2d 601 (N.D. Tex. 2000)..................................................18, 19
*Ashcroft v. al–Kidd*,
   563 U.S. 731 (2011)...............................................................................23
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................11, 30
*Assistmed, Inc. v. Conceptual Health Solutions, Inc.*,
   No. 05-CV-0880, 2006 WL 3691003 (N.D. Tex. Dec. 14, 2006)....................14
*Bd. of County Comm'rs of Bryan County, v. Brown*,
   520 U.S. 397 (1997)........................................................................14, 16
*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................passim
*Bennett v. City of Slidell*,
   728 F.2d 762 (5th Cir. 1984) ..........................................................15, 16
*Blackburn v. City of Marshall*,
   42 F.3d 925 (5th Cir. 1995) ...............................................................28
*Bowden v. Jefferson County*,
   No. 16-40311, 2017 WL 243341 (5th Cir. Jan. 19, 2017) ..................16, 17
*Brandon v. Holt*,
   469 U.S. 464 (1985)............................................................................12
*Brooks v. George County*,
   84 F.3d 157 (5th Cir. 1996) ................................................................12
*Brosseau v. Haugen*,
   543 U.S. 194, (2004)....................................................................23, 25
*Brown v. Bolin*,
   500 Fed. Appx. 309 (5th Cir. 2012) .................................................16
*Brown v. Wichita County, Tex.*,
   No. 7:05-CV-108-O, 2011 WL 1562567 (N.D. Tex. Apr. 26, 2011) ........16, 19
*Castro Romero v. Becken*,
   256 F.3d 349 (5th Cir. 2001) ..........................................................12
*Champagne v. Jefferson Parish Sheriff's Office*,
   188 F.3d 312 (5th Cir. 1999) ..........................................................30
*City of Clinton v. Pilgrim's Pride Corp.*,
   632 F.3d 148 (5th Cir. 2010) ..........................................................11
*City of Newport v. Fact Concerts, Inc.*,
   453 U.S. 247 (1981)............................................................................12
*Clark v. LaMarque Indep. Sch. Dist.*,
   54 F. App'x 412 (5th Cir. 2002) ......................................................12
*Colle v. Brazos County Tex.*,
   981 F.2d 237 (5th Cir. 1993) ..........................................................19
*Cornelius v. NAACP Legal Def. & Educ. Fund*,
   473 U.S. 788 (1985)............................................................................26
*Culbertson v. Lykos*,
   790 F.3d 608 (5th Cir. 2015) ..........................................................18
*Estate of Davis ex rel. McCully v. City of North Richland Hills*,
   406 F.3d 375 (5th Cir. 2005) ......................................................15, 30
*Fee v. Herndon*,
   900 F.2d 804 (5th Cir. 1990) ..........................................................11

*Fernandez-Montes v. Allied Pilots Ass'n,*
  987 F.2d 278 (5th Cir. 1993) ...............................................................................11
*Flanagan v. Chesapeake Exploration, LLC,*
  No. 3:15-CV-0222-B, 2015 WL 6736648 (N.D. Tex. Nov. 4, 2015) ..................13
*Flores v. Cameron County, Tex.,*
  92 F.3d 258 (5th Cir. 1996) .................................................................................12
*Gentilello v. Rege,*
  627 F.3d 540 (5th Cir. 2010) ...............................................................11, 17, 20
*Hawkins v. AT&T,*
  No. 3:12-CV-1173-L, 2013 WL 4505154, fn. 2 (N.D. Tex. Aug. 5, 2013) ...11, 17, 20
*Howard v. Fortenberry,*
  723 F.2d 1206 (5th Cir. 1984) .............................................................................30
*Jackson v. Sheriff of Ellis County, TX,*
  No. CIV.A.3:00-CV-1965-G, 2001 WL 1149102 (N.D. Tex. Sept. 26, 2001) ......14
*Jett v. Dallas Indep. Sch. Dist.,*
  7 F.3d 1241 (5th Cir. 1993) .................................................................................17
*Keenan v. Tejeda,*
  290 F.3d 252 (5th Cir. 2002) ...............................................................................28
*Kentucky v. Graham,*
  473 U.S. 159 (1985) .............................................................................................12
*Kogul v. Xspediou Mgmt. Co.,*
  No. 04-CV-2518, 2005 WL 1421446 (N.D. Tex. June 1, 2005) ...........................14
*Kolstad v. Am. Dental Ass'n,*
  527 U.S. 526 (1999) .............................................................................................13
*Landscape Design & Const., Inc. v. Transp. Leasing/Contract,*
  No. CIV.A.3:00-CV-0906-D, 2002 WL 257573 (N.D. Tex. Feb. 19, 2002) ........14
*Lewis v. City of Waxahachie,*
  No. 3:10-CV-2578-N-BH, 2011 WL 7070991 (N.D. Tex. Dec. 21, 2011) ...........30
*Lewis v. Law-Yone,*
  813 F.Supp. 1247 (N.D.Tex. 1993) ......................................................................11
*Malley v. Briggs,*
  475 U.S. 335 (1986) .............................................................................................22
*May v. Andres,*
  No. 3:16-CV-1674-L, 2017 WL 495832 (N.D. Tex. Feb. 7, 2017) ......................13
*Mays v. Valdez,*
  No. 3:13-CV-1272-M-BF, 2013 WL 6228731 (N.D. Tex. Nov. 29, 2013) ..........12
*Monell v. Dep't of Social,*
  *Sciences,* 436 U.S. 658 (1978) .............................................................14, 16, 17, 22
*Morgan v. Gandalf, Ltd.,*
  165 Fed. Appx. 425 (6th Cir. 2006) ......................................................................2
*Morgan v. Swanson,*
  659 F.3d 359 (5th Cir. 2011) ..........................................................................23, 25
*Morrison v. Walker,*
  No. 1:13-CV-327, 2015 WL 11102144 (E.D. Tex. Sept. 24, 2015) .....................28
*Mullenix v. Luna,*
  __ U.S. __, 136 S. Ct. 305, (2015) ..................................................................22, 23
*Oliver v. Scott,*
  276 F.3d 736 (5th Cir. 2002) ...............................................................................31
*Papasan v. Allain,*
  478 U.S. 265 (1986) .............................................................................................11
*Pasco v. Knoblauch,*
  566 F.3d 572 (5th Cir. 2009) ...............................................................................24
*Peterson v. City of Fort Worth, Tex.,*
  588 F.3d 838 (5th Cir. 2009) ..........................................................................15, 21
*Pierce v. Smith,*
  117 F.3d 866 (5th Cir. 1997) .....................................................................23, 27, 29

*Piotrowski v. City of Houston,*
    237 F.3d 567 (5th Cir. 2001) ................................................................14, 15, 21, 22
*Plotkin v. IP Axess Inc.,*
    407 F.3d 690 (5th Cir. 2005) ................................................................11, 17, 20
*R.A.V. v. St. Paul,*
    505 U.S. 377 (1992) ................................................................................................26
*Regus Mgmt. Grp., LLC v. Int'l Bus. Mach. Corp.,*
    No. 07-CV-1799, 2008 WL 2434245 (N.D. Tex. June 17, 2008) ...........................13
*Rosenberger v. Rector and Visitors of Univ. of Va.,*
    515 U.S. 819 (1995) ................................................................................................26
*Salazar v. Kleberg County, Tex.,*
    No. 2:11-CV-00150, 2012 WL 1610542 (S.D. Tex. May 8, 2012) .........................12
*Sama v. Hannigan,*
    669 F.3d 585 (5th Cir. 2012) ..................................................................................24
*Smith v. Wade,*
    461 U.S. 30 (1983) ..................................................................................................13
*Stern v. Hinds County, Miss.,*
    436 Fed. Appx. 381 (5th Cir. 2011) ..................................................................12, 30
*Tuchman v. DSC Comms. Corp.,*
    14 F.3d 1061 (5th Cir. 1994) ..................................................................................11
*Turner v. Lieutenant Driver,*
    848 F.3d 678 (5th Cir. 2017) ......................................................................23, 24, 25
*Vincent v. City of Sulphur,*
    805 F.3d 543 (5th Cir. 2015) ......................................................................23, 24, 25
*Walker v. Tex. Div. Sons of Confederate Veterans, Inc.,*
    __ U.S. __, 135 S. Ct. 2239 (2015) ..................................................................26, 27
*Webster v. City of Houston,*
    735 F.2d 838 (5th Cir. 1984) ..................................................................................15
*Whitley v. Hanna,*
    726 F.3d 631 (5th Cir. 2013) ..................................................................................14
*Williams v. Kaufman County,*
    86 F. Supp. 2d 586 (N.D. Tex. 2000) ......................................................................19
*Willis v. Nucor Corp.,*
    282 S.W.3d 536 (Tex. App.—Waco 2008, no pet.) ....................................11, 17, 20
*Xtria LLC v. Tracking Sys., Inc.,*
    No. 07-CV-0160, 2007 WL 1791252 (N.D. Tex. June 21, 2007) ...........................13
*Zarnow v. City of Wichita Falls Tex.,*
    614 F.3d 161 (5th Cir. 2010) ..................................................................................15

## Statutes

42 U.S.C. § 1983 ..............................................................2, 9,10, 11, 12, 13, 15, 17, 19, 20

## Rules

Fed. R. Civ. P. 12(b)(6) ..............................................................................................1, 11, 13
Federal Rule of Civil Procedure 12(a)(4) ....................................................................................1

## Other Authorities

5B Fed. Prac. & Proc. Civ. 3d § 1346 (West 2006)......................................................................2

## BACKGROUND

### A.      Plaintiff's Causes of Action

Plaintiff asserts claims against Meeks, Haines, Tweedy, Smith, and Does 1-5[3] in their official and individual capacities relating to the removal of a comment Plaintiff allegedly made in connection with a post on the Hunt County Sheriff's Office's Facebook page (the "HCSO Facebook page") and in connection with Plaintiff's allegedly being banned from posting comments on the HCSO Facebook page.  Dkt. 18.  Plaintiff alleges that Meeks, Haines, Tweedy, Smith, and Does 1-5 violated her free speech and due process rights.  Dkt. 18, pp. 16-20 (¶¶69-97).  Plaintiff asserts a "*Monell* Claim for Relief" alleging a policy or custom of viewpoint-based restriction on speech and a violation of due process rights against the County.  Dkt. 18, pp. 21-25 (¶¶98-120).  Plaintiff also asserts a claim for supervisory liability against Meeks, Haines, and Does 1-5 in their individual and official capacity pursuant to 42 U.S.C. § 1983.  Dkt. 18, pp. 25-28 (¶¶121-136).  Plaintiff seeks compensatory and punitive damages as well as declaratory and injunctive relief.  Dkt. 18, pp. 18-20 (¶¶ 82-83, 86, 95-96), p. 23 (¶¶112-113), p. 25 (¶119), pp. 27-28 (¶¶132-133, 136), pp. 28-29 (¶¶1-11).

### B.      Plaintiff's Allegations

Plaintiff alleges that Defendants created, operate, maintain, and administer an official HCSO Facebook page which can be accessed at https://www.facebook.com/pg/Hunt-County-Sheriffs-Office-351968785012035/.  Dkt. 18, p. 7, ¶25.  Plaintiff alleges further that Defendants frequently post content on the HCSO Facebook page including news and information about local law enforcement, local government, and local events.  Dkt. 18, p. 7, ¶26.  Plaintiff alleges that the HCSO Facebook page includes an "About" section in which the author states: (1) that the page "is NOT a public forum"; (2) that comments posted to the page will be monitored and may

be deleted; and (3) that people who "like" or interact with the page indicate that they agree with these terms.  Dkt. 18, pp. 7-8, ¶28.

Plaintiff alleges that, on January 18, 2017, Defendants posted a statement on the HCSO Facebook page stating, "[a]**ny post filled with foul language, hate speech of all types and comments that are considered inappropriate will be removed and the user banned.**  There are a lot of families on this page and it is for everyone and therefore we monitor it extremely closely.  Thank you for your understanding."  Dkt. 18, p. 9, ¶35 (emphasis added by Plaintiff).  Plaintiff claims that on the same day, she posted a comment on the HCSO's January 18, 2017 post in which she criticized the Hunt County Sheriff's Office and referred to a police officer who had recently been killed as a "terrorist pig with a shiny badge."  Dkt. 18, pp. 9-10, ¶37.  Plaintiff alleges that Defendants subsequently removed comments made by Plaintiff and others from the HCSO January 18, 2017 post comment thread, and that the removed comments in large part criticized Defendants' January 18, 2017 post.  Dkt. 18, p. 9, ¶36.

Plaintiff alleges that Defendants banned her from posting further comments to the HCSO Facebook page because she expressed viewpoints "that were critical of or unfavorable to Defendants and their policies and conduct, including criticism of Defendants' stated policy of deleting and censoring speech and viewpoints on other related matters of public interest."  Dkt. 18, p. 10, ¶¶38-39.  Plaintiff alleges that, as of the date of her Amended Complaint, she remained banned from commenting on HCSO Facebook page posts.  Dkt. 18, p. 10, ¶40.

## ARGUMENT AND AUTHORITIES

### A.      The Standard for a Motion to Dismiss

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A

---

[3] As of the filing of this motion, Does 1-5 have not been served with this lawsuit.

plaintiff's obligation in response to a motion to dismiss under Rule 12(b)(6) is to provide the "grounds" for his "entitlement to relief" which requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not suffice. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010).

The Court need only accept as true the "well pleaded" facts in a Plaintiff's complaint; to be "well pleaded," a complaint must state specific facts to support the claim, not merely conclusions and unwarranted factual deductions. *Tuchman v. DSC Comms. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994); *Fee v. Herndon*, 900 F.2d 804 at 807 (5th Cir. 1990), *cert. denied*, 498 U.S. 908 (1990); *Lewis v. Law-Yone*, 813 F.Supp. 1247 at 1252-53 (N.D.Tex. 1993). A court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also*, *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss). In fact, the court should "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). A conclusory allegation is one which lacks any factual support. *Hawkins v. AT&T*, No. 3:12-CV-1173-L, 2013 WL 4505154, *5, fn. 2 (N.D. Tex. Aug. 5, 2013) (citing *Twombly*, 550 U.S. at 553-554); see also *Willis v. Nucor Corp.*, 282 S.W.3d 536, 548 (Tex. App.—Waco 2008, no pet.) ("A conclusory statement is one that does not provide the underlying facts to support the conclusion.").

## B.   Plaintiff's Official Capacity Claims Should Be Dismissed

Plaintiff asserts claims against Meeks, Haines, Tweedy, and Smith in their official

capacity and claims against the County.  Dkt. 18, pp. 16-28.  Suing a governmental official in his official capacity is merely another way of pleading an action against the entity of which that officer is an agent.  *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985); *Brandon v. Holt*, 469 U.S. 464, 471 (1985).  Courts have recognized the propriety of dismissing redundant claims when they are asserted against both an individual in his or her official capacity and the entity for which the official works.  *See, e.g., Castro Romero v. Becken*, 256 F.3d 349, 354 (5th Cir. 2001) (upholding the dismissal of claims against officers in their official capacity which were duplicative of the claims against the governmental entities).[4]   Because Plaintiff's official capacity claims against Meeks, Haines, Tweedy, and Smith are redundant to her claims against the County, these claims against Meeks, Haines, Tweedy, and Smith should be dismissed.

### C.      Plaintiff's Claims for Punitive Damages Should Be Dismissed

Plaintiff seeks punitive damages in her claims against Meeks, Haines, Tweedy, and Smith.[5]  Dkt. 18, p. 18 (¶82), p. 28 (¶5).  To the extent to which Plaintiff asserts a claim for punitive damages against Meeks, Haines, Tweedy, and Smith in their official capacity, Defendants are entitled to dismissal because official capacity claims are actually claims against the County (*supra*; n. 4), and a plaintiff may not recover punitive damages from a county for claims under Section 1983.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("a municipality is immune from punitive damages under 42 U.S.C. § 1983"); *see also*, *Stern v.*

---

[4] *See also, e.g., Clark v. LaMarque Indep. Sch. Dist.*, 54 F. App'x 412 (5th Cir. 2002); *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir. 1996) (dismissing claims against county judge in his official capacity as redundant of claims against the county); *Mays v. Valdez*, No. 3:13-CV-1272-M-BF, 2013 WL 6228731, at *3 (N.D. Tex. Nov. 29, 2013) (official capacity claims against a sheriff in his or her official capacity are actually claims against the county) (citing *Brooks v. George County*, 84 F.3d 157, 165 (5th Cir. 1996)); see also *Salazar v. Kleberg County, Tex.*, No. 2:11-CV-00150, 2012 WL 1610542, at *4 (S.D. Tex. May 8, 2012) (official capacity claims against a sheriff were duplicative of claims against the county).

[5] In her identification of the parties, Plaintiff states that she is suing Meeks, Haines, Tweedy, and Smith in their individual capacity as to monetary damages and in their official capacity as to injunctive and declaratory relief.  Dkt. 18, ¶¶8-11.  Nevertheless, in her requests for punitive damages, Plaintiff does not identify the capacity in which she seeks such damages, and she has asserted the claim for which she seeks punitive damages against these Defendants in their official and individual capacities.  Dkt. 18, ¶82, p. 28 (¶5).

*Hinds County, Miss.*, 436 Fed. Appx. 381, 382 (5th Cir. 2011); *May v. Andres*, No. 3:16-CV-1674-L, 2017 WL 495832, at *9 (N.D. Tex. Feb. 7, 2017).

The Court should dismiss Plaintiff's claims for punitive damages against Meeks, Haines, Tweedy, and Smith in their individual capacity because they are entitled to qualified immunity with respect to such claims (*infra* at 22-29), and because Plaintiff has not offered well-pled facts sufficient to state a claim for punitive damages against these Defendants individually.  Punitive damages may be awarded in Section 1983 cases only if the individual Defendant's conduct "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983). This standard requires evidence that the individual possessed a subjective consciousness of a risk of injury or illegality and a "criminal indifference to civil obligations."  *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999) (citing *Smith*, 461 U.S. at 45-48).  Plaintiff has not pled facts sufficient to state a claim for punitive damages.  Her allegations amount to no more than conclusory assertions, legal conclusions, or formulaic recitations of the standard for recovery which is insufficient to defeat a motion to dismiss.  Dkt. 18, ¶¶ 49, 73-75; *supra* at 11.

### D.      Plaintiff's Claims for Declaratory Relief Should Be Dismissed

Plaintiff seeks declaratory judgments that Defendants' alleged conduct violated the First and Fourteenth Amendments.  Dkt. 18, ¶¶86, 96, 119,136, p. 28 (¶¶1-3).  In motions to dismiss pursuant to Fed. R. Civ. P 12(b)(6), "courts regularly reject declaratory judgment claims that seek resolution of matters that will already be resolved as part of the claims in the lawsuit.*"*  *Flanagan v. Chesapeake Exploration, LLC*, No. 3:15-CV-0222-B, 2015 WL 6736648, at *4 (N.D. Tex. Nov. 4, 2015).[6]  The Court should dismiss Plaintiff's claims for declaratory relief

---

[6] *Citing Regus Mgmt. Grp., LLC v. Int'l Bus. Mach. Corp.*, No. 07-CV-1799, 2008 WL 2434245, at *3 (N.D. Tex. June 17, 2008); *Xtria LLC v. Tracking Sys., Inc.*, No. 07-CV-0160, 2007 WL 1791252, at *3 (N.D. Tex. June 21,

because these claims merely seek a declaration regarding issues to be resolved as part of Plaintiff's substantive claims in the lawsuit. *See*, Dkt. 18, pp. 16-28.

### E.   Plaintiff's Claims Against the County and Meeks, Haines, Tweedy, and Smith in Their Official Capacity Should Be Dismissed

#### 1.   The Standard for Municipal Liability

Municipal liability[7] under Section 1983 requires proof of a policymaker, an official policy or custom, and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Social Sciences*, 436 U.S. 658, 694 (1978)).   Because *respondeat superior* liability does not apply, proof of these elements is necessary in order to distinguish individual violations perpetrated by local government employees from those which can be fairly identified as actions of the government itself.   *Id.*; see also, e.g., *Jackson v. Sheriff of Ellis County, TX*, No. CIV.A.3:00-CV-1965-G, 2001 WL 1149102, at *2 (N.D. Tex. Sept. 26, 2001) (under § 1983, a plaintiff must prove that he suffered a deprivation of a federally protected right which resulted from an official policy, custom, or practice of the county).   A county may only be held liable for deprivations caused by decisions of officials whose acts may fairly be said to be those of the county. *Bd. of County Comm'rs of Bryan County, v. Brown*, 520 U.S. 397, 403-04 (1997) (citing *Monell*, 436 U.S. at 694).   A plaintiff who claims to have been injured due to an officially promulgated policy must specifically identify the policy at issue and must show a direct causal link between the governmental policy and the constitutional deprivation. *Piotrowski*, 237 F.3d at 580; *see also*, *Whitley v. Hanna*, 726 F.3d 631, 648-49 (5th Cir. 2013).

---

2007); *Assistmed, Inc. v. Conceptual Health Solutions, Inc.*, No. 05-CV-0880, 2006 WL 3691003, at *17 (N.D. Tex. Dec. 14, 2006); *Albritton Props. v. Am. Empire Surplus Lines*, No. 04-CV-2531, 2005 WL 975423, at *2 (N.D. Tex. Apr. 25, 2005); *Kogul v. Xspediou Mgmt. Co.*, No. 04-CV-2518, 2005 WL 1421446, at * 4 (N.D. Tex. June 1, 2005); *see also*, *Landscape Design & Const., Inc. v. Transp. Leasing/Contract*, No. CIV.A.3:00-CV-0906-D, 2002 WL 257573, at *10 (N.D. Tex. Feb. 19, 2002).

[7]   The official capacity claims against Meeks, Haines, Tweedy, and Smith are actually claims against the County.

In the absence of proof of an officially promulgated governmental policy, a plaintiff may establish municipal liability through proof that a deprivation was caused by a custom that is so widespread as to have the force of law. *Piotrowski,* 237 F.3d at 579 (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).   A custom capable of supporting municipal liability under Section 1983 requires evidence of persistent, often repeated, constant violations.  *Id*. at 581 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)).   A custom "consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the conduct."  *Zarnow v. City of Wichita Falls Tex*., 614 F.3d 161, 169 (5th Cir. 2010)); *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850-52 (5th Cir. 2009) (sufficiently numerous prior incidents are required; "27 incidents of excessive force over a period of four years do not reflect a pattern that can be said to represent official policy of condoning excessive force").   A custom requires similarity and specificity, and prior incidents cannot simply include any and all bad acts, but rather they must point to the specific violation in question.  *Id*. at 851 (citing *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).

### 2.      Plaintiff Has Not Pled Facts to Establish a Policy

Plaintiff alleges that the County has a policy or custom of: (1) removing from the HCSO Facebook page comments that are "critical of, unpopular with, or otherwise unfavorable to Defendants" (Dkt. 18, ¶¶51, 99); (2) banning from the HCSO Facebook page people who express critical or unpopular viewpoints (Dkt. 18, ¶¶52, 100); (3) shaping discourse on the HCSO Facebook page to reflect only "viewpoints that are popular with, complimentary of, or otherwise favorable to Defendants (Dkt. 18, ¶59); and (4) not providing notice and an opportunity to be heard to people whose comments were removed or whose commenting privileges were

suspended (Dkt. 18, ¶106). *See also*, Dkt. 18, ¶¶27-28, 35-44, 47-48, 50-64, and 99-107.

### a) Plaintiff Has Not Established an Official Policymaker.

An official policy may only be made by an official policymaker. "The policy of an individual official cannot give rise to governmental liability unless the official was one to whom the governing body had delegated final policymaking authority, not mere discretion or decision-making authority." *Brown v. Wichita County, Tex.*, No. 7:05-CV-108-O, 2011 WL 1562567, at *6 (N.D. Tex. Apr. 26, 2011),[8] (citing *Bennett*, 728 F.2d at 768–69 ("'The policy is that of the city, however, where it is made by an official under authority to do so *given by the governing authority*.'") (emphasis added)).[9] Plaintiff has identified only: unnamed County personnel, John Does 1-5; County employees, Defendants Haines, Tweedy, and Smith; and the Sheriff, Defendant Meeks, as potential policymakers. Dkt. 18, ¶¶8, 65, 66, 101. None of Plaintiff's allegations are sufficient to establish that a policymaker for the County created any official policy with respect to the HCSO Facebook page. Consequently, the Court should dismiss Plaintiff's claims against the County and her official capacity claims against the individual Defendants. *Brown*, 520 U.S. at 403-04; *Monell*, 436 U.S. at 694.

### b) Plaintiff's Allegations About John Does 1-5 Are Insufficient

Plaintiff vaguely asserts that John Does 1-5 "are vested with final policy-making authority over law enforcement and other official Hunt County matters, where such authority was vested under state law or by formal and lawful delegation of authority." Dkt. 18, ¶101. Plaintiff identifies John Does 1-5 in the following manner: "each was an elected or appointed

---

[8] Aff'd sub nom. *Brown v. Bolin*, 500 Fed. Appx. 309 (5th Cir. 2012).

[9] In *Bennett*, the Fifth Circuit explained that "the delegation of policymaking authority requires more than a showing of mere discretion or decisionmaking authority on the part of the delegee… The governing body must expressly or impliedly acknowledge that the agent or board acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent or board." 728 F.2d at 769; *see also*, *Bowden v. Jefferson County*, No. 16-40311, 2017 WL 243341, at *2 (5th Cir. Jan. 19, 2017).

official, employee, servant or agent of Defendant Hunt County" whose "acts were conducted under the authority, employment, authorization, or consent of one or both of the other Defendants and/or in concert with the other Defendants." Dkt. 18, ¶13. To the extent that the John Does are employees, servants, or agents of the County, their conduct cannot give rise to municipal liability under 42 U.S.C. § 1983, because *respondeat superior* liability does not apply and because employees, servants, or agents are not policymakers for the County. *See, e.g.*, *Monell*, 436 U.S. at 691; *Bowden v. Jefferson County*, No. 16-40311, 2017 WL 243341, at *2–4 (5th Cir. Jan. 19, 2017); *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1246 (5th Cir. 1993).

To the extent that the John Does may be elected or appointed officials of the County, Plaintiff's allegations are circular and conclusory: Plaintiff is claiming no more than that an unnamed official, in an unidentified position, with unidentified responsibilities and authority for the County, created a policy for the County because he was a County policymaker who made a County policy. Plaintiff makes this vague allegation without offering any supporting facts. Dkt. 18, ¶13. An allegation which lacks supporting facts is conclusory, and the Court should not accept such allegations as true. *Gentilello*, 627 F.3d at 544; *Plotkin*, 407 F.3d at 696; *Twombly*, 550 U.S. at 553-554; *Hawkins*, 2013 WL 4505154 at *5, fn. 2; *Willis*, 282 S.W.3d at 548.

Thus, Plaintiff's allegations concerning the John Does do not establish an official policy.

### c)      Haines, Tweedy, and Smith Are Not Policymakers

Plaintiff admits that Haines, Tweedy, and Smith are County employees. Dkt. 18, ¶¶9-11. Conduct by employees cannot give rise to municipal liability under 42 U.S.C. § 1983, because *respondeat superior* liability does not apply and because employees are not policymakers for the County. *See, e.g.*, *Monell*, 436 U.S. at 691; *Bowden*, 2017 WL 243341, at *2–4; *Jett*, 7 F.3d at 1246.

---

Additionally, Plaintiff's scanty allegations: (1) that "one or more of the other Individual Defendants, hav[e] final policy-making authority" over the administration of the Facebook page, "either by operation of state law or rightful delegation," and (2) that Haines and Tweedy are "vested with final policy-making authority over law enforcement and other official Hunt County matters, where such authority was vested under state law or by formal and lawful delegation of authority," are insufficient to establish these Defendants as policymakers for the County because they amount to no more than vague and conclusory assertions which are not sufficient to defeat a motion to dismiss.  Dkt. 18, ¶¶65-66, 101; *supra* at 11.

### d)    Plaintiff's Allegations About Meeks Are Insufficient

Plaintiff's meager allegations that Sheriff Meeks has "final policy-making authority" over the administration of the Facebook page, "either by operation of state law or rightful delegation," and that Meeks is "vested with final policy-making authority over law enforcement and other official Hunt County matters, where such authority was vested under state law or by formal and lawful delegation of authority" are insufficient to establish Meeks as a policymaker with respect to social media websites for the County because they amount to no more than vague and conclusory assertions which are not sufficient to defeat a motion to dismiss.  Dkt. 18, ¶¶65-66; Dkt. 18, ¶101; *supra* at 11.

In determining whether an official is a policymaker for a governmental entity, a court must ask whether the official is the final policymaker for the local government in a particular area or on a particular issue.  *Allison v. Tarrant County, Tex.*, 92 F. Supp. 2d 601, 603 (N.D. Tex. 2000).   Plaintiff does not allege any facts to support her contention that the County delegated to Sheriff Meeks final policymaking authority concerning social media websites for the County. Such alleged authority does not fall within the several areas in which courts have identified Texas sheriffs as policymakers.  *See, e.g.*, *Culbertson v. Lykos*, 790 F.3d 608, 624 (5th Cir. 2015)

(sheriff is a final policymaker in the area of preserving the peace in his jurisdiction and arresting all offenders); *Williams v. Kaufman County*, 86 F. Supp. 2d 586, 599–600 (N.D. Tex. 2000), aff'd, 352 F.3d 994 (5th Cir. 2003) (sheriff is the county's final policymaker in the area of law enforcement) (citing *Colle v. Brazos County Tex.*, 981 F.2d 237, 244 (5th Cir. 1993)); *Allison*, 92 F. Supp. 2d at 603-04 (sheriff may be a final policymaker with respect to certain employment decisions in the sheriff's department); *Brown*, 2011 WL 1562567, at *7 (sheriff is final policymaker with respect to the county jail).

According to Plaintiff, the HCSO Facebook page provides a variety of information about matters of public concern, including "news and information about local law enforcement, local government, and local events." Dkt. 18, ¶26. An informational webpage is not a matter of law enforcement and does not fit within the areas in which sheriffs have traditionally been found to have been delegated policymaking authority. Plaintiff offers no well-pled facts to support her contention that the County ever delegated policymaking authority over informational County webpages to Sheriff Meeks. Plaintiff's reliance on alleged action by Meeks is insufficient to state a claim for relief against the County because it is not sufficient to establish that any action by Meeks in connection with the HCSO Facebook page constitutes an official County policy or that any such alleged action was taken pursuant to an official County policy.

### e)      Plaintiff's Allegations About the County Are Insufficient

Plaintiff offers only two assertions with respect to alleged behavior by the County: (1) that the County "developed, ratified, enforced, and continue (sic) to enforce an official county policy and/or longstanding custom of removing and censoring speech concerning matters of public interest from the HCSO Facebook page, but only where such speech is critical of, unpopular with, or otherwise unfavorable to Defendants" (Dkt. 18, ¶99); and (2) that the County's allegedly official policy "calls for banning members of the public from the public

HCSO Facebook page as retaliation and punishment for expressing critical or unpopular viewpoints on the HCSO Facebook Page." Dkt. 18, ¶100.  Plaintiff offers no well-pled factual allegations to support her contentions that the County undertook such conduct, and the Court should not accept such conclusory allegations as true for the purposes of this motion.  *Gentilello*, 627 F.3d at 544; *Plotkin*, 407 F.3d at 696; *Twombly*, 550 U.S. at 553-554; *Hawkins*, 2013 WL 4505154 at *5, fn. 2; *Willis*, 282 S.W.3d at 548.  These allegations are insufficient to state a plausible claim for relief against the County because they do not establish an official policy.

### 3.    Plaintiff's Allegations are Insufficient to Establish a Custom

Plaintiff contends that the County has a custom of removing from the HCSO Facebook page comments that are critical of, unpopular with, or otherwise unfavorable to Defendants, of banning commenters who express such viewpoints, of permitting only comments which are popular with, complimentary of, or otherwise favorable to Defendants, and of not providing notice and an opportunity to be heard to people whose comments were removed or whose commenting privileges were suspended.  *Supra* at 15-16; *see also*, Dkt. 18, ¶¶27-28, 35-44, 47-48, 50-64, and 99-107.

Plaintiff offers the following factual allegations in support of these contentions: (1) Defendants removed a comment Plaintiff made on a January 18, 2107 HCSO post and banned her from posting other comments on the HCSO Facebook page (Dkt. 18, ¶¶38, 40);[10]  (2) Defendants removed four comments from others which, according to Plaintiff, "in large part criticized the Defendants' January 18 Post for expressing a policy of deleting and censoring protected speech" or which expressed "other viewpoints unfavorable to Defendants" (Dkt. 18, ¶¶36, 43);[11]  (3) another individual made a comment which implied that a previous comment had

---

[10] This alleged action is the basis for this lawsuit.
[11] These allegedly include: (1) a comment stating "Just stopping by to see if your (sic) deleting posts.  Snap shot

been deleted, though the content of the prior comment was not identified (Dkt. 18, ¶¶43-44); (4) Defendants may have restored certain unidentified comments (Dkt. 18, ¶48); (5) Defendants may have previously removed a comment which criticized Meeks and may have banned the author from commenting further on the HCSO Facebook page, although the content of the allegedly removed comment is not identified (Dkt. 18, ¶57); and (6) Defendants provided no notice or opportunity to be heard to Plaintiff before removing her comments and banning her from commenting on the HCSO Facebook page.  Dkt. 18, ¶41.

At most, Plaintiff identifies: (1) six alleged incidents of comments being removed, many of which do not demonstrate similarity to the conduct of which Plaintiff complains;[12] (2) two alleged incidents of commenters being prevented from posting further comments: one involving Plaintiff; the other involving unidentified circumstances; and (3) one example of a commenter, the Plaintiff, allegedly having a comment removed and losing commenting privileges without notice or a hearing.  These few vague allegations are not adequate to establish a custom capable of supporting governmental liability under §1983 because they do not demonstrate conduct which is sufficiently widespread, long-established, numerous, persistent, constant, and similar to the conduct of which Plaintiff complains.  *Supra* at 15; *Piotrowski,* 237 F.3d at 579; *Peterson*, 588 F.3d at 850-52 (27 incidents over four years were insufficient to establish a pattern; prior acts must point to the specific violation in question).

Additionally, the evidence Plaintiff attaches to her Amended Complaint demonstrates that the County does not have a widespread, persistent, or constant custom of removing critical or unfavorable comments, banning comments from individuals who make such comments, or

---

taken at 7:19 EST"; (2) a comment stating, "This is a public forum and deleting comments is paramount to shredding files you don't like"; (3) a link to a YouTube video allegedly depicting and commenting on forceful encounters between law enforcement and citizens; and (4) information and links to articles discussing censorship of comments on Facebook by other law enforcement agencies.  Dkt. 18, ¶43.

permitting only favorable comments.  *Cf.* Dkt. 18, ¶¶51, 52, 59, 99, 100, 106; Dkt. 18-1, pp. 6-11.  Instead, Plaintiff's evidence shows that comments on the HCSO's Facebook page include: (1) numerous comments critical of police officers (Dkt. 18-1, p. 6 [S. Marshall, S. Dennison], p. 7 [J. Kittle, E. Riggans, D.C. Dot], p. 11 [I. Floberg, A. Hansen]); (2) numerous comments criticizing the removal of comments from the Facebook page (Dkt. 18-1, p. 9 [J. Donnelly, S. Marshall], p. 10 [G. Brazee, R. Johnson], pp. 10-11 [M. McKenzie], p. 11 [K. Nelson, S. Dennison]); and (3) links to articles concerning removal of comments on Facebook by other law enforcement agencies.  Dkt. 18-1, p. 11 [K. Nelson, D. Grant].

Plaintiff has not adequately pled either an official policy or an established custom which was the moving force behind any deprivation of any federally protected right.  Thus, Plaintiff's allegations are legally insufficient to state a claim for governmental liability under Section 1983, and the Court should dismiss her claims against the County and her official capacity claims against the individual Defendants.  *Piotrowski*, 237 F.3d at 578; *Monell*, 436 U.S. at 694.

### F.    Plaintiff's Individual Capacity Claims Should Be Dismissed

Plaintiff's individual capacity claims against Meeks, Haines, Tweedy, and Smith should be dismissed because they are entitled to qualified immunity with respect to Plaintiff's claims for alleged violations of free speech and procedural due process rights.  Dkt. 18, ¶¶69-97, 121-136).

### 1.    Qualified Immunity Provides Broad Protections

Qualified immunity is a robust defense which "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Mullenix v. Luna*, __ U.S. __, 136 S. Ct. 305, 308, (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). When a defendant raises a qualified immunity defense, the plaintiff has the burden of demonstrating that the official violated a statutory or constitutional right which was "clearly established" at the time of the

---

[12] In fact, Plaintiff alleges that Defendants "uniquely punished and censored" her.  Dkt. 18, ¶42.

challenged conduct.  *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017).  The court must ask whether the law so clearly and unambiguously prohibited the defendant's conduct that every reasonable official would understand that the defendant's actions violated the law.  *Id.* at 685-86 (citing *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc); *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)).  In order to answer that question in the affirmative, the Court must be able to point to controlling authority, or a robust consensus of persuasive authority, which defines the contours of the right in question with a high degree of particularity.  *Id.* at 686; see also, *Vincent v. City of Sulphur*, 805 F.3d 543, 549 (5th Cir. 2015) ("two out-of-circuit cases and a state-court intermediate appellate decision hardly constitute persuasive authority adequate to qualify as clearly established law sufficient to defeat qualified immunity in this circuit.").

Courts may not define "clearly established" law at a high level of generality but must determine whether, in light of the specific context of the case, not as a broad proposition, the "violative nature of *particular* conduct is clearly established."  *Mullenix*, 136 S. Ct. at 308 (emphasis in original) (citing *al–Kidd*, 563 U.S. at 742; *Brosseau v. Haugen*, 543 U.S. 194, 198, (2004) (per curiam)).  A plaintiff must identify "adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful."  *Vincent*, 805 F.3d at 547.  "Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case."  *Id.* (citing *Brosseau*, 543 U.S. at 198).  "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*."  *Pierce v. Smith*, 117 F.3d 866, 882

(5th Cir. 1997) (emphasis original); *accord Sama v. Hannigan*, 669 F.3d 585, 591 (5th Cir. 2012); *Pasco v. Knoblauch*, 566 F.3d 572, 578 (5th Cir. 2009).

The Fifth Circuit has recently repeatedly rejected various plaintiffs' attempts to defeat assertions of qualified immunity by applying general concepts of constitutional law to novel factual circumstances, or by relying on case law from other circuits or from district courts.  For instance, in *Vincent*, the plaintiff brought claims under § 1983 against various police officers in connection with a no-trespass order which banned Vincent from entering onto certain city property, arguing that the officers had violated his procedural due process rights.  805 F.3d at 545.  The Court rejected Vincent's argument, explaining that, "[a]lthough the Supreme Court decisions amply support the proposition that there is a general right to go to or remain on public property for lawful purposes, none comes near the level of specificity needed to put 'beyond debate' the related but distinct proposition that a person under investigation for threatening deadly violence against city officials has a right to notice and a hearing before being banned from entering city buildings."  *Id*. at 548.  Neither the Supreme Court precedents establishing a balancing test for procedural due process protections nor factually distinguishable cases from other circuit courts involving no-trespass warnings were sufficient to demonstrate that any clearly established law prohibited the officers' conduct.  *Id*. at 550-51.  Consequently, the officers were entitled to governmental immunity.  *Id*. at 551.

More recently, in *Turner*, 848 F.3d at 678,[13] a detainee brought a claim under § 1983 against police officers who detained him when he was video recording a police station from a public sidewalk across the street.   The court rejected Turner's argument that general First Amendment protections extend to the video recording of police activity and constitute clearly

---

[13] This case was published on February 16, 2017, nearly a month after the incidents which form the basis of the case at bar.

established law which prohibited the officers' conduct. *Id*. at 686-87. Although three sister circuit courts and some district courts within the Fifth Circuit had held that the First Amendment protects the rights of individuals to videotape police officers performing their duties, the Fifth Circuit held that, because at the time in question neither the Supreme Court nor the Fifth Circuit had determined whether First Amendment protection extends to the recording or filming of police, the law was not clearly established, and the individual defendants were entitled to qualified immunity. *Id*. at 687.

In *Morgan*, the Fifth Circuit, sitting *en banc*, granted qualified immunity to school district officials who prohibited students from distributing materials containing Christian messages on school property, because "clearly established law did not put the constitutionality of their actions beyond debate." 659 F.3d at 371. The plaintiffs argued that First Amendment precedents concerning viewpoint discrimination rendered the law clearly established and defeated the governmental officials' assertion of qualified immunity. *Id*. at 378. The Court rejected this argument, explaining that "the generalized prohibition against viewpoint discrimination is far too abstract to clearly establish the law" under the circumstances of the case. *Id*. at 382. The circumstances at issue in *Morgan* required analysis of competing First Amendment jurisprudence, including questions concerning whether students' speech could be perceived to be government-sponsored speech. *Id*. at 375.

### 2. Meeks, Haines, Tweedy, and Smith Are Entitled to Qualified Immunity from Plaintiff's Free Speech Claims

In the case at bar, Plaintiff attempts to define the applicable law at a high level of generality and offers no more than abstract statements of legal principle untethered to analogous facts; this is inadequate to demonstrate a clearly established law sufficient to defeat Defendants' assertion of qualified immunity. *Vincent*, 805 F.3d at 547 (citing *Brosseau*, 543 U.S. at 198).

With respect to her free speech claims, Plaintiff relies on *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829-30 (1995), *R.A.V. v. St. Paul*, 505 U.S. 377, 391-92 (1992), and *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 806 (1985), and merely alleges that "[i]t is clearly established that an official...cannot censor or restrict speech, or punish a speaker, based on the viewpoint expressed, regardless of the forum." Dkt. 18, pp. ¶73. None of these cases addressed situations analogous to that alleged in Plaintiff's Complaint: government personnel allegedly removing comments and banning individuals from posting comments on a governmental entity's informational social media webpage. Dkt. 18, ¶¶36-38, 43-44.[14] Indeed, social media websites did not exist at the time of any of the decisions on which Plaintiff relies. At the time of the incidents giving rise to the case at bar, no Supreme Court or Fifth Circuit case applied free speech forum analysis to comments posted on a governmental entity's informational social media webpage. Additionally, the evidence Plaintiff attached to her Complaint undermines her speculation that the comment she allegedly posted on the HCSO Facebook page was removed based on the viewpoint it expressed, given that the same comment thread contains numerous comments expressing viewpoints critical of law enforcement personnel, of the HCSO, and of the removal of comments from the HCSO Facebook page. *Supra* at 22. Consequently, cases concerning viewpoint-based discrimination are not obviously applicable to the circumstances at issue in the present case.

It is not clearly established that free speech forum analysis even applies in the situation presented by Plaintiff's Amended Complaint. In *Walker v. Tex. Div. Sons of Confederate Veterans, Inc.*, __ U.S. __, 135 S. Ct. 2239 (2015), the Supreme Court refused to apply forum

---

[14] *Rosenberg* involved an independent student publication which sought funding from a state university. 515 U.S. at 2511. *R.A.V.* involved the validity of a state's "Bias-Motivated Crime Ordinance," under which the plaintiff was charged after he allegedly burned a cross on the lawn of an African-American family. 505 U.S. at 377. *Cornelius* involved a charitable fundraising program directed at federal employees. 473 U.S. at 804-806.

analysis in determining whether the state had violated the plaintiff's free speech rights when it rejected a specialty license plate design which included a confederate battle flag.  The Court explained that, "[w]e have previously used what we have called 'forum analysis' to evaluate government restrictions on purely private speech that occurs on government property" but that, "[w]hen government speaks, it is not barred by the Free Speech Clause from determining the content of what it says."  *Id.* at 2250, 2245.  Although the Court found that Texas engages in expressive conduct in connection with its issuance of specialty license plates, *Walker* involved a hybrid of government speech and private speech, in that the individual purchasing the specialty license plate was free to choose any of the available designs and messages approved by the state or to propose a new message or design.  *Id.* at 2251-53.  Nevertheless, the Court explained that, "[t]he fact that private parties take part in the design and propagation of a message does not extinguish the governmental nature of the message or transform the government's role into that of a mere forum-provider."  *Id.* at 2251.

Plaintiff alleges that Defendants created an official Facebook page for the HCSO and that they frequently use this social media site as a means of communicating with the public.  Dkt. 18, ¶¶ 25-26.  Plaintiff alleges further that on the HCSO Facebook page, Defendants have expressly stated their intent to monitor and restrict the use of the page in keeping with their purpose of providing a message that is appropriate for a family audience, and their intent not to create a public forum for communication.  Dkt. 18, ¶¶ 28, 35.  Thus, Supreme Court precedents relating to government speech at least arguably apply to the case at bar, and pre-existing law does not dictate or compel the conclusion for every like-situated, reasonable government agent that any action by the individual Defendants in connection with Plaintiff's or others' alleged comments on the HCSO Facebook page violated the Constitution.  *Supra* at 22-25; *Pierce*, 117 F.3d at 882.

Plaintiff also appears to assert a free speech retaliation claim.  Dkt. 18, ¶¶ 78-80.  In order to establish such a claim, Plaintiff must prove: (1) Defendants were acting under color of state law; (2) Plaintiff's activities were protected under the First Amendment; (3) Defendants' actions caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (4) Defendants' adverse actions were substantially motivated against Plaintiff's exercise of constitutionally protected conduct.  *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002); *Morrison v. Walker*, No. 1:13-CV-327, 2015 WL 11102144, at *6–8 (E.D. Tex. Sept. 24, 2015).  The individual Defendants are entitled to qualified immunity on Plaintiff's free speech retaliation claim because, as explained above, it is not clearly established under current First Amendment jurisprudence, that Plaintiff's alleged activities in connection with the HCSO Facebook page were protected under the First Amendment.[15]

### 3.   Meeks, Haines, Tweedy, and Smith Are Entitled to Qualified Immunity from Plaintiff's Due Process Claim

A plaintiff who asserts a due process violation in a § 1983 case must first identify a protected life, liberty, or property interest.  *Morrison*, 2015 WL 11102144, at *6 (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995)).  With respect to her due process claim, Plaintiff merely asserts that Defendants removed her allegedly protected speech from the HCSO Facebook page and banned her from posting on this page without notice or legitimate explanation and that Defendants did not provide a means of appeal.  Dkt. 18, ¶¶ 89-91. As explained above, it is not clearly established that Plaintiff's alleged speech was constitutionally protected, because it is not clear that forum analysis applies or that Plaintiff experienced viewpoint-based discrimination.  *Supra* at 25-27.  Plaintiff does not even assert that the proposition that an individual has a constitutionally protected interest in posting comments

---

[15] Additionally, Plaintiff has offered only conclusory allegations concerning the elements of a free speech retaliation

on a governmental entity's informational social media webpage is clearly established law. Neither does Plaintiff assert that the proposition that a governmental entity must provide notice and a hearing when it removes comments or precludes an individual from posting on its informational social media webpage is clearly established law.

Defendants are unaware of any Supreme Court or Fifth Circuit cases which, as of the time of the incidents giving rise to the case at bar, have held that a governmental entity must provide notice and a hearing when it removes comments posted on a governmental entity's informational social media webpage or when it prevents an individual from posting comments on such a webpage. Thus, pre-existing law does not dictate or compel the conclusion for every like-situated, reasonable government agent that any action allegedly taken by the individual Defendants in connection with Plaintiff's or others' alleged comments on the HCSO Facebook page violated the due process guarantees of the Constitution. *Supra* at 22-25; *Pierce*, at 882.

Because Plaintiff's allegations do not demonstrate that Meeks, Haines, Tweedy, and Smith violated clearly established law, they are entitled to qualified immunity with respect to Plaintiff's individual capacity claims, and the Court should dismiss these claims.

### G.    Plaintiff's Supervisor Liability Claim Should Be Dismissed.

Plaintiff asserts that Meeks and Haines should be held liable under Section 1983 for allegedly unconstitutional conduct of their subordinates. Dkt. 18, ¶¶121-136. To the extent to which Plaintiff asserts this claim against Meeks and Haines in their official capacity, these are actually claims against the County which the Court should dismiss because *respondeat superior* liability does not apply to Section 1983 claims against a municipality. *Supra* at 14. Inasmuch as Plaintiff asserts this claim against Meeks and Haines in their individual capacity, the Court should dismiss this claim because Defendants are entitled to qualified immunity (*supra* at 22-29),

---

claim. Dkt. 18, ¶¶ 78-80. This is insufficient to defeat a motion to dismiss. *Supra* at 11.

and because Plaintiff offers only vague and conclusory allegations in support of the claim and a formulaic recitation of the elements of a cause of action.   Dkt. 18, ¶¶122-136; *supra* at 11; *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

"Supervisory officials cannot be held liable for the unconstitutional actions of their subordinates based on any theory of vicarious or respondeat superior liability." *Lewis v. City of Waxahachie*, No. 3:10-CV-2578-N-BH, 2011 WL 7070991, at *4 (N.D. Tex. Dec. 21, 2011)[16] (citing *Estate of Davis ex rel. McCully*, 406 F.3d at 381).[17]   "The acts of a subordinate 'trigger no individual § 1983 liability.'"   *Id.* (*quoting Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999).   Instead, "[t]here must be some showing of personal involvement by a particular individual defendant to prevail against such individual," and the plaintiff must show either that the supervisor's conduct directly caused the constitutional violation or that the supervisor was deliberately indifferent to such a violation.   *Id.*   Plaintiff cannot show this by means of generalized allegations.   *Id.*   (*citing Howard v. Fortenberry*, 723 F.2d 1206 (5th Cir. 1984)).

Because Plaintiff offers only vague, generalized allegations against Meeks and Haines, she has failed to state a claim on which relief may be granted as to any potential supervisory liability of Meeks and Haines.   *Id.*; *supra* at 11; *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.   The Court should, therefore, dismiss this claim.

WHEREFORE, PREMISES CONSIDERED, Defendants pray that the Court grant this motion to dismiss for failure to state claims upon which relief can be granted, and that all of Plaintiff's causes of action against Hunt County, Texas, Randy Meeks, Jeffrey Haines, Destiny Tweedy, and Jacob Smith be dismissed with prejudice to the refiling of same; Defendants further

---

[16] Report and recommendation adopted, 2012 WL 176681 (N.D. Tex. Jan. 20, 2012).

[17] *See also*, *Stern v. Hinds County, Miss.*, 436 Fed. App'x 381, 382 (5th Cir. 2011) ("§ 1983 'does not create

pray that Plaintiff take nothing by this suit; that all relief requested by Plaintiff be denied; and that Defendants recover all costs of suit; as well as for such other and further relief, both general and special, at law or in equity, to which Defendants may show themselves to be justly entitled.

Respectfully submitted,

   /s/ Thomas P. Brandt
**THOMAS P. BRANDT**
 State Bar No. 02883500
  tbrandt@fhmbk.com
**FRANCISCO J. VALENZUELA**
 State Bar No. 24056464
  fvalenzuela@fhmbk.com
**LAURA O'LEARY**
 State Bar No. 24072262
  loleary@fhmbk.com
**FANNING HARPER,  MARTINSON, BRANDT & KUTCHIN, P.C.**
Two Energy Square
4849 Greenville Ave. Suite 1300
Dallas, Texas 75206
(214) 369-1300 (office)
(214) 987-9649 (telecopier)
**ATTORNEYS FOR DEFENDANTS HUNT COUNTY, TEXAS, AND SHERIFF RANDY MEEKS**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been delivered to all parties of record, in compliance with the Court's ECF/CM system and/or Rule 5 of the Federal Rules of Civil Procedure, on the 28th day of April, 2017.

/s/ Thomas P. Brandt
**THOMAS P. BRANDT**

---

supervisory or respondeat superior liability'") (*quoting Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002)).