UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DEANNA J. ROBINSON, § | |
| Plaintiff, § | |
| v. § | No. 3:17-CV-513-K |
| HUNT COUNTY, TEXAS, et al., § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff Deanna J. Robinson's Motion for a Preliminary Injunction [ECF No. 6] referred to the United States Magistrate Judge for recommendation. Electronic Order, ECF No. 33. For the reasons stated below, the undersigned respectfully recommends that the District Court DENY Plaintiff's Motion for a Preliminary Injunction [ECF No. 6].

**BACKGROUND**

Plaintiff filed this suit on February 23, 2017 alleging that her constitutional rights were violated because her comments on the Hunt County Sheriff's Office ("HCSO") Facebook page were removed and she was banned from posting comments on this page. Compl. 1 & 8, ECF No. 1. Plaintiff asks the Court to: (1) enjoin Defendants from removing comments, "likes," or other expressive activity regarding viewpoints on matters of public concern from the HCSO Facebook page; (2) enjoin Defendants from banning persons from the HCSO Facebook page based on viewpoints on matters of public concern; (3) compel Defendants to restore Plaintiff's comments that they deleted from the HCSO Facebook page; and (4) compel Defendants to release their ban of Plaintiff from the HCSO Facebook page and restore her ability to engage in activity on the page, such as making comments and "liking" the content on the page. Mot. 2, ECF No. 6.

In the response, Defendants state that the HCSO Facebook page was created for public

relations purposes and to: (1) provide a positive message to the community about the HCSO; (2) humanize the HCSO personnel and put faces to names of HCSO personnel; and (3) provide pertinent information to the Hunt County community such as public service announcements and weather reports. Resp. 2, ECF No. 14. Defendants state that they did not intend for the HCSO Facebook page to be a public speech forum and that Defendants attempted to set up the page in a manner that would not allow public comments, but Defendants were not able to disable the comments feature. Resp. 2, ECF No. 14. In addition, Defendants state that they set the HCSO Facebook page's "Profanity Filter" to "strong." Resp. 2, ECF No. 14. Defendants point out that Facebook imposes its own guidelines limiting the speech of its users and that Facebook prohibits hate speech, violent or graphic content, threats of violence, bullying, harassment, attacks on public figures, criminal activity, and abusive content. Resp. 3, ECF No. 14; App. 109 & 100-07, ECF No. 14-2. Defendants also point out that Facebook reserves the right to remove content that violates Facebook's policies, and that Facebook's algorithm automatically hides inappropriate content from public view on the HCSO Facebook page that can later be reviewed by the page administrator. Resp. 3, ECF No. 14; App. 110, ECF No. 14-2.

Defendants state that on January 18, 2017, certain comments that appeared to violate the terms and conditions of Facebook and of the HCSO Facebook page were deleted. Resp. 4, ECF No. 14. Defendants state that there were comments applauding the death of a North Texas Police Officer using profanity and that the HCSO posted a Facebook message to remind the community that many families follow the page so that the followers would not be subject to profanity or posts that encourage violence against officers. Resp. 3-4, ECF No. 14. Defendants state that while certain followers who did not comply with the terms and conditions of the HCSO page or Facebook were blocked, Defendants attempted to retrieve all deleted posts and unblocked any blocked users after

2

receiving Plaintiff's Complaint. Resp. 5, ECF No. 14. Defendants state that they also reached out to Facebook to restore deleted comments, but that Facebook would not restore the deleted comments. Resp. 6, ECF No. 14. In addition, Defendants contend that no "likes" or other Facebook "reactions" have ever been removed, because Defendants do not have the ability to do so. Resp. 7, ECF No. 14. Defendants further state that Plaintiff does not appear to follow the HCSO Facebook page, it is unclear whether Plaintiff has a Facebook page in her name, and to the extent that Plaintiff has a Facebook account, Plaintiff is not precluded from commenting or otherwise interacting with the HCSO Facebook page. Resp. 7, ECF No. 14.

  Defendants argue that Plaintiff's Motion for a Preliminary Injunction should be denied because she cannot establish the necessary elements. Resp. 7, ECF No. 14. As an initial point, Defendants argue that there is no case or controversy, because Plaintiff seeks to enjoin conduct that is not at risk of happening and compel actions that Defendants cannot perform. Resp. 7-8, ECF No. 14. Defendants argue that Plaintiff's request for a preliminary injunction is based on mistaken factual assertions regarding the administration of the HCSO Facebook page and the erroneous theory that the HCSO Facebook page is a free speech forum. Resp. 8, ECF No. 14. Defendants argue that this argument is contrary to the U.S. Supreme Court's decision, *Walker v. Texas Division, Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239 (2015). Defendants also argue in the alternative that, Plaintiff is not able to establish viewpoint-based discrimination in Defendants' administration of the HCSO Facebook page, because Plaintiff is not banned from the page, and because there is no policy, custom, or practice related to the page limiting speech based on viewpoint. Resp. 8, ECF No. 14.

  In the reply, Plaintiff argues that she remains blocked from engaging in discourse on the HCSO Facebook page, and she is not able to "like" posts or make comment on the page, whereas

3

she is able to comment on and "like" the content of other Facebook pages. Reply 1-2, ECF No. 22. Plaintiff contends that her pleadings make clear that her Facebook profile is "Deanna Jo," and that she continues to maintain that profile. Reply 2, ECF No. 22. Therefore, Plaintiff argues that Defendants remain at best willfully blind to this fact. Reply 2, ECF No. 22. Plaintiff also argues that Defendants' arguments are not convincing, because they have allowed comments from others advocating violence to remain and several critical/unfavorable comments appear to have been restored. Reply 3, ECF No. 22. Plaintiff further argues that Defendants offer no evidence showing that they have a duty to enforce Facebook's policies, and that Defendants cannot enforce such policies, because unlike Facebook, Defendants are bound by the First Amendment. Reply 4, ECF No. 22. Plaintiff argues that the HCSO Facebook page is a government-created forum that encourages its citizens to express themselves on the page regarding matters of local public concern and that the page does not constitute government speech. Reply 4, ECF No. 22. Plaintiff contends that the mere statement "this is not a public forum" in the "About" section of the HCSO Facebook page does not allow Defendants to escape First Amendment scrutiny and that if Defendants truly wanted to create an informational public relations forum that does not permit comments from private citizens, Defendants would have utilized alternative platforms such as a website or a blog. Reply 7, ECF No. 22.

## **ANALYSIS**

In order to obtain preliminary injunctive relief, the party seeking relief must demonstrate the following:

> (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to him outweighs the threatened harm the injunction may do to

4

> defendants; and (4) that granting the preliminary injunction will not disserve the public interest.

*Hopkins v. Wells Fargo Bank, N.A.*, No. 3:10-CV-1857-D, 2011 WL 611664, at *2 (N.D. Tex. Feb. 18, 2011) (citing *Jones v. Bush*, 122 F. Supp. 2d 713, 718 (N.D. Tex. 2000)). "Although the decision to grant a preliminary injunction is within the court's discretion, it is an extraordinary remedy that should only be granted if the movant has clearly carried its burden of persuasion on all four elements." *Id.* (citing *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003); *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)).

While Plaintiff argues that Defendants offer no evidence showing that they have a duty to enforce Facebook's standards, the Facebook Community Standards specifically state:

> The consequences for violating our Community Standards vary depending on the severity of the violation and the person's history on Facebook. For instance, we may warn someone for a first violation, but if we continue to see further violations we may restrict a person's ability to post on Facebook or ban the person from Facebook.

Reply 4, ECF No. 22; Def.'s App. 115, ECF No. 14-2. Facebook has a right to exercise control over the contents of its platform, and the consequences of HCSO's failure to comply with Facebook's policies is a potential ban from using Facebook. *See La 'Tiejira v. Facebook, Inc.*, Civ. Action No. H-16-2574, 2017 WL 3426039, at *7 (S.D. Tex. Aug. 7, 2017) ("Facebook[] [has a] First Amendment right to decide what to publish and what not to publish on its platform. . . . 'The choice of material . . . and the decisions made as to limitations on the size and content . . . and treatment of public issues and public officials--whether fair or unfair--constitute the exercise of editorial control and judgment.' . . . [O]nline publishers have a First Amendment right to . . . exercise editorial control on their platforms because 'the First Amendment's protections apply whether or not a speaker articulates, . . . and whether or not the speaker generated the underlying content in the first place.'")

5

(citing *Cruz v. Van Sickle*, 452 S.W.3d 503, 517-18 (Tex. App.-Dallas 2014); quoting *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974); citing *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1008 (E.D. Cal. 2017); quoting *Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 437 (S.D.N.Y. 2014)). Facebook's Community Standards also state that "[w]hen people share anything on Facebook, we expect that they will share it responsibly, including carefully choosing who will see that content." Defs.' App. 104, ECF No. 14-2. Defendants state that they expressed concern over the content of certain posts because families follow the HCSO Facebook page. Resp. 4, ECF No. 14. Specifically on January 18, 2017, Defendants made the following post on the HCSO Facebook page:

> We find it suspicious that the day after a North Texas Police Officer is murdered we have received several anti-police calls in the office as well as people trying to degrade or insult police officers on this page. ANY post filled with foul language, hate speech of all types and comments that are considered inappropriate will be removed and the user banned. There are a lot of families on this page and it is for everyone and therefore we monitor it extremely closely. Thank you for understanding.

Am. Compl. 9, ECF No. 18. Plaintiff contends that the following post she made in response was deleted:

> Degrading or insulting police officers is not illegal, and in fact has been ruled time and time again, by multiple US courts, as protected First Amendment speech.
>
> Just because you consider a comment to be "inappropriate" doesn't give you the legal right to delete it and/or ban a private citizen from commenting on this TAX PAYER funded social media site.
>
> No police officer was "murdered" yesterday.
>
> Imagine how wonderful it would have been if the private citizen hadn't been confronted on private property and a stand off hadn't been created unnecessarily . . . the terrorist pig with a shiny badge would still be alive today. Just imagine . . . .
>
> HCSO is a bunch of idiots, led by the biggest idiot in the entire country - if your moderators delete comments or ban people, you're just setting yourselves up

perfectly for a First Amendment rights violation law suit. Thank you for your understanding.

Am. Compl. 9-10, ECF No. 18.

The Facebook policies discussed earlier as raised by Defendants state in part:

We remove credible threats to public figures, as well as hate speech directed at them - just as we do for private individuals. . . . You will not bully, intimidate, or harass any user. [] You will not post content that: is hate speech, threatening, or pornographic; incites violence; or contains nudity or graphic or gratuitous violence. . . . We can remove any content or information you post on Facebook if we believe that it violates this Statement or our policies. . . . If you repeatedly infringe other people's intellectual property rights, we will disable your account when appropriate.

Defs.' App. 102 & 109-10, ECF No. 14-2; Resp. 3, ECF No. 14. The HCSO's facebook page's policies to a large extent mirror that of Facebook's policies:

[P]lease note that this is NOT a public forum. . . . The Hunt County Sheriff's Office reserves the right to delete comments that: contain false information, obscene language or sexual content, threaten or defame any person or organization including the Hunt County Sheriff's Office, support or oppose political candidates, political organizations or ballot propositions, promote illegal activity, commercial services or products, infringe on copyrights or trademarks or are not topically related to the particular posting. . . . By "LIKING" or INTERACTING" with our page you agree to the above terms[.]

Ex. A, ECF No. 18-1 at 2. Because removal of Plaintiff's post would most likely be construed as compliance with Facebook's policies, which must be followed in order for Defendants to utilize Facebook, and because Facebook has the right to control the contents of its platform, Plaintiff has not demonstrated a substantial likelihood of prevailing on the merits.

Even if Defendants were in error by deleting Plaintiff's post, removing Plaintiff's "likes," and blocking Plaintiff's profile under the name "Deanna Jo," Plaintiff still has not demonstrated a substantial likelihood of prevailing on the merits, because it would not be clear to a reasonable official that such conduct would violate Plaintiff's First Amendment right. *See Jackson v. Ladner*,

7

626 F. App'x 80, 88 (5th Cir. 2015) ("However, while these general First Amendment principles were firmly established in 2007, this is not dispositive of our inquiry into whether M.J.'s First Amendment rights were 'clearly established' at the time of defendants' conduct given the unique facts of this case. . . . [W]e [] must determine whether or not it 'would be clear' to a reasonable [] official in the defendants' position that punishing M.J. for the content of her Facebook messages would violate the First Amendment given the particular circumstances here. . . . We agree with defendants that the answer is no." (citing *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004); *Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 620 (5th Cir. 2004)).

> In a decision issued on June 19, 2017, the Supreme Court stated:
>
> While we now may be coming to the realization that the Cyber Age is a revolution of historic proportions, we cannot appreciate yet its full dimensions and vast potential to alter how we think, express ourselves, and define who we want to be. The forces and directions of the Internet are so new, so protean, and so far reach that courts must be conscious that what they say today might be obsolete tomorrow. This case is one of the first this Court has taken to address the relationship between the First Amendment and the modern Internet. As a result, the Court must exercise extreme caution . . . .

*Packingham v. North Carolina*, 137 S. Ct. 1730, 1735-36 (2017). In *Packingham*, the Supreme Court reversed a North Carolina Supreme Court decision that banned registered sex offenders from using Facebook, explaining that "to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights." *Id.* at 1737. The facts in *Packingham* are distinguishable in that the Plaintiff here is not completely banned from using Facebook but is restricted in posting content that complies with Facebook's policies. However, the undersigned finds instructive the Supreme Court's recognition of the new and protean nature of the law on this topic in a decision issued as recently as June 19, 2017 and concludes that it would not have been clear to

8

a reasonable official that attempting to comply with Facebook's policies, which the HCSO was required to comply with in order to use Facebook, would violate Plaintiff's First Amendment rights. *See Ladner*, 626 F. App'x at 88 ("At the time of the events in question, insufficient precedent existed to provide [] officials with 'fair warning' that the defendant's conduct violated the First Amendment. . . . [T]he 'central concept' of qualified immunity is that of 'fair warning[.]'") (citing *Bush v. Strain*, 513 F.3d 492, 501-02 (5th Cir. 2008)); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("A government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987))); *Bland v. Roberts*, 730 F.3d 368, 393-94 (4th Cir. 2013) ("We do not expect sheriffs to be judges and to have the training to sort through every intricacy of case law that is hardly a model of clarity. . . . Rather in considering whether constitutional rights were clearly established for qualified-immunity purposes, we view the issue from 'the layman's perspective[.]'" (citing *Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1108 (8th Cir. 2004); *Ross v. Reed*, 719 F.2d 689, 696 n.8 (4th Cir. 1983))). Therefore, Plaintiff also has not shown that she is likely to prevail for this reason.

Because Plaintiff failed to carry her burden as to the first prong of the preliminary injunction analysis, the undersigned pretermits consideration of the remaining prongs. *See Hopkins*, 2011 WL 611664, at *2 (A "preliminary injunction . . . is an extraordinary remedy that should only be granted if the movant has clearly carried its burden of persuasion on all four elements.").

## RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that the District Court DENY Plaintiff's Motion for a Preliminary Injunction [ECF No. 6].

**SO RECOMMENDED**, this 14th day of December, 2017

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).