**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
Dallas Division**

| | |
|---|---|
| DEANNA J. ROBINSON<br><br>      Plaintiff<br><br>      v.<br><br>HUNT COUNTY, TX;<br><br>RANDY MEEKS, HUNT COUNTY SHERIFF, in his individual capacity and official capacity;<br><br>JEFFERY HAINES, in his individual capacity and official capacity;<br><br>DESTINY TWEEDY, in her individual capacity and official capacity;<br><br>JACOB SMITH, in his individual capacity and official capacity;<br><br>-and-<br><br>JOHN DOES 1-5, in their individual capacities and their official capacities,<br><br> Defendants. | Case No. 3:17-cv-513-K-BF<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFF DEANNA J. ROBINSON'S BRIEF IN SUPPORT OF PLAINTIFF'S OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE <u>UNITED STATES MAGISTRATE JUDGE</u>**

**TABLE OF CONTENTS**

I.   **INTRODUCTION AND SUMMARY OF OBJECTIONS**……………………………….1

II.  **BACKGROUND**……………………………………………........................................2

III. **ARGUMENT**……………………………………….......................................3

    A. Legal Standard……………………………………………........................................3

    B. Defendants' Administration of the HCSO Facebook Page is Bound by First Amendment Constraints on State Action, Not Facebook's Policies………........................................4

       1. Defendants, Not Facebook, Deleted Plaintiff's Speech from the HCSO Facebook Page and Banned Her from the Same………………………….....................................5

       2. Defendants' Failure to Comply with First Amendment Demands of Viewpoint Neutrality Prevails Over Any Desire to Follow Facebook Policies…………………………..6

    C. Plaintiff Has Established That Her Comments on the HSCO Facebook Page Are Protected by the First Amendment…………………………………………………………………..9

    D. Whether Plaintiff Has Shown a Likelihood of Success is Not Subject to the "Clearly Established Right" Standard of a Qualified Immunity Analysis…………………………11

IV.  **CONCLUSION**…………………………………………….......................................14

# **TABLE OF AUTHORITIES**

**CASES**

*Brown v. Mohr*, No. 2:13-cv-006, 2014 U.S. Dist. LEXIS 152356 (S.D. Ohio Oct. 24, 2014) ................. 4

*Chicago Burlington & Quincy R.R. Co. v. Chicago*, 166 U.S. 226 (1897) ................................................ 4

*Chrissy F. v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844 (5th Cir. 1991) ................................................. 12

*Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788 (1985) .................................................. 5, 7

*Ex parte Virginia*, 100 U.S. 339 (1880) .................................................................................................... 4

*Georgacarakos v. Wiley*, No. 07-cv-01712-MSK-MEH, 2008 U.S. Dist. LEXIS 69144 (D. Colo. Sept. 12, 2008) ..................................................................................................................................................... 4

*Gitlow v. New York*, 268 U.S. 652 (1925) ................................................................................................ 5

*Griffin v. Maryland*, 378 U.S. 130 (1964) ................................................................................................ 8

*Kinney v. Weaver,* 301 F.3d 253 (5th Cir. 2002) ...................................................................................... 8

*Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 115 S. Ct. 961 (1995) ........................................... 5

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) .................................................................................. 4

*Mangaroo v. Nelson*, 864 F.2d 1202 (5th Cir. 1989) .............................................................................. 12

*Matal v. Tam*, 137 S. Ct. 1744 (2017) ......................................................................................... 12, 13, 14

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710 (1964) ............................................................ 11

*Odom v. Senkowski*, 96-CV-0554, 1997 U.S. Dist. LEXIS 11780 (N.D.N.Y. Aug. 7, 1997) .................. 4

*Orellana v. Kyle*, 65 F.3d 29 (5th Cir. 1995) .......................................................................................... 12

*Packingham v. North Carolina*, 137 S. Ct. 1730 (2017) ................................................................... 12, 13

*Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997) .............................................................. 13

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995) ................................... 5, 7, 10

*Shelley v. Kraemer*, 334 U.S. 1 (1948) ..................................................................................................... 4

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975) .............................................................. 7

*Williams v. Ballard*, 466 F.3d 330 (5th Cir. 2006) ................................................................................ 12

**STATUTES**

28 U.S.C. § 636(b) .................................................................................................................................... 3

**STATUTES** (cont)

42 U.S.C. § 1983 .................................................................................................................... 4

**RULES**

Fed. R. Civ. P. 72(b) ............................................................................................................. 4

**OTHER AUTHORITIES**

Lyrissa Lidsky, *Public Forum 2.0*, 91 B.U.L. Rev. 1975 (2011) ................................................ 8

**I.       INTRODUCTION AND SUMMARY OF OBJECTIONS**

The Constitution imposes non-negotiable constraints on a government official's actions, including those that infringe on individual rights protected under the Constitution. The First Amendment demands that the government not act to squash a private citizen's speech based on the viewpoint expressed. And the policies of a private third-party such as Facebook cannot justify a government official's departure from First Amendment constraints on state action.

These longstanding principles are at the heart of Plaintiff's objections to the December 14, 2017 Findings, Conclusions, and Recommendation of the United Magistrate Judge (Dkt. 37) (hereinafter "FCR") as to Plaintiff's Motion for a Preliminary Injunction. (Dkt. 6). These principles illustrate why the FCR should not be adopted, and instead why Plaintiff is entitled to preliminary injunctive relief. Accordingly, Plaintiff respectfully objects to the FCR's recommendation that Plaintiff's motion for a preliminary injunction be denied, and further objects to the following specific findings and conclusions upon which the recommendation is based:

1.       The conclusion that Plaintiff has not demonstrated a likelihood of success on the merits because "the consequences of HCSO's failure to comply with Facebook's policies is a potential ban from using Facebook" and that Defendants must follow Facebook's policies "in order for Defendants to utilize Facebook." (FCR at 5, 7). This conclusion is erroneous as a matter of law because Defendants, as state actors, are bound by the requirements of the First Amendment, not Facebook's community standards or other policies. Defendants' past and ongoing viewpoint-based suppression of Plaintiff's speech on matters of public concern is a clear First Amendment violation, and it was erroneous for the FCR not to address the issue of viewpoint discrimination and find in favor of Plaintiff on the same.

2.       The finding that "removal of Plaintiff's post would most likely be construed as compliance with Facebook's policies." (FCR at 7) While Facebook's policies are of little

relevance to the likelihood of success analysis, this finding is erroneous because it incorrectly colors Plaintiff's comments as unprotected speech. Plaintiff's comments were protected criticism of Defendants' conduct and policies, and complied with Facebook's community standards as well as Defendants' stated terms on the Hunt County Sheriff's Office official Facebook page ("HCSO Facebook Page"). Defendants can provide no justification for removing Plaintiff's dissenting speech on matters of public concern and continuing to ban her from the HCSO Facebook Page while allowing violent speech supporting an opposing viewpoint to remain on the page.

3. The conclusion that Plaintiff has not demonstrated a likelihood of success because she has not shown the violation of a "clearly established right." (FCR at 7-9). This conclusion is erroneous as a matter of law, because it incorrectly applies the "clearly established" qualified immunity standard to Plaintiff's request for injunctive relief. Plaintiff must show only an ongoing deprivation of a constitutional right to establish a likelihood of success on the merits, and she has done so.

As demonstrated below, Plaintiff's objections are well-founded. Plaintiff respectfully requests that the Court sustain each of Plaintiff's objections, and accordingly decline to adopt the FCR and instead grant Plaintiff's motion for a preliminary injunction.

## II.   BACKGROUND

The FCR provides a fairly detailed recitation of the record in its "Background" section. (FCR at 1-4). For purposes of brevity and judicial economy, Plaintiff will not repeat the same recitation here. Nonetheless, there are a handful of facts from the record that the FCR omitted and are relevant to Plaintiff's objections:

1) The Facebook community standards make clear "[w]e permit open and critical discussion of people who are featured in the news or have a large public audience based on their profession or chosen activities." (Plaintiff's Appendix in Support of Objections ("Obj. App.") 61)

and that "[p]eople use Facebook to share their experiences and to raise awareness about issues that are important to them. This means that you may encounter opinions that are different from yours, which we believe can lead to important conversations about difficult topics." (Obj. App. 181).

     2)     The "About" section of the HCSO Facebook Page makes clear that the page is to present matters of public interest, and further, that Defendants encourage page users to submit comments. (Obj. App. 8). The terms and conditions included on the "About" section of the Hunt County Sheriff's Office do not discuss removing posts out of a concern for families visiting the page. (*Id.*). And Defendants allowed comments advocating violence to remain on the HCSO Facebook Page. (*Id* at 14).

     3)     Defendants created and launched the HCSO Facebook Page fully knowing that they could not turn off commenting on the page. (Obj. App. 79).

     4)     Despite Defendants' acknowledgment that Facebook users can report can report to Facebook possible violations of Facebook's community standards (Dkt. 14 at 2; Obj. App. 79-80, 182), there is no evidence that Defendants reported Plaintiff's comments (or any other comments they deleted from the thread on their January 18, 2017 post) to Facebook as being in violation of Facebook's community standards. There also is no evidence that Plaintiff's comments were blocked or flagged by any profanity filter attached to the HCSO Facebook Page.

Plaintiff incorporates fully by reference herein her briefing and appendices submitted in support of her motion for a preliminary injunction. (Dkt. 6, 7, 7-1, 22, and 22-1).

## III. ARGUMENT

### A. Legal Standard

Because the FCR applies to Plaintiff's motion for a preliminary injunction, the Court's review of the FCR is subject to a de novo standard. 28 U.S.C. § 636(b). Courts consistently have held that for purposes of objections to a magistrate's findings and recommendations, a preliminary

3

injunction is categorized as a dispositive motion. *E.g., Brown v. Mohr*, No. 2:13-cv-006, 2014 U.S. Dist. LEXIS 152356, at *5 (S.D. Ohio Oct. 24, 2014) ("A motion for preliminary injunction is a dispositive motion. Therefore, the Court will review de novo the portion of the [report and recommendations] discussing preliminary injunction"); *Georgacarakos v. Wiley*, No. 07-cv-01712-MSK-MEH, 2008 U.S. Dist. LEXIS 69144, at *19 (D. Colo. Sept. 12, 2008) ("For purpose of reference, motions for preliminary injunction are generally treated as dispositive motions, and thus, the Court reviews the objected-to portions of the Magistrate Judge's Recommendation de novo."); *Odom v. Senkowski*, 96-CV-0554, 1997 U.S. Dist. LEXIS 11780, at *1 (N.D.N.Y. Aug. 7, 1997) ("Because Odom's request for a preliminary injunction is a dispositive motion, the magistrate judge's recommendations require de novo review."). Accordingly, and consistent with 28 U.S.C. § 636(b), Plaintiff's objections are also governed by the de novo standard set forth in Fed. R. Civ. P. 72(b), which instructs that in resolving objections to a magistrate's report and recommendations, a court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

### B. Defendants' Administration of the HCSO Facebook Page is Bound by First Amendment Constraints on State Action, Not Facebook's Policies.

When a government employee acts in an official capacity, or otherwise under the color of state law, such action is constrained by the federal constitution and the rights it protects under and incorporated through the Fourteenth Amendment. *See, e.g., Ex parte Virginia*, 100 U.S. 339, 346-347, 25 L. Ed. 676 (1880); *Chicago Burlington & Quincy R.R. Co. v. Chicago*, 166 U.S. 226, 234 (1897); *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982) (recognizing that the requirement of "under color of state law" under 42 U.S.C. § 1983 and the Fourteenth Amendment's "state action" requirement are identical.") Importantly, "[t]he Constitution constrains governmental action 'by whatever instruments or in whatever modes

that action may be taken.'" *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 392, 115 S. Ct. 961, 971 (1995) (quoting *Ex parte Virginia*, 100 U.S. at 346-347). The First Amendment's guarantee of freedom of speech has been incorporated and held to constrain the actions of state and local officials for over ninety years. *Gitlow v. New York*, 268 U.S. 652, 666 (1925).

But the FCR overlooks the longstanding principle that state action is bound by the First and Fourteenth Amendments, and that state and local officials must treat speech in a viewpoint-neutral fashion, regardless of the nature of the forum. *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 811 (1985); *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). Instead, the FCR erroneously concluded that Plaintiff cannot establish a likelihood of success on the merits because "the consequences of HCSO's failure to comply with Facebook's policies is a potential ban from using Facebook" and because Defendants must follow Facebook's policies "in order for Defendants to utilize Facebook." (FCR at 5, 7). In making these conclusions, the FCR incorrectly elevates Facebook's policies above the constitutional constraints by which Defendants were and remain bound. As best as Plaintiff can discern, even Defendants have not argued that Plaintiff is unlikely to succeed on the merits because Facebook required them to actively censor commenters on the HCSO Facebook Page to avoid banishment from Facebook.[1]

### 1. Defendants, Not Facebook, Deleted Plaintiff's Speech from the HCSO Facebook Page and Banned Her from the Same.

Indeed, the error of the FCR's conclusion is magnified by its correct observation that Defendants, and not Facebook, acted to remove the speech of Plaintiff and others from the HCSO Facebook Page, and to ban Plaintiff from the same. (FCR at 5-7). This observation is well-

---

[1] Defendants' briefing addresses this issue only as to the "public interest" prong of injunctive relief analysis, arguing that "such an injunction may result in the possible loss of the Facebook page if the terms and conditions of Facebook could not be followed" (Dkt. 14 at 24). Defendants do not cite any support for this argument (*see id.*), and regardless, the argument fails in light of the state action principles explained herein and in Plaintiff's reply brief. (*See* Dkt. 22 at 10).

supported. The record shows Defendants acted in their official capacity and under color of state law in suppressing dissenting speech from Plaintiff and others. For example, affidavits that Defendants submitted admit that at least prior January 23, 2017, they actively deleted comments and banned citizens from the HCSO Facebook Page. (Obj. App. 75-76, 84). Plaintiff has provided sound evidence, particularly considering Defendants' admitted acts of deleting citizen expression and banning users from the HCSO Facebook Page, that Defendants were the actors responsible for removing her comment from the January 18 HCSO Post and imposing her ongoing ban from the HCSO Facebook Page. (*E.g.,* Obj. App. 3-6, 23, 36-37, 40, 42-44, 48-55). And the HCSO Facebook Page makes clear it is the "official" Facebook page of the Hunt County Sheriff's office, of which Defendant Meeks in is charge, and which employees Defendants Tweedy, Smith, and Haines. (Obj. App. 8).

Plaintiff does not dispute the FCR's conclusion that Facebook, as a private entity, may choose to delete content from its platform that does not comport with Facebook's community standards, even if it is viewpoint-based. But there is no evidence that Facebook removed Plaintiff's comments or banned her from the HCSO Facebook Page. And tellingly, despite their acknowledgment that a page administrator can report to Facebook content that may violate its community standards (Dkt. 14 at 2; Obj. App. 79-80, 182), there is no evidence Defendants made any such report to Facebook. Instead, Defendants elected to actively remove citizen speech on matters of public concern from the HCSO Facebook Page—including Plaintiff's—based on the dissenting viewpoints the speech expressed. (*E.g.,* Dkt. 7 at 11-12; Dkt. 22 at 7-9; Obj. App. 3-6, 23, 27, 29, 32, 34, 36-37, 42-44, 48-55, 64-71).

> 2. <u>Defendants' Failure to Comply with First Amendment Demands of Viewpoint Neutrality Prevails Over Any Desire to Follow Facebook Policies.</u>

Defendants' justification that they deleted citizen speech from the HCSO Facebook Page

6

because they believed it did not comply with the Facebook community standards cannot save them from their failure to comply with the First Amendment's mandate of viewpoint neutrality. *Cornelius,* 473 U.S. at 806 (holding that viewpoint neutrality is required even in non-public forums); *Rosenberger*, 515 U.S.at 829-830. Indeed, even Facebook's policies require that users "will not post content or take any action on Facebook that infringes or violates someone else's rights or otherwise violates the law." (Obj. App. 117). Facebook's polices also make clear that it "[w]e permit open and critical discussion of people who are featured in the news or have a large public audience based on their profession or chosen activities." (Obj. App. 61). So if anything here can be deemed to violate Facebook's policies, it is Defendants' acts of viewpoint discrimination that have deprived Plaintiff and others of their First Amendment rights.

And even assuming *arguendo* that Facebook endeavors to impose a duty on page administrators to actively enforce Facebook's community standards with a penalty of banishment for not doing so, [2] it still would not absolve Defendants for their unconstitutional exclusion of speech critical of their policies and conduct from a forum that they have opened to expression on matters of public interest. There is a clear demarcation between how Facebook can treat speech on its platform as a private actor, and how Defendants must treat speech on their official government Facebook page given the First Amendment constraints to which their actions are bound. *See generally Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975) (treating as a public forum for First Amendment purposes a privately-owned theater leased to a municipal government).[3] Indeed, the Supreme Court has rejected the argument that a state actor may enforce

---

[2] Contrary to the FCR's findings, there is no clear evidence that Facebook bans pages for failing to actively delete content posted by third-parties on the page that violates the Facebook community standards. (*See* FCR at 5).

[3] As at least one well-regarded commenter has observed, that a government official's or agency's use of Facebook.com may be characterized as akin to a license or lease of private property also does not alter obligations of the government officials administrating the Facebook page to abide by the First Amendment. Lyrissa Lidsky, *Public Forum 2.0*, 91 B.U.L. Rev. 1975, 1995 (2011).

7

a private actor's desires when it would require unconstitutional action. *Griffin v. Maryland*, 378 U.S. 130, 135 (1964) "If an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity or that the particular action which he took was not authorized by state law." *Id.*

If Defendants believe they are unable to maintain the HCSO Facebook Page because the First Amendment's demand for viewpoint neutrality renders it difficult to enforce Facebook community standards, then that is the constitutional burden Defendants must bear. Defendants must also bear the burden of not attempting to enforce Facebook's disfavor of certain vague categories of speech, such as "hate speech," that do not fall within the handful of clear categories of speech unprotected by the First Amendment. It is clearly erroneous for the FCR to conclude that that Defendants, as state actors, were bound to follow Facebook's policies.

Curiously, the FCR does not address the issue of viewpoint discrimination (or even Defendants' government speech argument), other than reciting the parties' respective positions in the its "Background" section. (FCR at 3-4). For the reasons provided, it is erroneous for the FCR not to address the issue of viewpoint discrimination and find that Plaintiff has shown a likelihood of success on the merits. Plaintiff has established that while acting under color of state law, Defendants engaged in and continue to engage in viewpoint discrimination on the HCSO Facebook Page—a forum they opened to citizen speech on matters of public concern—and that the HCSO Facebook Page does not constitute government speech. (Dkt. 7 at 9-15; Dkt. 22 at 7-9). Her continued ban from the HCSO Facebook Page because of her dissenting viewpoint is continuing to deprive her of the First Amendment freedom to criticize government conduct and policies. *Kinney v. Weaver,* 301 F.3d 253, 276 (5th Cir. 2002) ("Protection of speech critical of public

officials' exercise of their powers is an integral part of the 'public debate' that the First Amendment protects.")

The FCR's conclusion that Defendants need to follow the Facebook community standards precludes Plaintiff from showing a likelihood of success on the merits is legally and factually unsupportable, and Plaintiff's objection to this conclusion should be sustained.

### C. Plaintiff Has Established That Her Comments on the HSCO Facebook Page Are Protected by the First Amendment.

The FCR makes the erroneous finding that "removal of Plaintiff's post would most likely be construed as compliance with Facebook's policies." Putting aside that the Facebook community standards do not supersede the First Amendment constraints under which Defendants must operate, this finding is speculative and erroneously colors Plaintiff's speech as underserving of protection under the First Amendment. For that reason, Plaintiff objects to this finding.

Significantly, there is no evidence that Facebook removed Plaintiff's comment or warned either Plaintiff or Defendants about the content of Plaintiff's post. There is no evidence that Plaintiff's comment was blocked or flagged by any profanity filter attached to the HCSO Facebook Page. And again, Defendants did not report Plaintiff's post to Facebook, choosing instead to wrongly substitute their own judgments about Plaintiff's criticism of Defendants and their stated policy of censoring speech on the HCSO Facebook Page. (Dkt. 7 at 9-15; Dkt. 22 at 7-9). The FCR's finding that Plaintiff's post "likely" was not in compliance with Facebook's community standards is not supported by the record.

Plaintiff's deleted comments fell within the scope of the purpose for which Defendants created and administer the HCSO Facebook Page; namely, to provide information on matters of local public interest and invite citizen commentary on the same, as the HCSO Facebook Page's "About" section makes clear. (Obj. App. 8). Plaintiff's post was critical of HCSO's stated policy

9

of censoring private citizens who posted disagreeable speech on the HCSO Facebook Page. (*Id.* at 12, 23). Plaintiff's post touched directly on a matter of public concern—government suppression of public discourse—and was made in direct response to HCSO's expressed position on the matter. (*Id.*)

As Plaintiff has established, the forum status of the HCSO Facebook Page is not determinative as to whether she can show likelihood of success on the merits; it is enough that Defendants suppressed Plaintiff's speech because of the critical viewpoint she expressed. (Dkt. 7 at 9-11). And even should the Court deem the HCSO Facebook Page a limited or even a non-public forum, the "terms" Defendants posted on HCSO Facebook Page do not limit the First Amendment protections to which Plaintiff's speech is entitled. Plaintiff's deleted post was not defamatory, obscene, threatening, commercial in nature, nor did it otherwise meet the criteria for removal stated in the HCSO Facebook Page's purported terms of use. (*See id.*) It plainly fell within the "public interest" purpose for which Defendants created the HCSO Facebook Page. *Rosenberger*, 515 U.S. at 829 ("The State may not exclude speech where its distinction is not reasonable in light of the purpose served by the forum, nor may it discriminate against speech on the basis of its viewpoint.") (internal citations omitted)

And notably, those terms" make no mention of Defendants alleged concern for content that is not family-friendly (*See* Obj. App. 8), despite the FCR's seeming reliance on Defendants' alleged concern about families visiting the page. (FCR at 6). Given Defendants' willingness to allow comments about "killing" others to remain on the HCSO Facebook Page, despite removing the non-violent dissenting speech of Plaintiff and others, Defendants' alleged concern should not be afforded much weight. (*See, e.g.,* Obj. App. 14, ("Kill one of our lawmen, we will kill you back!")). While Plaintiff's speech may have been colorful, it did not fall within any of the few

categories of speech unprotected under the First Amendment, let alone violate the stated terms on the HCSO Facebook Page. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S. Ct. 710, 721 (1964) (recognizing "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.")

Plaintiff's post constituted speech protected by the First Amendment, and contrary to the FCR's finding, it likely was complaint with Facebook's community standards as well. Indeed, the FCR finding overlooks that Facebook's community standards make clear that "[w]e permit open and critical discussion of people who are featured in the news or have a large public audience based on their profession or chosen activities." (Obj. App. 26) and that "[p]eople use Facebook to share their experiences and to raise awareness about issues that are important to them. This means that you may encounter opinions that are different from yours, which we believe can lead to important conversations about difficult topics." (Obj. App. 181). The FCR's finding that the "removal of Plaintiff's post would most likely be construed as compliance with Facebook's policies" is erroneous, and Plaintiff's objection to it should be sustained.

### D. Whether Plaintiff Has Shown a Likelihood of Success is Not Subject to the "Clearly Established Right" Standard of a Qualified Immunity Analysis.

The FCR erroneously concludes that "Plaintiff still has not demonstrated a substantial likelihood of prevailing on the merits, because it would not be clear to a reasonable official that such conduct would violate Plaintiff's First Amendment right." (FCR at 7-9). The FCR reaches this conclusion by applying the "clearly established right" standard under the test for qualified immunity. *Id.* But qualified immunity applies only to claims for monetary damages against government officials; it does not foreclose injunctive relief against government officials, such as the relief Plaintiff seeks in her motion for a preliminary injunction.

Indeed, the Fifth Circuit has made clear that as a matter of law, the qualified immunity standard does not apply to claims for injunctive relief. *Chrissy F. v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991) ("Neither absolute nor qualified personal immunity extends to suits for injunctive or declaratory relief under § 1983."); *see also Mangaroo v. Nelson*, 864 F.2d 1202, 1208 (5th Cir. 1989) (holding erroneous "the district court's apparent belief that qualified immunity prevented an award of prospective injunctive relief."); *Orellana v. Kyle*, 65 F.3d 29, 33 (5th Cir. 1995) (concluding "the district court therefore erred as a matter of law in finding in finding the defendant immune from this injunctive suit."); *Williams v. Ballard*, 466 F.3d 330, 334 n.7 (5th Cir. 2006) ("Qualified immunity does not protect officials from injunctive relief.") (citing *Orellana*). Accordingly, to establish a likelihood of success on the merits, Plaintiff does not need to show a "clearly established right."[4] Rather, she only needs to show a violation of a recognized constitutional right appropriate for an injunctive remedy. And she has done so, as illustrated herein and in her briefing on her motion for a preliminary injunction. (*See* Dkt. 7 at 9-17; Dkt. 22 at 4-9). Accordingly, Plaintiff requests that the Court sustain her objection to the FCR based upon its improper reliance on the qualified immunity standard.

And when applying the correct standard, the Supreme Court's recent decision in *Packingham vs. North Carolina*[5] strongly <u>supports</u> Plaintiff's showing of a likelihood of success on the merits, contrary to the FCR's erroneous application of the decision. 137 S. Ct. 1730 (2017) In affirming the unconstitutionality of a statute that restricted a convicted sex offenders access to social media, including Facebook, the Supreme Court recognized that "[w]hile in the past there

---

[4] And as Plaintiff makes clear in her opposition to Defendants' Amended Motion to Dismiss, Defendants' conduct did violate Plaintiff's clearly established rights under the First and Fourteenth Amendments, and thus Defendants are not entitled to qualified immunity on Plaintiff's request for retrospective monetary damages. (Dkt. 24 at 6-17).

[5] *Packingham,* along with *Matal v. Tam*, 137 S. Ct. 1744 (2017), were issued after the parties completed briefing on Plaintiff's motion for a preliminary injunction. Plaintiff filed a Notice of Supplemental Authority on June 20, 2017 [Dkt. 34] bringing these decisions to the Court's attention.

12

may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet' in general, and social media in particular." 137 S. Ct. at 1735 (quoting *Reno v. American Civil Liberties Union*, 521 U.S. 844, 868 (1997)). In making this observation, the Supreme Court affirmed the clear principle it set forth *Reno* twenty years prior—that speech on the internet is subject to the same First Amendment protections as speech offline. *Reno*, 521 U.S. at 870.

*Packingham* reinforces that in actively suppressing Plaintiff's dissenting viewpoints (as well as those of other commenters) on Facebook, Defendants did and continue to violate Plaintiff's First Amendment right to engage in public discourse in a forum Defendants created for that very purpose. *See Packingham*, 173 S. Ct. at 1735 ("A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more.") While the FCR notes the Supreme Court's discussion in *Packingham* of the shifting nature of the "Cyber Age" (FCR at 8), it omits the full text of the Court's observation that "the Court must exercise extreme caution <u>before suggesting that the First Amendment provides scant protection for access to vast networks in that medium.</u>" *Packingham*, 137 S.Ct. at 1736 (emphasis added). *Packingham* directs that First Amendment protections for online speech should be drawn broadly. *Id*.

And while it was not addressed in the FCR, the Supreme Court's recent decision in *Matal v. Tam* further supports that Defendants are continuing to deprive Plaintiff of her First Amendment liberties, as it reinforces that viewpoint discrimination is "forbidden" in even limited public forums. 137 S. Ct. 1744, 1763 (2017). Importantly, the Supreme Court in *Tam* refused to expand the government speech doctrine beyond its few prior narrow findings of government speech, surmising that "if private speech could be passed off as government speech by simply affixing a

13

government seal of approval, government could silence or muffle the expression of disfavored viewpoints." *Id.* at 1758.

Plaintiff has shown a likelihood of success that entitles her to preliminary injunctive relief. Accordingly, the Court should not adopt the FCR and should instead grant Plaintiff's motion.

## IV. CONCLUSION

For the reasons provided herein, Plaintiff's objections to the FCR should be sustained. Plaintiff respectfully requests that the Court not adopt the Magistrate's recommendation and instead grant Plaintiff's motion for a preliminary injunction.

Dated: December 28, 2017

        Respectfully submitted,

        /s/ JT Morris

        JT Morris
        Texas State Bar No. 24094444
        JT Morris Law, PLLC
        610 Brazos Street, Suite 320
        Telephone: (512) 717-5275
        Fax: (512) 582-2948
        E-mail: jt@jtmorrislaw.com

        David D. Davis
        Texas State Bar No. 00790568
        Law Offices of David D. Davis, PLLC
        P.O. Box 542915
        Grand Prairie, Texas 75204
        Telephone: (972) 639-3440
        Fax: (972) 639-3640
        ddd@dddavislaw.net

        **ATTORNEYS FOR PLAINTIFF**
        **DEANNA J. ROBINSON**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 28, 2017, a true and correct copy of the foregoing document was transmitted via using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

/s/ JT Morris

JT Morris