IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEANNA J. ROBINSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-0513-K |
| | § | |
| HUNT COUNTY, TX., RANDY MEEKS | § | |
| HUNT COUNTY SHERIFF, in his | § | |
| Individual and official capacity, and | § | |
| JOHN DOES 1-10, in their individual | § | |
| and official capacities, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Motion to Dismiss Plaintiff's First Amended Complaint

[ECF No. 21] ("Motion to Dismiss"), filed on April 28, 2017 by Defendants Hunt

County, Texas ("Hunt County"), Hunt County Sheriff Randy Meeks ("Meeks"),

Jeffrey Haines ("Haines"), Destiny Tweedy ("Tweedy"), and Jacob Smith ("Smith")

(collectively, "Defendants"). For the reasons stated below, Defendants' Motion to

Dismiss [ECF No. 21] is **GRANTED**.

## BACKGROUND

Plaintiff filed this lawsuit on February 23, 2017 alleging that her constitutional

rights were violated because her comments on the Hunt County Sheriff's Office

("HCSO") Facebook page were removed and she was banned from posting comments

on this page. Compl. 1 & 8, ECF No. 1. Plaintiff's Original Complaint named as

Defendants Hunt County, Meeks, and John Does 1-10. Compl. 1, ECF No. 1. On April 20, 2017, Plaintiff filed her First Amended Complaint identifying additional defendants Haines, Tweedy, and Smith, and seeking relief against John Does 1-5. Am. Compl. 1, ECF No. 18. The Amended Complaint alleged the following causes of action: First Cause of Action – Freedom of Speech pursuant to the First and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983 ("Section 1983") against Meeks, Haines, Tweedy, Smith, and John Does 1-5 in their individual and official capacities;  Second Cause of Action – Due Process pursuant to the Fourteenth  Amendment of the U.S. Constitution and Section 1983 against Meeks, Haines, Tweedy, Smith, and John Does 1-5 in their individual and official capacities; Third Cause of Action – *Monell* Claim pursuant to the First and Fourteenth Amendments of the U.S. Constitution and Section 1983 against Hunt County; and Fourth Cause of Action - Supervisory Liability pursuant to the First and Fourteenth Amendments of the U.S. Constitution and Section 1983 against Meeks, Haines, and John Does 1-5 in their individual and official capacities. Am. Compl. 16-28, ECF No. 18. Plaintiff has not identified and served John Does 1-5.

Plaintiff's Amended Complaint states that Defendants created and operate the official HCSO Facebook page, that Defendants frequently post matters of public concern on this page, and that Defendants encourage and permit the public's expression on this page. Am. Compl. 7, ECF No. 18. Plaintiff states that Defendants specifically encouraged the public to (1) make comments, "like," and share

Defendants' posts regarding matters of public concern; and (2) reply to and "like" comments made by the public on the HCSO Facebook page. Am. Compl. 7, ECF No. 18. The "About" section of the HCSO Facebook page states the following:

> The purpose of this site is to present matters of pub[l]ic interest within Hunt County[,] Texas. We encourage you to submit comments, but please note that this is NOT a public forum. Comments posted to this page will be monitored. The Hunt County Sheriff's Office reserves the right to delete comments that: contain false information, obscene language or sexual content, threaten or defame any person or organization including the Hunt County Sheriff's Office, support or oppose political candidates, political organizations or ballot propositions, promote illegal activity, commercial services or products, infringe on copyrights or trademarks or are not topically related to the particular posting. In addition, should you (the end user) be formally charged with a criminal offense or arrested in connection with a criminal offense, your image may be displayed on our page. By "LIKING" or INTERACTING" with our page you agree to the above terms[.]

Am. Compl. 7, ECF No. 18; Ex. A, ECF No. 18-1 at 2.

On January 18, 2017, Defendants made the following post on the HCSO Facebook page:

> We find it suspicious that the day after a North Texas Police Officer is murdered, we have received several anti-police calls in the office, as well as people trying to degrade or insult police officers on this page. ANY post filled with foul language, hate speech of all types and comments that are considered inappropriate will be removed and the user banned. There are a lot of families on this page, and it is for everyone, and therefore, we monitor it extremely closely. Thank you for understanding.

Am. Compl. 9, ECF No. 18. Plaintiff states that the following post she made on January 18, 2017 in response to Defendants' post was deleted:

> Degrading or insulting police officers is not illegal, and in fact has been ruled time and time again, by multiple US courts, as protected First

3

Amendment speech. Just because you consider a comment to be "inappropriate" doesn't give you the legal right to delete it and/or ban a private citizen from commenting on this TAX PAYER funded social media site. No police officer was "murdered" yesterday. Imagine how wonderful it would have been if the private citizen hadn't been confronted on private property and a stand off hadn't been created unnecessarily . . . the terrorist pig with a shiny badge would still be alive today. Just imagine . . . . HCSO is a bunch of idiots, led by the biggest idiot in the entire country - if your moderators delete comments or ban people, you're just setting yourselves up perfectly for a First Amendment rights violation law suit. Thank you for your understanding.

Am. Compl. 9-10, ECF No. 18; Ex. C, ECF No. 18-1 at 13.

Plaintiff seeks the following requests for relief:

(1)    A declaratory judgment that Defendants' administration and maintenance of the HCSO Facebook page and their official policy and/or longstanding custom governing the same violate the First Amendment to the United States Constitution;

(2)    A declaratory judgment that Defendants' administration and maintenance of the HCSO Facebook page and their official policy and/or longstanding custom governing the same violate the Fourteenth Amendment to the United States Constitution;

(3)    A declaratory judgment that Defendants' ongoing ban of Plaintiff from the HCSO Facebook page, where Defendants imposed the ban because Plaintiff expressed viewpoints that are critical of and unfavorable to Defendants, constitutes an impermissible prior restraint under the First Amendment to the United States Constitution;

(4)    Preliminary and permanent injunctive relief enjoining Defendants and their employees, agents, servants, officers, and persons in concert with Defendants from removing, censoring, or otherwise restricting protected speech on the HCSO Facebook page, including, but not limited to, restricting and removing comments based on their expressed viewpoint(s);

(5)    Preliminary and permanent injunctive relief enjoining Defendants and their employees, agents, servants, officers, and persons in concert with Defendants from banning users who engage in protected speech on the

HCSO Facebook page; including, but not limited to, banning individuals based on their expressed viewpoint(s);

(6)     Preliminary and permanent injunctive relief compelling Defendants and their employees, agents, servants, officers, and persons in concert with Defendants to restore Plaintiff's comments to the HCSO Facebook page, and to restore Plaintiff's ability to comment and otherwise participate on the HCSO Facebook page;

(7)     Preliminary and permanent injunctive relief compelling Defendants and their employees, agents, servants, officers, and persons in concert with Defendants to develop, ratify, and execute, and make publicly-available a policy for monitoring, maintaining, and administering the HCSO Facebook page that protects the First Amendment rights of speakers, including but not limited to (1) permitting comments that express dissenting, critical, or unfavorable viewpoints on matters of local public interest and (2) posting on the HCSO Facebook page that the policy stated in the HCSO January 18, 2017 post is no longer in effect and will no longer be enforced by Defendants;

(8)     Compensatory damages;

(9)     Punitive damages; and

(10)    Attorneys' fees, statutory fees, and costs under 42 U.S.C. § 1988.

## STANDARD OF REVIEW

### Rule 12(b)(6)

In order to survive a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge* & *Dock Co. LLC*, 624 F.3d

201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d at 210 (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *Hughes v. Tobacco Institute, Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). In addition, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 555. "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

## ANALYSIS

### Hunt County

Plaintiff's Third Cause of Action alleges that Hunt County "developed, ratified, enforced, and continued to enforce an official county policy and/or

longstanding custom of removing and censoring speech concerning matters of public interest from the HCSO Facebook page, but only where such speech is critical of, unpopular with, or otherwise unfavorable to Defendants." Am. Compl. 21, ECF No. 18. Plaintiff further alleges that it is "Hunt County's official county policy and/or longstanding custom [to] ban[] members of the public from the public HCSO Facebook page as retaliation and punishment for expressing critical or unpopular viewpoints on the HCSO Facebook Page." Am. Compl. 21, ECF No. 18. As discussed below, Plaintiff's claim against Hunt County fails, because she fails to sufficiently allege municipal liability.

<u>Section 1983</u>

"Section 1983 provides a private right of action against parties acting under color of any statute, ordinance, regulation, custom, or usage, of any State to redress the deprivation of rights secured by the United States Constitution or federal law." *Mercado v. Dallas Cty., Tex.*, 229 F. Supp. 3d 501, 509 (N.D. Tex. 2017) (quoting *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003); citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)) (internal quotation marks omitted). "'Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights.'" *Id.* (quoting *Bauer*, 341 F.3d at 357; citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). "To prevail on a § 1983 claim, plaintiffs 'must show that: 1) the offending conduct was committed by a person acting under color of state law; and 2) the conduct deprived the plaintiff of rights secured by the

Constitution or federal law.'" *Id.* (quoting *Bauer*, 341 F.3d at 357; citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

<u>Municipal Liability</u>

"A municipality is a 'person' subject to suit under § 1983 under certain circumstances." *Arevalo v. City of Farmers Branch, Tex.*, No. 3:16-CV-1540-D, 2017 WL 5569841, at *3 (N.D. Tex. Nov. 20, 2017) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978)). "Although a municipality cannot be held liable simply on a theory of respondeat superior . . . it can be held liable if a deprivation of a constitutional right is inflicted pursuant to an official policy or custom[.]" *Id.* (citing *Monell*, 436 U.S. at 691; *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)). "Municipal liability requires proof of three elements: '(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom.'" *Id.* (quoting *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

"The first element requires [Plaintiff to] adequately plead an official policy or custom." *Id.* "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle*, 613 F.3d at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). "Although a 'single decision by a [policymaker] may, under certain circumstances, constitute a policy for which a

**8**

municipality may be liable[,] . . . this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is the final policymaker.'" *Id.* (quoting *Burge*, 336 F.3d at 369). A custom is "a persistent, widespread practice of City officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).

In order "[t]o satisfy the second element, [Plaintiff] must adequately plead the identity of a policy maker with 'final policymaking authority.'" *Arevalo*, 2017 WL 5569841, at *3 (citing *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003); *Praprotnik*, 485 U.S. at 127). "A 'policymaker' must be one who takes the place of a governing body in a designated area of city administration." *Webster*, 735 F.2d at 841 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)). "City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. . . . [T]hey are not supervised except as to the totality of their performance." *Bennett*, 728 F.2d at 769. "[The court's] analysis must also take into account the difference between final decision making authority and final policymaking authority, a distinction that this circuit recognized as fundamental[.] . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dallas*, 541 F.3d 545, 548-49 (5th Cir. 2008) (citations omitted).

"The third element requires [the plaintiff to] adequately plead that the municipal policy or custom was the 'moving force' of the constitutional deprivation, which requires a 'high threshold of proof.'" *Arevalo*, 2017 WL 5569841, at *4 (citing *Piotrowski*, 237 F.3d at 580; *Monell*, 436 U.S. at 694). The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)) (internal quotation marks omitted). Therefore, Plaintiff "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Brown*, 520 U.S. at 411) (internal quotation marks omitted). "Simple or even heightened negligence, however, is insufficient to meet the deliberate indifference requirement." *Arevalo*, 2017 WL 5569841, at *4 (citing *Piotrowski*, 237 F.3d at 579; *Brown*, 520 U.S. at 407).

Defendants argue that Plaintiff's claim against Hunt County fails, because Plaintiff failed to plead either an official policy or an established custom that was the moving force behind the deprivation of a constitutional right. Mot. 22, ECF No. 21. Defendants argue that Plaintiff at most identified: (1) six alleged incidents of comments being removed, many that do not demonstrate similarity with the conduct Plaintiff complains that Defendants committed; (2) two alleged incidents of commenters being prevented from posting further comments, one being Plaintiff and

the other involving unidentified circumstances; and (3) one example of Plaintiff allegedly having her comment removed and losing the ability to make further comments without notice or a hearing. Mot. 21, ECF No. 21. Defendants argue that these allegations are not sufficient to establish a custom capable of supporting governmental liability under Section 1983, because they do not demonstrate conduct that is sufficiently widespread and similar to the conduct Plaintiff complains of. Mot. 21, ECF No. 21. Defendants point out that that Plaintiff in fact alleges that Defendants "uniquely punished and censored" her. Mot. 22, ECF No. 21 n.12; Am. Compl. ¶ 42, ECF No. 18. In addition, Defendants argue that the evidence Plaintiff attaches to her Amended Complaint does not show that Hunt County has a custom of removing critical comments, but that the HCSO Facebook page includes numerous comments critical of Hunt County police officers, the removal of comments from the HCSO Facebook page, and links to articles regarding the removal of comments on Facebook pages by other law enforcement agencies. Mot. 21-22, ECF No. 21; Ex. B., ECF No. 18-1 at 6-11.

In the response, Plaintiff argues that she specifically alleged six acts of viewpoint discrimination that permit a reasonable inference of a custom supporting municipal liability under Section 1983. Resp. 23, ECF No. 24. Plaintiff argues that Defendants' contention that a custom cannot exist because Defendants reinstated or overlooked a handful of comments critical of or unfavorable to Defendants rests on the untenable position that municipal liability can only attach if a policy or custom is

adhered to perfectly. Resp. 23-24, ECF No. 24. Plaintiff further argues that she

adequately alleged that Hunt County's official policy or custom was the "moving

force" behind the deprivation of her rights, and that she explained how Hunt

County's policy or custom was the proximate cause of the deprivation. Resp. 24, ECF

No. 24.

In resolving a Rule 12(b)(6) controversy, the Court may examine "the

complaint, any documents attached to the complaint, and any documents attached to

the motion to dismiss that are central to the claim and referenced by the complaint."

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank P.L.C.*, 594 F.3d 383, 387 (5th Cir.

2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir.

2000)). As Defendants argue, Plaintiff failed to sufficiently plead that there is an

official policy or widespread and established conduct sufficient to support

governmental liability under Section 1983. *See* Mot. 21, ECF No. 21; *Peterson v. City

of Fort Worth, Texas*, 588 F.3d 838, 850-51 (5th Cir. 2009) ("Where prior incidents

are used to prove a pattern, they must have occurred for so long or so frequently that

the course of conduct warrants the attribution to the governing body of knowledge

that the objectionable conduct is the expected, accepted practice of city employees. . .

. The district court . . . held that the 27 complaints on which Peterson relies were

insufficient to establish a pattern of excessive force. After careful examination of the

record, we conclude the district court did not err.") (internal quotation marks and

citations omitted). As Defendants point out, Plaintiff alleges that Defendants

"uniquely punished and censored" her, Plaintiff alleges that critical comments were restored, and Exhibit B to Plaintiff's Amended Complaint show that numerous comments critical of Hunt County remain on the HCSO Facebook page, all of which run counter to the notion that Defendants have a policy or custom of removing and prohibiting critical comments. Mot. 22 n.12, ECF No. 21; Am. Compl. 10 & 12, ECF No. 18; Ex. B, ECF No. 18-1 at 3-11. Despite construing the factual allegations in a light most favorable to Plaintiff, the Court is not able to conclude that Plaintiff sufficiently alleged municipal liability. Therefore, Plaintiff's third cause of action against Hunt County is dismissed.

## Individual Defendants

Plaintiff's first and second causes of action are asserted against Meeks, Haines, Tweedy, Smith, and John Does 1-5, and Plaintiff's fourth cause of action is asserted against Meeks, Haines, and John Does 1-5. Plaintiff alleges her causes of action against the individual defendants in their official and individual capacities. As discussed below, because Plaintiff failed to adequately allege an underlying claim, Plaintiff's official and individual capacity claims, supervisory liability claim, requests for declaratory and injunctive relief, and request for punitive damages lack merit.

## Free Speech

Plaintiff alleges that Defendants engaged in viewpoint-based discrimination and retaliated against her for her criticism of Defendants by removing her comment and banning her from participating on the HCSO Facebook page. Am. Compl. 16-19,

ECF No. 18. "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) (citing *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 96 (1972)). "When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant." *Id.* at 829 (citing *R.A.V. v. St. Paul*, 505 U.S. 377, 391 (1992)). "Viewpoint discrimination is thus an egregious form of content discrimination." *Id.* "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.* (citing *Perry Ed. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)).

"[T]he First Amendment prohibits not only direct limitations on speech but also adverse government action against an individual because of her exercise of First Amendment freedoms." *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999). "Ordinary citizens may recover for retaliation in violation of the First Amendment if they can show: '(1) they were engaged in constitutionally protected activity, (2) the [defendant's] actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the [defendant's] adverse actions were substantially motivated against the [plaintiff's] exercise of constitutionally protected conduct.'" *Klein v. Walker*, No. 1:14-CV-509-

RC-ZJH, 2016 WL 9242015, at *3 (E.D. Tex. June 10, 2016) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)).

Plaintiff's Amended Complaint states that she posted a comment stating that degrading and insulting police officers is protected First Amendment speech and referred to a recently killed police officer as a "terrorist pig with a shiny badge" in response to Defendants' post informing the HCSO Facebook page's followers that the page is closely monitored because many families follow the page and stating that inappropriate comments will be removed. Am. Compl. 9-10, ECF No. 18. The Amended Complaint further states that Defendants restored other critical comments, and an exhibit attached to Plaintiff's Amended Complaint shows that the HCSO Facebook page includes numerous comments critical of Hunt County police officers, the removal of comments from the HCSO Facebook page, and links to articles regarding the removal of Facebook comments by other law enforcement agencies. Mot. 21-22, ECF No. 21; Ex. B., ECF No. 18-1 at 6-11; Am. Compl. 12, ECF No. 18.

Based on the foregoing, Plaintiff's Amended Complaint fails to show that Defendants engaged in viewpoint discrimination or that Defendants' conduct was motivated by Plaintiff's exercise of her constitutional right. *See Washington v. Whittington*, Civ. Action No. 10-356, 2010 WL 3834589, at *5 (W.D. La. Aug. 19, 2010) ("[T]he complaint nonetheless fails to establish that defendants evicted him because of his protected activity. Conclusory allegations of causation do not suffice to withstand a motion to dismiss. . . . Rather, plaintiff must either adduce direct

evidence of motivation, or set forth a 'chronology of events from which retaliation may plausibly be inferred.' . . . Here, plaintiff does neither." (citing *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999))). While it may be possible that Defendants removed her comment because she criticized the HCSO, it is also possible Defendants removed the comment because Defendants deemed it to be insensitive to the family of the recently deceased officer or inappropriate for other family followers. *Cf. Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684 (1986) (The Supreme "Court's First Amendment Jurisprudence has acknowledged limitations on the otherwise absolute interest of the speaker in reaching an unlimited audience where . . . the audience may include children."); *Snipes v. Volusia Cty.*, 704 F. App'x 848 (11th Cir. 2017) ("[T]here are many ways to communicate ones' thoughts, and the vulgar, derogatory phrases used by Snipes weigh against him."). Furthermore, Defendants' conduct in allowing many other critical comments to remain on the HCSO Facebook page runs counter to the notion that Plaintiff's criticism of the HCSO substantially motivated Defendants' actions. Therefore, Plaintiff's First Amendment claim fails, because Plaintiff's allegations do not permit the Court "to infer more than the mere possibility of misconduct." *See Iqbal*, 556 U.S. at 679.

Due Process

Plaintiff alleges that Defendants deprived her of her First Amendment right without giving her notice or an opportunity to be heard. Am. Compl. 19-20, ECF No. 18. "[D]ue process, 'unlike some legal rules, is not a technical conception with a fixed

content unrelated to time, place and circumstances;' instead, it is 'flexible and calls for such procedural protections as the particular situation demands.'" *Shah v. Univ. of Tex. Sw. Med. Sch.*, 129 F. Supp. 3d 480, 497-98 (N.D. Tex. 2015) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). "To succeed on a substantive due process claim, a plaintiff must cross two hurdles. First, he must allege a deprivation of a constitutionally protected right. . . . and [] second . . . whether the governmental action was 'rationally related to a legitimate governmental interest.'" *Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006) (quoting *Simi Inv. Co. v. Harris Cty.*, 236 F.3d 240, 249 (5th Cir. 2000)).

> Procedural due process is not itself an independent right, but merely a condition precedent to the deprivation of a life, liberty or property interest. . . . We must therefore identify a constitutionally protectable interest which triggers the safeguards of the due process clause. . . . Once we find that a protected interest is implicated, the question remains what process is due.

*Haitian Refugee Ctr. v. Smith*, 676 F.2d 1023, 1037 (5th Cir. 1982) (citations omitted). Because Plaintiff failed to adequately allege a First Amendment violation, Plaintiff's due process claim also fails.

### Injunctive Relief

"A claim for injunctive relief is a remedy that does not stand alone, but requires a viable underlying legal claim." *Mote v. Walthall*, No. 4:16-CV-203, 2017 WL 515411, at *4 (E.D. Tex. Feb. 8, 2017) (citing *Horne v. Time Warner Operations, Inc.*, 119 F. Supp.2d 624, 630 (S.D. Miss. 1999), *aff'd by* 228 F.3d 408 (5th Cir.

2000)). Because Plaintiff failed to allege a viable underlying claim, Plaintiff is not entitled to injunctive relief.

Declaratory Judgment

Defendants argue that Plaintiff's requests for declaratory relief should be dismissed, because Plaintiff merely seeks a declaration regarding issues that are to be resolved as part of Plaintiff's substantive claims in the lawsuit. Mot. 13-14, ECF No. 21. "In the Federal Rule of Civil Procedure 12(b)(6) context, courts regularly reject declaratory judgment claims that seek resolution of matters that will already be resolved as part of the claims in the lawsuit." *Flanagan v. Chesapeake Exploration, LLC*, No. 3:15-CV-222-B, 2015 WL 6736648, at *4 (N.D. Tex. Nov. 4, 2015) (citing *Regus Mgmt. Grp., LLC v. Int'l Bus. Mach. Corp.*, No. 3:07-CV-1799-B, 2008 WL 2434245, at *3 (N.D. Tex. June 17, 2008); *Xtria LLC v. Tracking Sys., Inc.*, No. 3:07-CV-0160-D, 2007 WL 1791252, at *3 (N.D. Tex. June 21, 2007); *Assistmed, Inc. v. Conceptual Health Sols., Inc.*, No. 3:05-CV-0880-D, 2006 WL 3691003, at *17 (N.D. Tex. Dec. 14, 2006); *Albritton Props. v. Am. Empire Surplus Lines*, No. 3:04-CV-2531-P, 2005 WL 975423, at *2 (N.D. Tex. Apr. 25, 2005); *Kogul v. Xspediou Mgmt. Co.*, No. 3:04-CV-2518-D, 2005 WL 1421446, at * 4 (N.D. Tex. June 1, 2005)). As Defendants argue, Plaintiff's requests for declaratory judgment should be dismissed, because they are duplicative of the other claims in this lawsuit. *See id.* ("[I]f a request for a declaratory judgment adds nothing to an existing lawsuit, it need not be

18

permitted." *Id.* (citing *Pan-Islamic Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980)).

In addition, as discussed, Plaintiff failed to adequately state an underlying cause of action. Therefore, "Plaintiffs' request for declaratory relief should also be dismissed because it cannot survive without an underlying cause of action. '[T]he Declaratory Judgment Act is procedural and does not create an independent private right of action.'" *Short v. JPMorgan Chase Bank, N.A.*, No. 3:15-CV-1953-M (BN), 2015 WL 8732206, at *6 (N.D. Tex. Nov. 19, 2015) (citing *Harris Cty., Tex. v. MERSCORP Inc.*, 791 F.3d 545, 553 (5th Cir. 2015); *Okpalobi v. Foster*, 244 F.3d 405, 424 n.31 (5th Cir. 2001)).

### Punitive Damages

Defendants argue that Plaintiff failed to plead facts sufficient to state a claim for punitive damages, and that punitive damages cannot be assessed against a county under Section 1983. Mot. 12-13, ECF No. 21. "A municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Furthermore, punitive damages may be awarded in Section 1983 cases where the individual defendant's conduct "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Such a standard requires evidence that the individual possessed "a 'subjective consciousness' of a risk of injury or illegality and a 'criminal indifference to civil obligations.'"

*Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999) (quoting *Smith*, 461 U.S. at

45-48). Because Plaintiff failed to allege conduct warranting punitive damages, and

because punitive damages cannot be assessed against a county, Plaintiff is not entitled

to punitive damages.

Official Capacity

Plaintiff alleges that the individual defendants violated her constitutional

rights in their official capacities as employees of Hunt County. Am. Compl. 16-20,

ECF No. 18. Defendants argue that Plaintiff's official capacity claims must be

dismissed, because suing a governmental official in his official capacity is the same as

suing the governmental entity. Mot. 12, ECF No. 21. Plaintiff argues that the

requests for injunctive and declaratory relief sought against the individual defendants

in their official capacities apply to the HCSO and its agents and are not duplicative of

Plaintiff's municipal liability claim against Hunt County. Resp. 25, ECF No. 24.

"In general, an official-capacity suit is simply 'another way of pleading an

action against an entity of which an officer is an agent.'" *Hoyt v. Big Spring State

Hosp.*, No. 6:15-cv-3-BL, 2016 WL 7189844, at *9 (N.D. Tex. Dec. 8, 2016) (citing

*Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Monell*, 436 U.S. at 690 n.55).

"Courts treat official-capacity suits 'as a suit against the entity.'" *Id.* (quoting *Graham*,

473 U.S. at 166). "Moreover, when a plaintiff brings suit against both the entity and

an individual in her official capacity under the same set of facts, the courts properly

dismiss the official-capacity claims as duplicative." *Id.* (citing *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001)).

"A state official in his or her official capacity, when sued for injunctive relief, would be a person under section 1983 because official-capacity actions for prospective relief are not treated as actions against the state." *Huff v. Cain*, Civ. Action No. 12-788-BAJ-SCR, 2013 WL 6075650, at *4 (M.D. La. Nov. 18, 2013) (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989); *Graham*, 473 U.S. at 167). "Thus, the plaintiff may recover money damages against the defendants insofar as the defendants were sued in their individual capacities for actions taken by each of them under color of state law which caused the deprivation of constitutional rights[,]" and "prospective injunctive relief . . . against the defendants in their official capacity is also actionable under § 1983." *Id.* "Of course, the plaintiff must prove a deprivation of a constitutional right to obtain any relief, whether in the form of damages or prospective injunctive relief." *Id.* As discussed, because Plaintiff is not entitled to injunctive relief, Plaintiff's official capacity claims are dismissed.

## Individual Capacity

Defendants argue that Plaintiff's individual capacity claims should be dismissed because Plaintiff's allegations do not demonstrate that the individual defendants violated clearly established law, and they are thus entitled to qualified immunity. Mot. 22-29, ECF No. 21. Plaintiff argues that her rights were clearly

established. Resp. 6-17, ECF No. 24. In *Jackson v. Ladner*, the Fifth Circuit explained as follows:

> [W]hile these general First Amendment principles were firmly established in 2007, this is not dispositive of our inquiry into whether M.J.'s First Amendment rights were 'clearly established' at the time of defendants' conduct given the unique facts of this case. . . . [W]e [] must determine whether or not it 'would be clear' to a reasonable [] official in the defendants' position that punishing M.J. for the content of her Facebook messages would violate the First Amendment given the particular circumstances here. . . . We agree with defendants that the answer is no.

*Jackson v. Ladner*, 626 F. App'x 80, 88 (5th Cir. 2015) (citing *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004); *Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 620 (5th Cir. 2004)). Similarly, given the particular circumstances in this case, it would not have been clear to a reasonable official that the alleged conduct would violate Plaintiff's First Amendment rights. The case law on this topic is not a model of clarity, and insufficient precedent exists to provide Hunt County with a fair warning. *See id.* at 88 ("At the time of the events in question, insufficient precedent existed to provide [] officials with 'fair warning' that the defendant's conduct violated the First Amendment. . . . [T]he 'central concept' of qualified immunity is that of 'fair warning[.]'") (citing *Bush v. Strain*, 513 F.3d 492, 501-02 (5th Cir. 2008)); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("A government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" (quoting *Anderson v. Creighton*, 483 U.S.

635, 640 (1987))); *Bland v. Roberts*, 730 F.3d 368, 393-94 (4th Cir. 2013) ("We do not expect sheriffs to be judges and to have the training to sort through every intricacy of case law that is hardly a model of clarity. . . . Rather in considering whether constitutional rights were clearly established for qualified-immunity purposes, we view the issue from 'the layman's perspective[.]'" (citing *Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1108 (8th Cir. 2004); *Ross v. Reed*, 719 F.2d 689, 696 n.8 (4th Cir. 1983))); *Davison v. Rose*, No. 1:16-CV-540, 2017 WL 3251293, at *10 (E.D. Va. July 28, 2017) ("It is not clear as a legal matter whether the Facebook pages at issue in this litigation can be said to constitute either type of public forum. In any event, it cannot be said that such a First Amendment right was a 'clearly established' right, 'of which a reasonable person would gave known.' These Individual Defendants are therefore entitled to qualified immunity for the actions they took against Plaintiff with respect to their Facebook pages.").

<u>Supervisory Liability</u>

Plaintiff alleges that Defendants directed the removal of Plaintiff's comments from the HCSO Facebook page and Plaintiff's ban from the HCSO Facebook page. Am. Compl. 25, ECF No. 18. Defendants argue that Plaintiff's supervisory liability claim must be dismissed, because Plaintiff only offers vague and generalized allegations against Meeks and Haines, Meeks and Haines are entitled to qualified immunity, and because respondeat superior liability does not apply to Section 1983 claims against a municipality. Mot. 29-30, ECF No. 21. "Supervisory officials cannot

be held liable for the unconstitutional actions of their subordinates based on any theory of vicarious or respondeat superior liability." *Lewis v. City of Waxahachie*, No. 3:10-CV-2578-N (BH), 2011 WL 7070991, at *4 (N.D. Tex. Dec. 21, 2011) (citing *Estate of Davis ex rel. McCully v. City of North Richmond Hills*, 406 F.3d 375, 381 (5th Cir.2005)). "In order to prevail against a supervisor under § 1983, a plaintiff must show that: 1) the supervisor's conduct directly caused a constitutional violation; or 2) that the supervisor was 'deliberately indifferent' to a violation of a constitutional right." *Id.* (citing *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000)). As previously discussed, because Plaintiff failed to adequately allege a constitutional violation, Plaintiff's supervisory liability claim alleging that Meeks and Haines directed their subordinates to violate Plaintiff's constitutional rights also lacks merit. Furthermore, as Defendants argue, any official capacity supervisory liability claim fails because a municipality cannot be held liable on a theory of respondeat superior and because there is no custom of constitutional deprivation. *See Arevalo*, 2017 WL 5569841, at *3 (citing *Monell*, 436 U.S. at 690-91; *Piotrowski*, 237 F.3d at 579).

## John Does 1-5

As Defendants point out, the remaining defendants, John Does 1-5, have not been served and are not included in Defendants' Motion to Dismiss. Mot. 1 n. 1. ECF No. 21. Plaintiff stated in her February 23, 2017 Complaint that, despite good faith efforts, she was unable to determine the identities of John Does 1-10, but that she would amend her complaint upon discovering their identities. Compl. 4, ECF No.

1. On April 20, 2017, Plaintiff filed her Amended Complaint identifying defendants Haines, Tweedy, and Smith, but maintained that she was not able to identify John Does 1-5, despite good faith efforts, and stated that she would file an amended complaint upon discovering their identities. Am. Compl. 3-5, ECF No. 18. As of the date of this Memorandum Opinion and Order, which is over ten months after the filing of Plaintiff's Amended Complaint, Plaintiff still has not identified John Does 1-5.   Therefore, this action will be dismissed without prejudice as to any defendant who does not appear on the case docket as having been served within two weeks of the date of this Memorandum Opinion and Order. *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.").

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [ECF No. 21] is **GRANTED**, and Plaintiff's claims against Defendants Hunt County, Randy Meeks, Jeffery Haines, and Destiny Tweedy are DISMISSED with prejudice.   Furthermore,

this action will be dismissed without prejudice as to John Does 1-5 if they have not been served within two weeks of the date of this Memorandum Opinion and Order.

**SO ORDERED**.

Signed February 28th, 2018.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE