# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

——————

No. 18-10238

——————

United States Court of Appeals
Fifth Circuit

**FILED**

April 15, 2019

Lyle W. Cayce
Clerk

DEANNA J. ROBINSON,

      Plaintiff - Appellant

v.

HUNT COUNTY, TEXAS; RANDY MEEKS, in his individual capacity and
official capacity; JOHN DOES 1-10, in their individual capacities and their
official capacities; JEFFERY HAINES, in his individual capacity and official
capacity; DESTINY TWEEDY, in her individual capacity and official
capacity; JACOB SMITH, in his individual capacity and official capacity,

      Defendants - Appellees

———————————————

Appeals from the United States District Court
for the Northern District of Texas

———————————————

Before JOLLY, DENNIS, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

     Deanna J. Robinson sued Defendants Hunt County, Sheriff Randy
Meeks, and several employees of the Hunt County Sheriff's Office (HCSO),
alleging unconstitutional censorship on the HCSO Facebook page. The district
court denied a preliminary injunction and later dismissed the complaint for
failure to state a claim. Robinson appeals both decisions. We affirm the
dismissal of Robinson's claims against the individual defendants and reverse
the dismissal of her claims against Hunt County. In addition, we vacate the

district court's preliminary injunction order and remand for further proceedings.

## I.

The Hunt County Sheriff's Office, led by Sheriff Randy Meeks, maintains a Facebook page. During the time period relevant to this litigation, the "About" section of the HCSO Facebook page stated: "Welcome to the official Hunt County Sheriff's Office Facebook page. We welcome your input and POSITIVE comments regarding the Hunt County Sheriff's Office." The page description further stated: "The purpose of this site is to present matters of public interest within Hunt County, Texas. We encourage you to submit comments, but please note that this is NOT a public forum."

> On January 18, 2017, the HCSO Facebook account posted this message:
>
> We find it suspicious that the day after a North Texas Police Officer is murdered we have received several anti police calls in the office as well as people trying to degrade or insult police officers on this page. ANY post filled with foul language, hate speech of all types and comments that are considered inappropriate will be removed and the user banned. There are a lot of families on this page and it is for everyone and therefore we monitor it extremely closely. Thank you for your understanding.

Robinson alleges that the HCSO Facebook page is a public forum and that this post "reflects a deliberately overbroad and vague stated procedure and/or policy intended to chill critical, unpopular, or unfavorable speech from the public on the HCSO Facebook page."

According to the complaint, Robinson and other Facebook users commented on the January 18, 2017 post and criticized it "for expressing a policy of deleting and censoring protected speech." Specifically, Robinson posted a comment stating that "degrading or insulting police officers is not illegal, and in fact has been ruled time and time again, by multiple US courts as protected First Amendment speech," and "just because you consider a

No. 18-10238

comment to be 'inappropriate' doesn't give you the legal right to delete it and/or ban a private citizen from commenting on this TAX PAYER funded social media site." Robinson also made highly offensive remarks about HCSO and the deceased police officer referenced in the January 18 Facebook post.

Robinson alleges that, soon after she posted this comment, the defendants removed her comment and banned her from the HCSO Facebook page. The defendants also allegedly "removed several other public comments that expressed viewpoints critical of [d]efendants' stated policy of deleting and censoring protected speech, as well as other viewpoints unfavorable to [d]efendants." The complaint offers several examples of comments by other users that were allegedly deleted, including comments stating: "Just stopping by to see if your [sic] deleting posts" and "This is a public forum and deleting comments is paramount to shredding files you don't like." Robinson represents that she remains banned from commenting on the HCSO Facebook page.

On February 23, 2017, Robinson sued Hunt County, Sheriff Meeks, and multiple unnamed defendants in federal district court. She later amended her complaint to add HCSO employees Jeffery Haines, Destiny Tweedy, and Jacob Smith as individual defendants. Robinson alleges that the defendants violated her First and Fourteenth Amendment rights by engaging in viewpoint discrimination on the HCSO Facebook page, retaliating against her for her protected speech, placing an impermissible prior restraint on her speech, and deleting protected speech and banning her from the HCSO Facebook page without due process. The complaint further asserts that Hunt County has an official policy or longstanding custom of removing and censoring unfavorable speech on the HCSO Facebook page, and that this policy was developed, ratified, and enforced by Sheriff Meeks or another defendant with final policymaking authority over law enforcement in Hunt County.

3

No. 18-10238

Robinson moved for a preliminary injunction requiring the defendants to release her ban from the HCSO Facebook page, restore her deleted comments, and cease deleting comments or banning individuals from the Facebook page on the basis of viewpoint. The district court denied a preliminary injunction, and later dismissed Robinson's complaint for failure to state a claim. Robinson timely appealed these decisions.

## II.

We first address the dismissal of the individual defendants. The complaint states that each defendant is being sued in his or her individual capacity as to monetary damages, and in his or her official capacity as to injunctive and declaratory relief. The district court dismissed the individual capacity claims based on qualified immunity. The court also dismissed the official capacity claims after finding that they duplicated the claims against Hunt County. Robinson does not challenge either of these rulings.

Instead, Robinson argues that she should have the opportunity to pursue equitable relief against the individual defendants in their *individual* rather than official capacities. This is inconsistent with the text of the complaint, which specifies that each individual defendant is being sued in his or her "individual capacity as to monetary damages" and "official capacity as to injunctive and declaratory relief." Robinson nonetheless contends that her individual capacity claims were sufficient to put the defendants on notice that they were being sued in both their individual and official capacities.

"A person's capacity need not be pled except to the extent required to show the jurisdiction of the court." *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir. 1973) (per curiam) (citing Fed. R. Civ. P. 9(a)). This principle, however, does not give a plaintiff free rein to change her capacity allegations at any time in the litigation. To determine whether a defendant is being sued in his or her official or individual capacity, we examine "[t]he allegations in the complaint,"

4

No. 18-10238

*id.*, and "[t]he course of proceedings," *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (quoting *Brandon v. Holt*, 469 U.S. 464, 469 (1985)). Here, both the complaint and the course of proceedings demonstrate that Robinson sought prospective relief against the defendants in their official capacities only. Robinson has not indicated that she *ever* informed the district court that she wished to pursue equitable relief against the individual defendants in their individual capacities. *See United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 402–03 (5th Cir. 2004) (affirming the dismissal of individual employees when the defendants argued before the district court that the employees "were only named in their official capacity" and the plaintiff "never challenged this assertion"). A district court considering a motion to dismiss is not obligated to imagine potential claims that a plaintiff has not raised.

The only claims before the district court as to the individual defendants were Robinson's individual-capacity claims for monetary damages and her official-capacity claims for equitable relief. Because Robinson does not appeal the district court's rulings on either of these issues, we affirm the dismissal of her claims against the individual defendants.

### III.

We review *de novo* the district court's dismissal of Robinson's claims against Hunt County, "accepting all well-pleaded facts in the complaint as true and viewed in the light most favorable to the plaintiff." *Raj v. La. State Univ.*, 714 F.3d 322, 329–30 (5th Cir. 2013). To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

No. 18-10238

To state a claim for municipal liability under 42 U.S.C. § 1983, a plaintiff must allege "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). This "policy or custom" requirement extends to claims for injunctive and declaratory relief. *Los Angeles County v. Humphries*, 562 U.S. 29, 31 (2010).

A.

As a threshold matter, Robinson must plead a constitutional violation.[1] The complaint alleges that the defendants deleted Robinson's Facebook comment and banned her from the HCSO Facebook page on the basis of her viewpoint. Robinson contends that the defendants' actions constitute viewpoint discrimination regardless of whether they were motivated by her criticism of the Sheriff's Office or a determination that her comment was otherwise "inappropriate." We agree. "It is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." *Street v. New York*, 394 U.S. 576, 592 (1969); *see also Snyder v. Phelps*, 562 U.S 443, 454–56 (2011). Official censorship based on a state actor's subjective judgment that the content of protected speech is offensive or inappropriate is viewpoint

---

[1]     Hunt County urges us to avoid all constitutional issues in this case and affirm on the basis that Robinson failed to sufficiently allege an official policy. Yet, as outlined below, we cannot evaluate whether an official policy was the moving force behind a violation of Robinson's constitutional rights without analysis of what conduct the First Amendment prohibits.

No. 18-10238

discrimination.[2] *See Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017); *see also id.* at 1766 (Kennedy, J., concurring).

Robinson further contends that the HCSO Facebook page is analogous to an interactive public meeting and is therefore a designated public forum or at least a limited public forum subject to First Amendment scrutiny. *See Davison v. Randall*, 912 F.3d 666, 688 (4th Cir. 2019) (holding that "the interactive component" of a public official's Facebook page was a public forum). The complaint alleges that the defendants "present matters of local public interest on the HCSO Facebook page through frequent postings" and "willingly and knowingly created and configured the HCSO Facebook page to be open to the public and allow page visitors to interact openly with the page, its content and fellow page visitors through commenting, likes, and shares."

Hunt County offers no argument that the HCSO Facebook page is not a public or limited public forum. Nor did the district court address this issue. We therefore assume for the purposes of this case that the HCSO Facebook page is a forum subject to First Amendment protection. Because Robinson alleges viewpoint discrimination, it is immaterial whether the Facebook page is analyzed as a limited or designated public forum. *See id.* at 687. The First Amendment "forbid[s] the State to exercise viewpoint discrimination" in either setting, "even when the limited public forum is one of its own creation." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

We next address whether the constitutional violations alleged in the complaint are attributable to Hunt County.

---

[2]     Hunt County does not appear to contest that Robinson's Facebook comment is protected speech.

No. 18-10238

B.

"The County can be responsible for actions of a final policymaker who has 'the responsibility for making law or setting policy in any given area of a local government's business.'" *Culbertson v. Lykos*, 790 F.3d 608, 624 (5th Cir. 2015) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988)). "[T]he identity of the policymaker is a question of law, not of fact—specifically, a question of state law." *Groden v. City of Dallas, Tex.*, 826 F.3d 280, 284 (5th Cir. 2016). Robinson contends that Sheriff Meeks has final policymaking authority over the HCSO Facebook page. Hunt County maintains that the Hunt County Commissioners' Court is the relevant final policymaker.

"[I]n Texas, the county sheriff is the county's final policymaker in the area of law enforcement, not by virtue of delegation by the county's governing body but, rather, by virtue of the office to which the sheriff has been elected." *Turner v. Upton County, Tex.* 915 F.2d 133, 136 (5th Cir. 1990); *see also Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). Thus, the sheriff's "actions are as much the actions of the county as the actions of th[e] [county] commissioners." *Turner*, 915 F.2d at 137. The decision to create a Facebook page falls squarely within the sheriff's power to "'define objectives and choose the means of achieving them' without county supervision." *Id.* at 136 (quoting *Rhode v. Denson*, 776 F.2d 107, 109 (5th Cir. 1985)); *see also Colle v. Brazos County, Tex.*, 981 F.2d 237, 244 (5th Cir. 1993) (explaining that the sheriff "clearly set the goals for the county and determined how those goals would be achieved").

The HCSO Facebook page is described as "the official Hunt County Sheriff's Office Facebook page," not as a page for Hunt County generally. It includes contact information for the Sheriff's Office and advises users to dial 911 if they experience an emergency or need police assistance. The HCSO Facebook page also invites input and comments regarding the Sheriff's Office. Hunt County's argument that the Commissioners' Court has not delegated

8

No. 18-10238

social media authority to Sheriff Meeks is unavailing. The sheriff's authority over the HCSO Facebook page derives from his elected position, "not by virtue of delegation by the county's governing body." *Turner*, 915 F.2d at 136. Accordingly, Sheriff Meeks is the final policymaker with regard to the HCSO Facebook page.

C.

Hunt County is nonetheless subject to liability only if the alleged constitutional violations are "directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (footnote omitted). A policy giving rise to § 1983 liability "may be officially promulgated by the governing body, by an official to which policy-making authority has been properly delegated, or by officials or employees of the municipality through a 'persistent, widespread practice' that is 'so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Culbertson*, 790 F.3d at 628 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).

Robinson has sufficiently pleaded an official policy of viewpoint discrimination on the HCSO Facebook page. The complaint alleges that, on January 18, 2017, the HCSO account posted a message warning that "ANY post filled with foul language, hate speech of all types and comments that are considered inappropriate will be removed and the user banned."[3] As discussed above, a policy of deleting "inappropriate" comments is viewpoint discriminatory. That the January 18, 2017 post was made in the name of the HCSO lends it some official imprimatur, and gives rise to a reasonable

---

[3]     The complaint also alleges that the HCSO Facebook page explicitly calls for only "POSITIVE comments regarding the Hunt County Sheriff's Office."

9

inference that the statement "can be fairly identified as" an action "of the government itself." *Piotrowski*, 237 F.3d at 578; *see also Groden*, 826 F.3d at 286 (explaining that an "allegation that an official city spokesperson announced an official city policy allows for a reasonable pleading inference that this crackdown policy was attributable to an official policy made by the policymaker of the city").

Robinson further alleges that she wrote a critical comment in response to the January 18 post and that HCSO took precisely the actions threatened in the post: removing her comment and banning her from the page. Unfavorable comments by other Facebook users on the same post were also allegedly deleted. These allegations are sufficient to state a claim that HCSO's policy was the "moving force" behind the violation of Robinson's constitutional rights.[4] *Piotrowski*, 237 F.3d at 578; *see also Groden*, 826 F.3d at 286–87. Hunt County's reliance on *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838 (5th Cir. 2009), is inapposite because the plaintiff in that case could point to "no written policy supporting his claim of municipal liability" and instead attempted to establish the existence of an official policy through a pattern of violations. *Id.* at 850. Robinson, by contrast, has plausibly alleged that Hunt County had an explicit policy of viewpoint discrimination on the HCSO Facebook page.[5]

---

[4]     Hunt County's argument that Facebook may be responsible for the deletion of Robinson's post and her inability to comment on the HCSO Facebook page is unavailing at this stage of the proceedings. Hunt County "may well be entitled to summary judgment" if discovery reveals that it is not responsible for the conduct alleged. *Groden*, 826 F.3d at 286 n.8. For the purposes of Rule 12(b)(6), however, we must accept Robinson's well-pleaded factual allegations as true. *Iqbal*, 556 U.S. at 678.

[5]     In addition to her First Amendment free speech claim, Robinson asserts claims for First Amendment retaliation, prior restraint, and a violation of due process. The district court dismissed these claims for the same reasons it dismissed the First Amendment claim, and Hunt County does not urge different grounds for dismissal on appeal. We therefore reinstate all of Robinson's constitutional claims against Hunt County.

No. 18-10238

D.

Robinson requests a declaratory judgment that the defendants'
administration of the HCSO Facebook page violates the First and Fourteenth
Amendments, and that her ongoing ban from the page is an impermissible
prior restraint. The district court dismissed this request on grounds
independent of the constitutional issues discussed above—namely, that it is
duplicative of other claims in the lawsuit. We review the dismissal of a claim
for declaratory judgment for abuse of discretion. *Sherwin-Williams Co. v.
Holmes County*, 343 F.3d 383, 389 (5th Cir. 2003). The district court abuses its
discretion if it fails to consider relevant factors, including "the purposes of the
Declaratory Judgment Act." *Travelers Ins. Co. v. La. Farm Bureau Fed., Inc.*,
996 F.2d 774, 778 (5th Cir. 1993).

The Declaratory Judgment Act was "expressly designed to provide a
milder alternative to the injunction remedy." *Morrow v. Harwell*, 768 F.2d 619,
627 (5th Cir. 1985) (quotation omitted). A party may pursue both injunctive
and declaratory relief, and "[a] court may grant declaratory relief even though
it chooses not to issue an injunction or mandamus." *Powell v. McCormack*, 395
U.S. 486, 499 (1969); *see also Poe v. Gerstein*, 417 U.S. 281, 281 (1974) (holding
that the district court properly refused to issue an injunction when "it was
anticipated that the State would respect the declaratory judgment"); *Davison
v. Loudoun County Bd. of Supervisors*, 267 F. Supp. 3d 702, 722–23 (E.D. Va.
2017) (denying injunctive relief but granting a declaratory judgment that a
public official's Facebook page operates as a forum for speech and that
viewpoint discrimination in administering this forum violates the First
Amendment). To the extent the district court determined that Robinson's
declaratory judgment claims are redundant of her claims for injunctive relief,
this conclusion is inconsistent with the purposes of the Declaratory Judgment
Act and therefore an abuse of discretion.

11

No. 18-10238

Nor is Robinson's request for declaratory relief duplicative of her claims for compensatory damages. Hunt County relies on multiple district court breach of contract cases to argue that declaratory judgment claims are regularly dismissed if they add nothing to the lawsuit. *See, e.g., Flanagan v. Chesapeake Exp., LLC*, No. 3:15-CV-0222, 2015 WL 6736648, at \*4 (N.D. Tex. Nov. 4, 2015) (collecting cases). In certain breach of contract contexts, district courts have concluded that a declaratory judgment is unnecessary because "[r]esolving the breach of contract claim would resolve any future uncertainty" between the parties. *Id.* at \*5; *see also Albritton Props. v. Am. Empire Surplus Lines*, No. 3:04-CV-2531, 2005 WL 975423, at \*3 (N.D. Tex. April 25, 2005) (explaining that "the Court must necessarily determine the parties' rights and duties under the Policy in order to decide the breach of contract action," and "a declaratory judgment would simply duplicate this determination").

The constitutional claims at issue in this case are dissimilar from a breach of contract action, and the district court's dismissal order does not explain how resolving Robinson's other claims would render a declaratory judgment superfluous. For instance, Robinson seeks a declaration that Hunt County may not continue to ban her from the HCSO Facebook page. This request for prospective relief appears distinct from her claim for monetary damages. Given our holding that Robinson stated a claim against Hunt County, the district court may wish to retain the option of granting a declaratory judgment if Robinson is able to establish her entitlement to such relief.

Accordingly, we reverse the dismissal of Robinson's claims against Hunt County.[6]

---

[6]    The district court also held that Hunt County is immune from punitive damages under § 1983. Robinson has not appealed this determination, and the complaint appears to request punitive damages only as to the individual defendants. To the extent

12

No. 18-10238

IV.

Finally, Robinson appeals the denial of her motion for a preliminary injunction. We review the denial of a preliminary injunction for abuse of discretion. *Moore v. Brown*, 868 F.3d 398, 402 (5th Cir. 2017). "Factual findings are reviewed for clear error, while legal conclusions are reviewed de novo." *Id.* at 403. A court should issue a preliminary injunction "if the movant establishes: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006) (quotation omitted).

Robinson requested a preliminary injunction requiring the defendants to restore her ability to engage in expressive activity on the HCSO Facebook page, restore her deleted comments, cease deleting "comments, 'likes,' or other expressive activity" stating viewpoints on matters of public concern, and cease banning individuals from the HCSO Facebook page on the basis of viewpoint. This motion was referred to a magistrate judge, who recommended that a preliminary injunction be denied. After considering Robinson's objections, the district court accepted the magistrate judge's findings, conclusions, and recommendation in full.

The magistrate judge concluded that Robinson did not have a likelihood of success on the merits because the removal of her post would likely be construed to comply with Facebook's policies. This was legal error. "The Constitution constrains governmental action 'by whatever instruments or in

---

Robinson seeks punitive damages against Hunt County, we affirm the district court's ruling on this issue. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

No. 18-10238

whatever modes that action may be taken.'" *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 392 (1995) (quoting *Ex parte Virginia*, 100 U.S. 339, 346–47 (1880)). Robinson has not challenged Facebook's right to enforce its own policies. Rather, her position is that "it is *the government itself* that is attempting in this case to decide whether the relevant audience would find the speech offensive." *Matal*, 137 S. Ct. at 1767 (Kennedy, J., concurring) (emphasis added). A private policy cannot authorize a state actor to engage in conduct that violates the Constitution. *See, e.g., Griffin v. Maryland*, 378 U.S. 130, 135–37 (1964); *Pennsylvania v. Bd. of Directors of City Trusts of Philadelphia*, 353 U.S. 230, 231 (1957).

Alternatively, the magistrate judge determined that Robinson failed to demonstrate a substantial likelihood of prevailing on the merits because it would not be clear to a reasonable officer that attempting to comply with Facebook's policies would violate the First Amendment. This reflects the standard for qualified immunity. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741–43 (2011). Qualified immunity, however, is a defense to monetary damages and "do[es] not extend to suits for injunctive relief under 42 U.S.C. § 1983." *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1051 n.1 (5th Cir. 1997). Robinson is not required to demonstrate a violation of clearly established law to obtain a preliminary injunction.

Hunt County urges us to affirm the denial of a preliminary injunction on the alternative grounds that Robinson is unable to prove that her rights were violated by a policy or custom of Hunt County, or that any Hunt County employee deleted her comments or blocked her from the HCSO Facebook page. The County further contends that Robinson cannot show irreparable harm because Sheriff Meeks has instructed the HCSO Facebook administrators not to delete comments or ban users in the future, and no users have had their comments deleted or their access blocked since January 23, 2017. Robinson

14

No. 18-10238

disputes these factual claims, and points to her affidavit in the record attesting that she remains banned from commenting on or liking content on the HCSO Facebook page. The district court did not address or resolve these factual disputes. In the absence of factual findings from the district court, "we will only review the district court's injunction decision 'when the record is exceptionally clear and remand would serve no useful purpose.'" *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993) (quoting *White v. Carlucci*, 862 F.2d 1209, 1210 n.1 (5th Cir. 1989)). The factual record in this case is not clear, and we therefore remand for the district court to reconsider Robinson's preliminary injunction motion.

## V.

We AFFIRM the dismissal of Robinson's claims against the individual defendants and REVERSE the dismissal of her claims against Hunt County. We VACATE the district court's order denying a preliminary injunction and REMAND for further proceedings consistent with this opinion.

15

# UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

# BILL OF COSTS

**NOTE: The Bill of Costs is due in this office *within 14 days from the date of the opinion, See* FED. R. APP. P. & 5TH CIR. R. 39. Untimely bills of costs must be accompanied by a separate motion to file out of time, which the court may deny.**

Deanna Robinson _____ **v.** Hunt County, Texas, et al. _____ **No.** 18-10238

The Clerk is requested to tax the following costs against: Defendants-Appellees _____

| COSTS TAXABLE UNDER Fed. R. App. P. & 5th Cir. R. 39 | REQUESTED | | | | ALLOWED (If different from amount requested) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Copies | Pages Per Copy | Cost per Page* | Total Cost | No. of Documents | Pages per Document | Cost per Page* | Total Cost |
| Docket Fee (~~$450.00~~) $500 | | | | 500 | | | | 500.00 |
| Appendix or Record Excerpts | 4 | 128 | 0.15 | 76.8 | 4 | 128 | .15 | 76.80 |
| Appellant's Brief | 7 | 74 | 0.15 | 77.7 | 7 | 74 | .15 | 77.70 |
| Appellee's Brief | | | | | | | | |
| Appellant's Reply Brief | 7 | 41 | 0.15 | 43.05 | 7 | 41 | .15 | 43.05 |
| Other: | | | | | | | | |
| | | | **Total $** 697.55 | | **Costs are taxed in the amount of $** 697.55 | | | |

Costs are hereby taxed in the amount of $ ___697.55_____ this _____24th_____ day of ____May_____, __2019___.

**LYLE W. CAYCE, CLERK**

State of
County of ___Texas (Travis County)_____      By _____
                                                                                      **Deputy Clerk**

I ___JT Morris_____, do hereby swear under penalty of perjury that the services for which fees have been charged were
incurred in this action and that the services for which fees have been charged were actually and necessarily performed.
This _____ day of _____29th____, _____ April _____ 2019

/s/ JT Morris
**(Signature)**

**\*SEE REVERSE SIDE FOR RULES GOVERNING TAXATION OF COSTS**

Attorney for ___Plaintiff-Appellant Deanna Robinson_____

## CERTIFICATE OF SERVICE

I certify that the foregoing bill of costs has been served by ECF on April 29, 2019 upon counsel for Defendants-Appellees:

Thomas P. Brandt
Francisco J. Valenzuela
Laura O'Leary
FANNING, HARPER, MARTINSON, BRANDT, & KUTCHIN, P.C.
Two Energy Square
4849 Greenville Ave. Suite 1300
Dallas, Texas 75206

/s/ JT Morris
JT Morris
Counsel for Appellant